# EXHIBIT A

# STATE OF NEW MEXICO
# OFFICE OF SUPERINTENDENT OF INSURANCE

**SUPERINTENDENT OF INSURANCE**

Russell Toal



**DEPUTY SUPERINTENDENT**

Jennifer Catechis

7/21/2022

SOP ID 2732

Metropolitan Direct Property and Casualty Insurance Company C/O Farmers Direct Property and Casualty Insurance Company

6301 Owensmouth Ave

Woodland, CA 91367

**RE: MARGARET VEGA individually and on behalf of other similarly situated individuals V. METROPOLITAN DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY**

**D-202-CV-2021-01096**

Dear Sir or Madam:

In accordance with the provisions of NMSA 1978, Sections 59A-5-31 & 59A-5-32, enclosed is a copy of a Complaint and Summons on the above styled cause. Service was accepted on your behalf on 7/21/2022.

Respectfully,

Russell Toal, Superintendent

7018 0680 0000 1044 2027

| SUMMONS ON FIRST AMENDED COMPLAINT | |
|---|---|
| District Court: SECOND JUDICIAL Bernalillo County, New Mexico P.O. Box 488 / Albuquerque, NM 87103-0488 400 Lomas Blvd. NW / Albuquerque, New Mexico 87102 Court Telephone No.: 505-841-8400 | Case Number: D-202-CV-2021-01096 <br><br> Assigned Judge: Benjamin Chavez |
| Plaintiff(s): Margaret Vega <br><br> v. <br><br> Defendant(s): Metropolitan Direct Property and Casualty Insurance Company | Defendant: <br><br> Metropolitan Direct Property and Casualty Insurance Company c/o Office of Superintendent of Insurance PO Box/1120 Paseo De Peralta, Rm 428 Santa Fe, NM 87504-1689/87501 |

**TO THE ABOVE NAMED DEFENDANT(S):** Take notice that

1.  A lawsuit has been filed against you. A copy of the lawsuit is attached. The Court issued this Summons.

2.  You must respond to this lawsuit in writing. You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons. (The date you are considered served with the Summons is determined by Rule 1-004 NMRA) The Court's address is listed above.

3.  You must file (in person or by mail) your written response with the Court. When you file your response, you must give or mail a copy to the person who signed the lawsuit.

4.  If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

5.  You are entitled to a jury trial in most types of lawsuits. To ask for a jury trial, you must request one in writing and pay a jury fee.

6.  If you need an interpreter, you must ask for one in writing.

7.  You may wish to consult a lawyer. You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6066.

Dated: 7/20/2022

Katina Watson

SECOND JUDICIAL DISTRICT COURT
CLERK OF THE COURT

By: Patricia Serna
Deputy Clerk

/s/ *Kedar Bhasker*
Kedar Bhasker
BHASKER LAW
1400 Central Ave. SE, Suite 2000
Albuquerque, NM 87106
Phone: 505 720-2113
Fax: 505 998-6628
kedar@bhaskerlaw.com

Corbin Hildebrandt
CORBIN HILDEBRANDT P.C.
Attorney for Plaintiff
1400 Central Ave. SE, Suite 2000
Albuquerque, NM 87106
Phone: 505 998-6626
Fax: 505 998-6628
corbin@hildebrandtlawnm.com

*Counsel for the Plaintiff*

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO
RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

STATE OF NEW MEXICO    )
                       )ss
COUNTY OF _____    )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in _____ county on the _____ day of _____, 2022, by delivering a copy of this summons, and a copy of the First Amended Complaint attached, in the following manner:

**(check one box and fill in appropriate blanks)**

[ ] to the defendant _____ (*used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint*)

[ ] to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (*used when service is by mail or commercial courier service*).

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

[ ] to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, (*used when the defendant is not presently at place of abode*) and by mailing by first class mail to the defendant at _____ (*insert defendant's last known mailing address*) a copy of the summons and complaint.

[ ] to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ (*insert defendant's business address*) and by mailing the summons and complaint by first class mail to the defendant at _____ (*insert defendant's last known mailing address*).

[ ] to _____, an agent authorized to receive service of process for defendant _____.

[ ] to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ (*used when defendant is a minor or an incompetent person*).

[ ] to _____ (*name of person*), _____, (*title of person authorized to receive service. Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision*).

Fees: _____

_____
Signature of person making service

_____
Title (*if any*)

Subscribed and sworn to before me this _____ day of _____, 2022

_____
Judge, notary or other officer
authorized to administer oaths

_____
Official title

**USE NOTES**

1.    Unless otherwise ordered by the court, this return is not to be filed with the court prior to service of the summons and complaint on the defendant.

2.    If service is made by the sheriff or a deputy sheriff of a New Mexico county, the signature of the sheriff or deputy sheriff need not be notarized.

[Adopted effective August 1, 1988; as amended by Supreme Court Order 05-8300-01, effective March 1, 2005; by Supreme Court Order 07-8300-16, effective August 1, 2007; by Supreme Court Order No. 12-8300-026, effective for all cases filed or pending on or after January 7, 2013.]

**FILED**
**2ND JUDICIAL DISTRICT COURT**
**Bernalillo County**
**7/15/2022 12:13 PM**
**CLERK OF THE COURT**
**Andrea I Gutierrez**

**STATE OF NEW MEXICO**
**COUNTY OF BERNALILLO**
**SECOND JUDICIAL DISTRICT COURT**

MARGARET VEGA individually and on behalf of
other similarly situated individuals,

     Plaintiff,

v.

METROPOLITAN DIRECT PROPERTY AND CASUALTY
INSURANCE COMPANY,

     Defendant.

No. D-202-CV-2021-01096

## FIRST AMENDED CLASS ACTION COMPLAINT

1.    Plaintiff Margaret Vega, for herself and on behalf of the Class and Subclass defined herein, brings this First Amended Class Action Complaint under Rule 1-023 NMRA to recover damages from Metropolitan Direct Property and Casualty Insurance Company ("MetLife"), and states as follows:

### JURISDICTION AND VENUE

2.    This Court has jurisdiction under Article VI, Section 13 of the New Mexico Constitution.

3.    Venue is proper under NMSA 1978, § 38-3-1(B).

### PARTIES

4.    Plaintiff Margaret Vega is, and was at all material times, a resident of Bernalillo County, New Mexico.

5.    Defendant MetLife is a foreign for-profit corporation conducting business, including the sales and solicitations for the sales of insurance policies, throughout the State of

New Mexico. Process is properly served on it via its registered agent, the Office of Superintendent of Insurance.

## FACTUAL ALLEGATIONS

**Vega purchased an underinsured motorist policy from MetLife.**

6. On March 27, 2018 MetLife issued Vega a motor vehicle insurance policy, which she had applied for and purchased. *See* **Exhibit 1**, Vega UM/UIM selection/rejection form.

7. MetLife issued the insurance policy and provided her with a declarations page. See **Exhibit 2**, Vega Declaration pages.

8. The policy that MetLife issued and which was in effect at the time of Vega's loss was Policy No. 1352605930, effective from February 7, 2018 to February 7, 2019 ("Vega Policy"). *Id.*

9. The Vega Policy provided liability coverage on one vehicle in the amount of $25,000 per person/$50,000 per occurrence. *Id.*

10. The Vega Policy also purportedly provided uninsured and underinsured motorist coverage in the amount of up to $25,000.00 per person/$50,000.00 per occurrence. *Id.*

11. MetLife collected a premium of $136 for the uninsured and underinsured motorist coverage that MetLife purportedly offered for the twelve months from February 7, 2018 to February 7, 2019. *Id.*

12. MetLife collected from Vega premiums for uninsured and underinsured motorist coverage that it purportedly sold her since 2018.

**MetLife's systematic application process, declarations, UM/UIM information and selection forms, and policy are ambiguous and misrepresented the true value of underinsured motorist coverage and failed to properly and adequately disclose to Vega that the underinsured motorist coverage for which Defendant collected a premium was illusory and misleading.**

13.     Defendants' boilerplate forms which should allow insureds to select or reject Uninsured and Underinsured Motorists Coverage do not adequately disclose "Underinsured Motorist". See **Exhibit 1 and 2.**

14.     Defendants' boilerplate forms which allow insureds to select or reject Uninsured and Underinsured Motorists Coverage are ambiguous and do not in any manner refer to the New Mexico statute, NMSA § 66-5-301(B). Id.

15.     Defendant's application, pursuant to NMSA § 66-5-301(C), should provide adequate disclosures so that a meaningful offer is made and an insured is able to make a knowing and intelligent choice of UM/UIM coverage. Defendants have not provided the application that was used.

16.     Defendant's boilerplate forms and ambiguous policy definitions failed to properly inform Ms. Vega about the offset described in *Schmick v. State Farm Mutual Automobile Insurance Company*, 704 P.2d 1092 (1985) ("the *Schmick* offset") and did not meet him reasonable expectations of being properly insured in the event he sustained significant injuries. See *Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, ¶ 2, 501 P.3d 433, 434. "We conclude that this type of policy is illusory in that it may mislead minimum UM/UIM policyholders to believe that they will receive underinsured motorist benefits, when in reality they may never receive such a benefit." See **Exhibit 3**, Auto Insurance Policy.

17.     Nothing in Defendant's boilerplate forms advise an insured that they will never

receive the full amount of underinsured motorist coverage for which they have contracted. Id.

18. When Ms. Vega purchased automobile coverage, Defendant did not properly inform her of how underinsured motorist coverage is illusory in the event of a covered occurrence involving an underinsured driver.

19. Defendant failed to properly inform Ms. Vega that she and her insured beneficiaries would most likely not be afforded the full UIM benefits from paying a premium for underinsured motorist coverage because, pursuant to the *Schmick* offset, Ms. Vega's and insured beneficiaries' recovery of underinsured motorist benefits would be offset by the amount of the tortfeasor's liability coverage. See *Id.*, ¶ 26. "We refuse to impose on the insured the obligation to be aware of and understand the consequences of New Mexico's UM/UIM statutory provisions, much less the offset rule derived by its technical language."

20. When Ms. Vega purchased automobile coverage, Defendant did not properly inform her of how underinsured motorist coverage is illusory and/or misleading in the event of a covered occurrence involving an underinsured driver.

21. Defendant's forms did not contain clear, unambiguous language regarding the effects of the *Schmick* offset.

22. Defendant's systematic processes forms did not alert Ms. Vega, nor make clear to ordinarily and similarly situated insureds, the fact that the *Schmick* offset drastically and materially diminished payment of benefits arising from a covered occurrence under the policy for crashes involving underinsured motorists. See *Id.*

23. Defendant's systematic processes and forms misrepresented the true value of the illusory underinsured motorist coverage that it advertised and sold to Ms, Vega and for which Defendants collected premiums. See *Id*, ¶ 26. "First, we find no merit in Defendant's argument

that the language of the statute provides immunity from claims that it misrepresented the coverage available to consumers like Mr. Crutcher. Certainly, while the Legislature authorized the selling of premiums together, its intent was not to sanction the deception of those consumers in their selection of policies and coverage levels. The Court in *Weed Warrior* concluded that it was the obligation of the insurance company to clearly provide its policyholders the opportunity to match their UM/UIM policy with their liability coverage. *Id.* ¶ 15. In this case [*Crutcher*], we are simply identifying the same consequence previously illuminated in *Weed Warrior. Id.* ¶ 10.) and *Id*, ¶ 27. If a person pays for something called "underinsured motorist" insurance, we think it reasonable for the person to be under the impression that he or he is, in fact, eligible to receive UIM coverage if involved in an accident with someone who does not have enough insurance to cover the costs of the insured's injuries." *Id.*

**Vega was injured in a collision with an underinsured motorist.**

24.     On August 25, 2019, Vega sustained serious bodily injuries and other damages arising from an automobile crash that occurred on San Mateo Boulevard, SE in Albuquerque, New Mexico, at the intersection with Zuni Road when an underinsured motorist ran a red light entering San Mateo and Zuni and caused a heavy impact with Vega's vehicle.

25.     Vega was not at fault for the crash and was wearing her seatbelt at the time.

26.     As a result of the collision, Vega suffered serious bodily injuries and other damages.

27.     Vega suffered total damages well in excess of $50,000.00.

28.     At the time of the collision, Vega was insured by the Vega Policy, which provided her with uninsured and underinsured motorist insurance coverage in the amount of up to $25,000.00 per person/$50,000.00 per accident.

29.     After the collision, Vega made a claim with the tortfeasor's insurer and received $25,000, the full extent of liability coverage from the tortfeasor's insurer.

30.     Like Vega, the tortfeasor also carried the minimum required liability insurance with limits of $25,000.00 per person, $50,000.00 per accident.

**Vega makes a claim that MetLife denies.**

31.     Before the collision at issue, MetLife collected a premium for automobile coverage pursuant to the Vega Policy, under which Vega had a reasonable expectation that she carried underinsured motorist coverage of $25,000.00 per person, $50,000.00 per occurrence.

32.     At the time of the collision, Vega was under the belief and had a reasonable expectation that she was entitled to underinsured motorist benefits pursuant to the application she had made and the insurance policy that MetLife had issued her.

33.     After the collision, Vega reported the collision to MetLife and, through counsel, made a claim on the underinsured motorist coverage for which she had paid a premium.

34.     MetLife, under a standardized business practice, opened a claim, assigned claim number 058014483 0101 023, and randomly assigned the adjustment of the matter to one of its adjusters. See **Exhibit 4**, MetLife's Denial of Vega's Claim.

35.     Vega, through counsel, requested that MetLife provide her with the underinsured motorist benefits that MetLife contracted with Vega to provide and for which she had paid a premium.

36.     MetLife denied Vegas's underinsured motorist coverage claim in its entirety.

37.     MetLife denied Vega's claim because (i) MetLife deducted from the coverage it owed Vega any sums paid by the tortfeasor's insurer and (ii) the tortfeasor's liability

coverage limits equaled Vega's underinsured motorist coverage limits. *See id.*

38. Vega received nothing from MetLife, her underinsured motorist policy carrier. .

39. Vega had a reasonable expectation that she would benefit from the insurance premiums MetLife collected from her. In fact, however, under her policy there were virtually no underinsured motorist benefits.

## CLASS ACTION ALLEGATIONS

40. This action is properly maintainable as a class action pursuant to Rule 1-023 NMRA. The Class is defined as follows:

> "All persons (and their heirs, executors, administrators, successors, and assigns) from whom MetLife collected a premium for an underinsured motorist coverage on a policy that was issued or renewed in New Mexico by MetLife and that purported to provide underinsured motorist coverage, but which effectively provides no underinsured motorists coverage and/or misleading underinsured motorist coverage, because of the statutory offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, 704 P.2d 1092 (1985)."

41. Excluded from the Class are all of Defendants' present and former officers and directors, "Referees" serving the Evaluation Appeal process proposed below, Class counsel and their resident relatives, and Defendant's counsel of record and their resident relatives.

42. Pursuant to Rule 1-023(C) (4)(b), the Class properly includes a Subclass:

> "All Class Members (and their heirs, executors, administrators, successors, and assigns from whom MetLife collected a premium for an underinsured motorist coverage on a policy that was issued or renewed in New Mexico by MetLife and that purported to provide the underinsured motorist coverage on the face of its application and declaration pages, but which in fact provides no underinsured motorists coverage and/or misleading underinsured motorist coverage, because of the statutory offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, 704 P.2d 1092 (1985), and who sustained damages in excess of an insured tortfeasor's policy limits, received

the extent of all bodily injury liability limits available and would be denied those benefits by MetLife due to the *Schmick* offset."

43.      The proposed class and subclass definitions are precise, objective, and presently ascertainable, and it is administratively feasible for the Court to ascertain whether a particular individual is a member of the Class.

44.      The members of the Class are so numerous that joinder of all members of the Class is impracticable.

45.      Vega's claims are typical of the claims of members of the Class and Subclass.

46.      Certification of the Class and Subclass is desirable and proper, because there are questions of law and fact in this case common to all members of the Class. Such common questions of law and fact include, but are not limited to:

a.      Whether MetLife breached contractual obligations owed to their New Mexico policyholders;

b.      Whether MetLife breached duties owed to New Mexican insureds under the implied covenant of good faith and fair dealing;

c.      Whether MetLife violated NMSA 1978, §§ 59A-16-1 to -30;

d.      Whether MetLife failed to disclose one or more material facts in connection with the marketing or sale of the insurance policies at issue;

e.      Whether MetLife misled or deceived their policyholders in connection with the marketing or sale of the policies at issue;

f.      How properly to construe MetLife's standard application forms and other standard form documents relative to the *Schmick* offset;

g.      What remedies are available to Vega and Class Members in light of the answers to the foregoing questions; and

h.      Whether and to what extent there may be merit in any affirmative defenses that MetLife might claim.

47.     These common questions of law or fact common to members of the Class predominate over any questions affecting only individual members, and a class action is superior to all other available methods for the fair and efficient adjudication of the controversy. In this action:

48.     Common or generalized proof will predominate with respect to the essential elements of the nine claims at issue.

49.     The common questions of law or fact that pertain to the Class predominate over any individual questions and any individual issues do not overwhelm the common ones.

50.     If any member or members of the Class has an individually controlling interest to prosecute a separate action, they may exclude themselves from the Class upon receipt of notice under Rule 1-023(C)(2).

51.     The determination of the claims of all members of the Class in a single forum and in a single proceeding would be a fair, efficient and superior means of resolving the issues raised in this litigation.

52.     Any difficulty encountered in the management of the proposed Class is reasonably manageable, especially when weighed against the impossibility of affording adequate relief to the members of the Class through numerous independent actions.

53.     The need for proof of Vega's and Class members' damages will not cause individual issues to predominate over common questions. The amounts of losses can be efficiently demonstrated either at trial or as part of routine claims administration through accepted and court-approved methodologies with the assistance of court-appointed personnel,

including Special Masters. Certain types or elements of damage are subject to proof using aggregate damage methodologies or simply rote calculation and summation.

54. The particular common issues of liability and the quantum of punitive damages or ratio of punitive damages to actual harm, are common to Class Members no matter what type of harm or injury was suffered by each Class Member.

55. MetLife has acted or refused to act on grounds generally applicable to Class Members, thereby making appropriate injunctive relief and corresponding declaratory relief with respect to Class Members. Vega seeks to establish the rights and obligations of the parties with respect to the claims at issue in this case and to enjoin MetLife from continuing to engage in those practices that violate the duties, contractual, and legal obligations owed to Vega and Class Members under New Mexico statutory and common law.

56. A class action is superior to maintenance of these claims on a claim-by-claim basis when all actions arise out of the same circumstances and course of conduct. A class action allows the Court to process all rightful claims in one proceeding. Class litigation is manageable considering the opportunity to afford reasonable notice of significant phases of the litigation to Class Members and permit distribution of any recovery. The prosecution of separate actions by individual Class Members, or the individual joinder of all Class Members in this action, is impracticable and would create a massive and unnecessary burden on the resources of the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of each Class Members, should that be determined to be appropriate.

57. The conduct of this action as a class action conserves the resources of the parties and the court system, protects the rights of each member of the class, and meets all due

process requirements.

58. Certification of the Class with respect to particular common factual and legal issues concerning liability, as well as the necessary and appropriate quantum of punitive damages, or ratio of punitive damages to actual harm, is appropriate under Rule 1-023.

59. Certification of the Class is desirable and proper, because Vega will fairly and adequately protect the interests of the Class that they seek to represent. There are no conflicts of interest between Vega's claims and those other members of the Class. Vega is cognizant of their duties and responsibilities to the Class. Vega's attorneys are qualified, experienced, and able to conduct the proposed class action.

## CLAIM 1
## VIOLATIONS OF THE NEW MEXICO UNFAIR TRADE PRACTICES ACT

60. Vega and Class Members incorporate by reference the preceding paragraphs as if they were fully stated herein.

61. There was in effect, at all times material, a New Mexico statute commonly known as the New Mexico Unfair Trade Practices Act, N.M.S.A.1978, § 57-12-2 to 58-12-10 ("UPA"), including but not limited to Sections 57-12-2(D)(7), (D)(14), (D)(15), (D)(17) and Section 57-12- 2(E), which prohibits a person selling insurance from engaging in unfair or deceptive trade practices:

> D. "unfair or deceptive trade practice" means an act specifically declared unlawful pursuant to the Unfair Trade Practices Act [Chapter 57, Article 12 NMSA 1978], a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services or in the extension of credit or in the collection of debts by a person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead and includes but is not limited to:

> (7) representing that the goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another;

11

(14) using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact if doing so deceives or tends to deceive;

(15) stating that a transaction involves rights, remedies or obligations that it does not involve;

(17) failure to deliver the quality or quantity of goods or services contracted for;

F. "unconscionable trade practice" means an act or practice in connection with the sale, lease, rental or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services, including services provided by licensed professionals, or in the extension of credit or in the collection of debts which to a person's detriment: takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or results in a gross disparity between the value received by a person and the price paid.

62.     MetLife failed to deliver the quality or quantity of services applied for and purchased and paid for by Vega and other insureds by failing to provide insurance applications and policies containing sufficient information to properly inform a reasonably prudent person purchasing underinsured insurance, for which Vega and others similarly situated were under the reasonable belief that such coverage existed, and to pay claims for insurance benefits sold and solicited by MetLife.

63.     In the regular course of its business, MetLife or its agents knowingly made oral and written statements that were false and misleading in connection with the sale of underinsured motorist insurance in New Mexico.

64.     These false and misleading representations may, tend to, and do deceive or mislead persons into believing that minimal-limits underinsured motorist coverage has a value that it does not have and into contracting for and paying premiums for underinsured motorist policies that are illusory and/or misleading and do not provide the underinsured motorist coverage and benefits that MetLife's customers reasonably expected to receive.

65.     In the regular course of its business, MetLife or its agents took advantage of its customers' lack of knowledge, ability, experience or capacity to a grossly unfair degree by marketing, advertising, selling, and receiving premium payments for illusory and/or misleading underinsured motorist coverage.

66.     Since the New Mexico Supreme Court's opinion in *Progressive Northwest Insurance Co. v. Weed Warrior Services*, 2010-NMSC-050, 149 N.M. 157, 245 P.3d 1209, MetLife has been on notice that underinsured motorist policies provide essentially no coverage at minimal limits and misleading coverage at higher limits, yet MetLife markets, advertises, sells, and received premiums for minimal limits and above-minimal limits underinsured motorist policies to and from customers, such as Vega and Class Members, who do not know and do not understand that, if they purchase minimal limits underinsured motorist coverage, they are vanishingly unlikely to receive any underinsured motorist coverage or that if they purchase above-minimal limits and suffer damages in excess of the tortfeasor's liability coverage, they would only be able to receive limited underinsured motorist coverage in excess of the amounts received from the tortfeasor, losing the full benefit of their above-minimal limits coverage because of the Schmick offset.

67.     MetLife's actions resulted in a gross disparity between the value of the illusory underinsured motorist coverage received by Vega and Class Members and the price of the premiums that Vega and Class Members paid for illusory and/or misleading underinsured motorist coverage.

68.     MetLife, acting through its agents, adjusters, and employees, as set forth above, knowingly and willfully engaged in unfair trade practices in violation of Section 57-12-3, including but not limited to Sections 57-12-2(D)(7), (D)(14), (D)(15), (D)(17) and Section 57-

12- 2(E).

## CLAIM 2
## VIOLATIONS OF THE NEW MEXICO UNFAIR INSURANCE PRACTICES ACT

69. Vega and Class Members incorporate by reference the preceding paragraphs as if they were fully stated herein.

70. There was in effect at all times material a New Mexico statute commonly known as the Insurance Code New Mexico Unfair Insurance Practices Act, NMSA 1978, §§ 59A-16-1 to 59A-16-30 ("UIPA").

71. The UIPA provides a private right of action to any person covered by the UIPA who has suffered damages as a result of a violation of that statute by an insurer or agent is granted a right to bring an action in district court to recover actual damages.

72. Vega and Class Members were insured under the policy issued and adjusted by the MetLife.

73. MetLife owed Vega and Class Members the duties of good faith, fair dealing, and the accompanying fiduciary obligations.

74. In the sale and provision of insurance, and in the handling of the underinsured motorist claim, MetLife failed to exercise good faith, unreasonably delayed payment, and failed to give the interests of Vega and of Class Members the same consideration it gave their own interests.

75. MetLife's failure to pay anything on Vega's and Class Members' first $25,000.00 level of underinsured motorist claims was unfounded, unreasonable, and in bad faith.

76. MetLife misrepresented the terms of the policy sold and provided to Vega and Class Members, and/or failed to disclose material facts reasonably necessary to prevent other

statements from being misleading and failed to implement and follow reasonable standards in the sale and provision of insurance.

77.    MetLife's acts and failures to act were in reckless disregard of Vega's and Class Members' rights as an insured under the subject policy.

78.    MetLife's acts and practices took advantage of the lack of knowledge and experience of Vega and Class Members to a grossly unfair degree.

79.    MetLife's failed to abide by its statutory duties under the UIPA, and such violations constitute negligence per se.

80.    MetLife misrepresented to Vega and Class Members pertinent facts or policy provisions relating to coverages at issue, in violation of NMSA 1978, § 59A-16- 20(A).

81.    MetLife compelled Vega and Class Members to institute litigation to recover amounts due under the policies by offering substantially less (i.e., nothing on the first level of $25,000.00 of UIM coverage withheld based on the *Schmick* offset) than the amounts claimed by Vega and Class Members that will ultimately be recovered in actions brought by Vega, in violation of NMSA 1978, § 59A-16-20(G).

82.    MetLife's failure to act in good faith and MetLife's violations of the Insurance Code and Unfair Practices Act are proximate causes of damages sustained by Vega and Class Members.

83.    MetLife's conduct was in bad faith, malicious, willful, wanton, fraudulent and/or in reckless disregard of Vega's and Class Members' rights.

84.    Vega and Class Members are entitled to attorneys' fees and costs pursuant to NMSA 1978, §§ 59A-16-30 and 39-2-1. As a direct and proximate result of Defendants' acts, omissions policies, and conduct in violating UIPA, as set forth above, Vega and Class

Members have sustained damages, in addition to the damages common to all counts of this complaint, including but not limited to the actual damages incurred, the cost of prosecution of this lawsuit, attorneys' fees, and interest on the sums owed under the policy. These injuries and damages are ongoing, permanent, and are expected to continue in the future.

## CLAIM 3
## REFORMATION OF INSURANCE POLICY

85.     Vega and Class Members incorporate by reference the preceding paragraphs as though they were stated fully herein.

86.     Vega and similarly situated Class Members mistakenly believed that, by paying a premium for underinsured motorist coverage, they would receive underinsured motorist coverage at those same specific dollar amounts and limits.

87.     MetLife and its agents knew that, because of the operation of the offset described in *Schmick*, Vega and similarly-situated Class Members were vanishingly unlikely to receive the underinsured motorist benefits that they contracted for and for which MetLife collected premiums.

88.     At the time of contract formation, MetLife and its agents inequitably misrepresented the value of underinsured motorist coverage and failed to inform Vega and similarly-situated Class Members that, because of the operation of the offset described in *Schmick*, they were vanishingly unlikely to receive the underinsured motorist benefits that they contracted for and for which MetLife collected premiums.

89.     The inequitable failure of MetLife and its agents to inform Vega and similarly-situated Class Members that they were vanishingly unlikely to receive the underinsured motorist coverage caused Vega and similarly-situated Class Members to believe that, by paying a premium for underinsured motorist coverage, they would receive underinsured

motorist coverage reflected on their declaration pages.

90. The insurance contracts respectively entered between MetLife and its agents, on the one hand, and Vega and Class Members, on the other hand, do not express the intentions and reasonable beliefs of Vega and Class Members that they would receive the underinsured motorist coverage that they contracted for and for which MetLife collected premiums.

91. The court should reform the insurance contracts respectively entered between MetLife and its agents, on the one hand, and Vega and Class Members, on the other hand, to conform to the intentions and reasonable beliefs of Vega and Class Members that they would receive the underinsured motorist coverage that they contracted for and for which MetLife collected premiums.

**CLAIM 4**
**BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

92. Vega and Class Members incorporate by reference the preceding paragraphs as though they were stated fully herein.

93. A special relationship exists between MetLife, on the one hand, and Vega and Class Members, respectively, on the other hand, sufficient to impose a duty of good faith and fair dealing on MetLife owed to Vega and Class Members.

94. Implicit in the contract of insurance between Vega and Class Members, on the one hand, and MetLife on the other was the covenant that Defendants would, at all times, act in good faith and deal honestly and fairly with Vega and Class Members.

95. MetLife breached the implied covenant of good faith and fair dealing, in one or more of the following ways, including but not limited to:

    a. Failing to properly inform Vega and Class Members of the illusory and/or misleading coverage it solicited and sold;

b.      Charging a premium for coverage that was not provided;

c.      Failing and refusing to disclose, admit and acknowledge some amount of underinsured motorist coverage;

d.      Failing and refusing to fairly investigate, process, determine and decide Vega's and Class Members' claims under the policies referenced above; and

e.      Failing and refusing to mediate, resolve, and settle Vega's and Class Members' underinsured motorist claims.

96.      As a direct and proximate result of MetLife's acts and omissions alleged herein, Vega and Class Members have suffered damages in an amount to be proven at trial.

97.      MetLife's acts and omissions alleged herein and breach of the implied covenant of good faith and fair dealing were done intentionally, willfully, wantonly, grossly and/or with reckless disregard for the rights of Vega and Class Members.

98.      Accordingly, Vega and Class Members are entitled to recover punitive damages in an amount to be determined by the jury and sufficient to punish MetLife for its misconduct and to deter others from similar conduct in the future.

## CLAIM 5
## NEGLIGENCE

99.      Vega and Class Members incorporate by reference the preceding paragraphs as if they were fully stated herein.

100.      MetLife had a duty to ensure Vega and Class Members would be offered and obtain the maximum benefit of underinsured coverage and would not be sold illusory and/or misleading underinsured coverage.

101.      MetLife had a duty to provide Vega and Class Members coverage for which a premium was charged and collected.

102. It was reasonably foreseeable that the minimal limits underinsured coverage sold to Vega and Class Members was, in large part, illusory and/or misleading and that MetLife materially misrepresented the terms of underinsured coverage, and charged a premium for such illusory coverage.

103. A reasonably prudent insurance company exercising ordinary care would offer and sell underinsured coverage that was not illusory and/or misleading and would not materially misrepresent the terms of underinsured coverage by properly informing its insured of the coverage they were purchasing and obtaining a written waiver acknowledging its insured consent to the purchase of illusory and/or misleading underinsured motorist coverage.

104. A reasonably prudent insurer would not charge a premium for coverage it intended to deny or did not provide.

105. MetLife's actions and inactions, through its agents, employees, or others on its behalf, were negligent in that they breached the standard of care required of an insurance company issuing auto policies in New Mexico.

106. As a result of MetLife's negligence, Vega and Class Members sustained actual damages for which MetLife is liable. Vega and Class Members are entitled to punitive damages for actions of MetLife that were willful, reckless and wanton, and in bad faith and based on dishonest business judgment.

## CLAIM 6
## UNJUST ENRICHMENT

107. Vega and Class Members incorporate by reference the preceding paragraphs as though they were stated fully herein.

108. MetLife has applied the *Schmick* offset to its insureds' claims and denied the first level of underinsured motorist coverage in New Mexico since 1985. MetLife misled,

deceived, and acted in an unfair manner for decades and retained benefits (*i.e.*, the payment of proper claims, and retained premium charges which were unearned) from thousands of New Mexico insureds for years, including Vega and Class Members. The benefits MetLife denied their insureds allowed them to invest and enjoy the benefits of their deceptive and intentional conduct.

109.     Vega and Class Members are entitled to the value of the underinsured motorist benefits and out-of-pocket expenses under the equitable theory of unjust enrichment.

110.     MetLife should be ordered to disgorge of the value of the underinsured motorist benefits it retained, the UIM premiums it received, and the unjust profit that it derived therefrom.

## CLAIM 7
## NEGLIGENT MISREPRESENTATION

111.     Vega and Class Members incorporate by reference the preceding paragraphs as though they were stated fully herein.

112.     A special relationship exists between MetLife, on the one hand, and Vega and Class Members, respectively, on the other hand, sufficient to impose a duty on MetLife to disclose accurate information to Vega and Class Members.

113.     As early as 1985, when the New Mexico Supreme Court published its decision in *Schmick v. State Farm*, MetLife knew that underinsured motorist coverage would be illusory and/or misleading under circumstances similar to those experienced by Vega and Class Members.

114.     MetLife, however, withheld this information from Vega and Class Members and hid from them the fact that the underinsured motorist coverage as impacted by the *Schmick* offset is illusory and/or misleading.

115.    From 1985 through the present, MetLife failed to disclose material facts and made material misrepresentations to Vega and Class Members regarding illusory and/or misleading underinsured motorist coverage.

116.    MetLife, by their failures and omissions, misrepresented underinsured motorist coverages through their standard and uniform applications and policies used by Vega and Class Members, which MetLife knew or should have known, were misleading and contained material misrepresentations.

117.    MetLife's material omissions and misrepresentations were made to induce Vega and Class Members to purchase underinsured motorist coverage that MetLife knew was illusory and/or misleading.

118.    Vega and Class Members relied on MetLife's material omissions and misrepresentations when deciding to purchase underinsured motorist coverage at the level of coverage they respectively purchased.

119.    As a result of MetLife's misrepresentations and omissions, MetLife is liable to Vega and Class Members for their damages flowing from those misrepresentations and omissions.

120.    As a direct and proximate result of MetLife's negligent misrepresentations, Vega and Class Members suffered economic loss, including the lost benefits of underinsured motorist coverage and out-of-pocket expenses. Vega and Class Members seek the full measure of damages allowed under applicable law.

## CLAIM 8
## DECLARATORY JUDGMENT

121.    Vega and Class members incorporate by reference the preceding paragraphs as though they were stated fully herein.

122.     An actual controversy exists between the parties thereby rendering declaratory relief proper under the New Mexico Declaratory Judgment Act, NMSA 1978, Sections 44-6-1 through 44-6-15.

123.     The Court should reform the insurance contracts respectively entered between Defendant and their agents, and Ms. Vega and Class Members to conform to the intentions and reasonable beliefs of Ms. Vega and Class Members that they would receive the underinsured motorist coverage that they contracted for and for which Defendant collected premiums

124.     Vega and Class Members are entitled to a declaratory judgment establishing their respective rights and obligations of the parties with respect to the claims set forth herein.

## INJUNCTIVE RELIEF

125.     Vega and Class Members incorporate by reference the preceding paragraphs as though they were stated fully herein.

126.     Vega and Class Members are entitled to injunctive relief under the claims they have pled because Vega and Class Members would suffer an irreparable injury that monetary damages at a later time would not adequately compensate them for the injury of paying a premium for illusory and/or misleading coverage.

127.     MetLife should be enjoined from continuing practices that violate the duties, and contractual legal obligations owed to Vega and Class Members.

128.     MetLife must be compelled to stop their practice of collecting premiums for the sale of illusory and/or misleading underinsured motorist coverage and failing to provide underinsured motorist coverage benefits equal to the limits of liability coverage where they failed to properly inform Vega and Class Members throughout the application and policy underwriting process.

## REQUEST FOR RELIEF

Vega and Class Members request a jury trial and the following relief:

i.      An order certifying this action to proceed as a class action, authorizing Vega to represent the interests of the Class Members as appropriated and appointing undersigned counsel to represent the class.

ii.      Awarding compensatory damages to Vega and Class Members for the damages done to them by MetLife in an amount to be proven at trial;

iii.      Awarding Vega and Class Members damages from MetLife as a result of its violations of the UIPA, in an amount to be determined at trial for attorneys' fees and costs;

iv.      Awarding disgorgement of the value of the underinsured motorist benefits retained by MetLife, the UIM premiums received by MetLife, the unjust profit that MetLife derived therefrom, and any other amounts to which Vega and Class Members are equitably entitled under the theory of unjust enrichment;

v.      Awarding treble damages in accordance with NMSA 1978, Sections 57-12-10(B) and any and all damages pursuant to NMSA 1978, Sections 57-12-1 through -26, which will deter MetLife and others from such unfair trade practices and wrongful conduct in the future and will punish them for the conduct set forth herein;

vi.      Granting declaratory relief that establishes the rights and obligations of the parties with respect the claims set forth herein;

vii.      Granting injunctive relief requiring MetLife to properly inform Vega and Class Members throughout the application and policy underwriting process

of the true value of the underinsured motorist benefits that are being

advertised and sold;

viii.    Awarding Vega and Class Members their costs and expenses incurred in

these actions, including reasonable attorney's fees, experts' fees, and costs;

and

ix.    Granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Kedar Bhasker*
Kedar Bhasker
BHASKER LAW
2741 Indian School Rd. NE
Albuquerque, NM 87106
505-407-2088
Kedar@bhaskerlaw.com

and

Corbin Hildebrandt
CORBIN HILDEBRANDT P.C.
2741 Indian School Rd. NE
Albuquerque, NM 87106
Phone: 505 998-6626
corbin@hildebrandtlawnm.com

and

Geoffrey Romero
LAW OFFICES OF GEOFFREY R. ROMERO
4801 All Saints Rd. NW Ste. A
Albuquerque, NM 87120
(505) 247-3338
geoff@geoffromerolaw.com

*Counsel for the Plaintiff*

# Exhibit 1

## PLEASE SIGN AND RETURN TO US

*Margaret Christine*
Named Insured (print)

A 135260593 0 ✓
Policy Number

**NEW MEXICO**
**UNINSURED / UNDERINSURED MOTORISTS COVERAGE**
**ELECTION / REJECTION FORM**

This form is used to select the limits for the Uninsured / Underinsured Motorists Bodily Injury and Property Damage coverages that are best suited to your needs. Please read it carefully. The form must be completed, signed, and mailed to the address below when you are selecting, rejecting, or changing your Uninsured / Underinsured Motorists Bodily Injury (UMBI/UIMBI) coverage limits or your Uninsured Motorists Property Damage (UMPD) coverage limits. If you have any questions, please see the "How To Reach Us" section in the front of your policy package for your choice of contact options.

Uninsured Motorists Bodily Injury (UMBI) coverage will pay for loss resulting from bodily injury or death which you, or any other person occupying your covered automobile, are legally entitled to collect from the owner or driver of any uninsured motor vehicle or a hit-and-run motor vehicle.

Underinsured Motorists Bodily Injury (UIMBI) coverage will pay for loss resulting from bodily injury or death which you are legally entitled to collect from the owner or driver of a motor vehicle insured for amounts insufficient to pay for your loss.

Uninsured Motorists Property Damage (UMPD) coverage provides coverage for property damage you sustain as a result of an accident with an uninsured motor vehicle. UMPD coverage is subject to a $250 deductible.

You may select UMBI / UIMBI and UMPD coverage at the minimum limits required by law, or, for relatively modest increases in premium, in any amount up to the Bodily Injury and Property Damage Liability limits of your policy. You may also reject these coverages. Please indicate your selection below by checking the option you desire:

Your Bodily Injury limit on the policy: $ 25,000 / $ 50,000

I understand that if I select a coverage limit for Uninsured / Underinsured Motorists coverage that is lower than the limit on my policy for Bodily Injury Liability coverage, that I am rejecting Uninsured / Underinsured Motorists coverage limits equal to my Bodily Injury Liability coverage.

**I SELECT THE UNINSURED / UNDERINSURED MOTORISTS BODILY INJURY LIMITS INDICATED BELOW:**

| | |
|---|---|
| _MC_✓ $25,000 per person / $50,000 per accident | $ 122 |
| _____ $30,000 per person / $60,000 per accident | $ 156 |
| _____ $50,000 per person / $100,000 per accident | $ 160 |
| _____ $60,000 per person / $120,000 per accident | $ 188 |
| _____ $100,000 per person / $300,000 per accident | $ 206 |
| _____ $150,000 per person / $350,000 per accident | $ 222 |
| _____ $250,000 per person / $500,000 per accident | $ 238 |
| _____ $300,000 per person / $600,000 per accident | $ 244 |

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its affiliates. Warwick, RI

**I SELECT THE UNINSURED MOTORISTS PROPERTY DAMAGE LIMITS INDICATED BELOW:**

| | | |
|---|---|---|
| _\_\_\__ | $10,000 per accident | $ 58 |
| _MC_ | $15,000 per accident | $ 72 |
| _\_\_\__ | $20,000 per accident | $ 82 |
| _\_\_\__ | $25,000 per accident | $ 100 |
| _\_\_\__ | $50,000 per accident | $ 114 |
| _\_\_\__ | $100,000 per accident | $ 140 |

_\_\_\__ I reject the Uninsured / Underinsured Motorists coverage, as well as Uninsured Motorists Property Damage in their entirety. I understand that I may add these coverages at any future date.

**NEW MEXICO STACKING OF UNINSURED MOTORISTS COVERAGE**

If you have elected to purchase Uninsured Motorists coverage, you have the option to reject intra-policy Stacked Uninsured Motorists coverage and, instead, purchase Non-Stacked Uninsured Motorists coverage  Subject to the provisions of the policy, intra-policy stacking refers to aggregating the Uninsured Motorists coverage limits, for you and members of your household, for each vehicle specifically insured under the policy

Please indicate your choice of stacking Uninsured Motorists coverage below.

_\_\_\__ I SELECT the Stacking of Uninsured Motorists coverage     $ 166

_MC_ I REJECT the Stacking of Uninsured Motorists coverage     $ 122

Signature _(signature)_          Date 3/27/18

Mail to:
Attention Services
MetLife Auto & Home
P.O. Box 6060
Scranton, PA 18505-6060

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its affiliates  Warwick, RI

www.eservice.metlife.com

MPL 0395 000  Printed In U S A  0312

*E1601801621*

From:
Mariana Christine
1133 Adams St NE Unit G
ABQ, NM 87110

U S POSTAGE  $.50
Pitney Bowes
87110
Pennet code
2500
03/05/18
906
0893369963
SSK

# Exhibit 2

This is to certify that the attached declarations page is a true and accurate representation of the declarations page for the insurance policy described below:

| | |
|---|---|
| Named Insured(s): | <u>MARGARET CHRISTINE</u> |
| Policy Type: | Auto |
| Policy Number: | <u>1352605930</u> |
| Issuing Insurance Company: | <u>Metropolitan Direct Property and Casualty Insurance Company</u> |
| As of Date: | <u>02/07/2018</u> |

Signed by: _Dave Walker_

Notary: _Patricia L Massie_

Date: 2/10/2021



PATRICIA L MASSIE
NOTARY PUBLIC OHIO
MY COMMISSION EXPIRES 03-25-24

| Policy Number: 1352605930 | |
|---|---|
| Policy Effective Date: 02/07/2018 | Page 1 of 2 |
| Policy Expiration Date: 02/07/2019 | |
| At: 12:01 A.M. Standard Time | New Policy Effective Date: 02/07/2018 |

| Named Insured: | |
|---|---|
| MARGARET CHRISTINE | |
| 633 ADAMS ST NE UNIT C | You have selected our Payroll Deduction Plan. Your |
| ALBUQUERQUE NM 87110 | premium includes the Payroll Deduction Discount. |

## Insured Vehicle(s)

| Veh | Year | Make | Model | Body Type | Vehicle ID Number | Com/Col Sym | Terr |
|---|---|---|---|---|---|---|---|
| 1 | 2006 | CHEVROLET | MALIBU | SEDAN | 1G1ZU53806F209036 | 21/25 | 15 |

| Coverage Description | Applicable Limits | | Annual Premiums |
|---|---|---|---|
| | | | 2006 CHEVR |
| **Liability** | | | |
| Bodily Injury | $ | 25,000 Each Person/ | |
| | $ | 50,000 Each Accident | 346 |
| Property Damage | $ | 25,000 Each Accident | 248 |
| **Physical Damage** | 2006 CHEVR | | |
| Actual Cash Value (ACV) or Limit | ACV | | |
| Collision Less Deductible | $ 300 | | 498 |
| Comprehensive Less Deductible | $ 250 | | 232 |
| Towing and Labor Limit | $ 50 | | Incl |
| **Optional Coverages** | | | |
| Substitute Transportation | $ 25 Day/$ 750 Accident | | 70 |
| Glass Deductible Buyback | | | Incl |
| | **Vehicle Totals:** | 1394 | |
| | **Total For All Vehicles:** | | 1,394 |
| **Uninsured/Underinsured Motorists** | | | |
| Bodily Injury | $ | 25,000 Each Person/ | |
| | $ | 50,000 Each Accident | 80 |
| Property Damage | $ | 20,000 Each Accident | 56 |
| | **Total Annual Premium:** | | 1,530 |

---

**Forms and Endorsements:**     AP6000 0513     AP6100 0513     AE70NM 0914     AE9110 0513
AE9200 0513     AE40NM 0914     AE5300 0513

---

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its affiliates, Warwick, RI.

MPL 1380-000           Printed in U.S.A. 0298

| Policy Number: 1352605930 | |
|---|---|
| Policy Effective Date: 02/07/2018 | **Page 2 of 2** |
| Policy Expiration Date: 02/07/2019 | |
| At: 12:01 A.M. Standard Time | **New Policy Effective Date: 02/07/2018** |

## Discounts

The following have been included in the total annual premium:

    MetRewards Discount
    Anti-lock Brake Discount applies to 2006 CHEVR
    Payroll Discount
    Auto Policy Plus, including
        Homeowners
        Individual Life / Annuity
    A Special Group Rate applies
    Welcome Discount

## Rating Information

### Household Drivers:

| 12/08/1973 | MARGARET CHRISTINE | Divorced |
|---|---|---|
| | Licensed 27 Years | |

**IF YOU HAVE A DRIVER IN YOUR HOUSEHOLD WHO IS NOT LISTED ABOVE, PLEASE NOTIFY US IMMEDIATELY.**

## Interested Parties

| 2006 CHEVROLET | Lien/Loss Payee: | JD BYRIDER | | |
|---|---|---|---|---|
| | | 6008 CENTRAL AVE SE | ALBUQUERQUE | NM 87108 |

For service or claims, see the Customer
Service and Claim Directory located on
the back of your cover page.

319 - AVC - 1

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its affiliates, Warwick, RI.

This is to certify that the attached declarations page is a true and accurate representation of the declarations page for the insurance policy described below:

| | |
|---|---|
| Named Insured(s): | MARGARET CHRISTINE |
| Policy Type: | Auto |
| Policy Number: | 1352605930 |
| Issuing Insurance Company: | Metropolitan Direct Property and Casualty Insurance Company |
| As of Date: | 02/07/2019 |

Signed by:　　　_Dave Walker_

Notary:　　　_Patricia L Massie_

Date: __2/10/2021__



PATRICIA L MASSIE
NOTARY PUBLIC   OHIO
MY COMMISSION EXPIRES 03-25-24

MetLife® Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its Affiliates, Warwick, RI

| Policy Number: 1352605930<br>Policy Effective Date: 02/07/2019<br>Policy Expiration Date: 02/07/2020<br>At: 12:01 A.M. Standard Time | Page 1 of 2<br><br>Renewal Effective Date: 02/07/2019 |
|---|---|
| Named Insured:<br>MARGARET CHRISTINE<br>633 ADAMS ST NE UNIT C<br>ALBUQUERQUE NM 87110 | You Have Selected ExpressIT. Your premium payments will be reflected in the monthly statement from your bank. |

### Insured Vehicle(s)

| Veh | Year | Make | Model | Body Type | Vehicle ID Number | Com/Col Sym | Terr |
|---|---|---|---|---|---|---|---|
| 1 | 2018 | HYUNDAI | ELANTRA | SEDAN | 5NPD84LF1JH311216 | 25/15 | 15 |

| Coverage Description | Applicable Limits | | Annual Premiums |
|---|---|---|---|
| | | 2018 HYUND | |
| **Liability** | | | |
| Bodily Injury | $ 25,000 Each Person/ | | |
| | $ 50,000 Each Accident | | 402 |
| Property Damage | $ 25,000 Each Accident | | 330 |
| **Physical Damage** | | 2018 HYUND | |
| Actual Cash Value (ACV) or Limit | ACV | | |
| Collision Less Deductible | $ 300 | | 848 |
| Comprehensive Less Deductible | $ 250 | | 554 |
| Towing and Labor Limit | $ 50 | | Incl |
| **Optional Coverages** | | | |
| Substitute Transportation | $ 25 Day/$ 750 Accident | | 70 |
| Glass Deductible Buyback | | | Incl |
| | **Vehicle Totals:** | | 2204 |
| | **Total For All Vehicles:** | | 2,204 |
| **Uninsured/Underinsured Motorists** | | | |
| Bodily Injury | $ 25,000 Each Person/ | | |
| | $ 50,000 Each Accident | | 104 |
| Property Damage | $ 15,000 Each Accident | | 64 |
| | **Total Annual Premium:** | | 2,372 |

---

**Deductible Savings Benefit (DSB) $ 0**

Deductible Savings reduces Collision or Comprehensive deductibles, excluding towing and glass claims, effective 02/07/2019 for claims occurring after this date. Your next anniversary date is 02/07/2020.

---

**Forms and Endorsements:** AP6000 0513    AP6100 0513    AE70NM 0914    AE9110 0513
AE9200 0513    AE40NM 0914    AE5300 0513

---

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its affiliates, Warwick, RI.

| Policy Number: 1352605930 | Page 2 of 2 |
|---|---|
| Policy Effective Date: 02/07/2019 | |
| Policy Expiration Date: 02/07/2020 | |
| At: 12:01 A.M. Standard Time | Renewal Effective Date: 02/07/2019 |

## Discounts

The following have been included in the total annual premium:

    MetRewards Discount
    Anti-lock Brake Discount applies to 2018 HYUND
    ExpressIT Discount
    Auto Policy Plus, including
        Homeowners
        Individual Life / Annuity
    A Special Group Rate applies
    Welcome Discount

---

## Rating Information

**Household Drivers:**

| 12/08/1973 | MARGARET CHRISTINE | Divorced |
|---|---|---|
| | Licensed 28 Years | |

**IF YOU HAVE A DRIVER IN YOUR HOUSEHOLD WHO IS NOT LISTED ABOVE, PLEASE NOTIFY US IMMEDIATELY.**

---

For service or claims, see the Customer
Service and Claim Directory located on
the back of your cover page.

             319 - AVC - 9

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its affiliates, Warwick, RI.

| | |
|---|---|
| **Policy Number:** 1352605930<br>**Policy Effective Date:** 02/07/2019<br>**Policy Expiration Date:** 02/07/2020<br>    **At: 12:01 A.M. Standard Time** | **Page 2 of 2**<br>**Change 03**<br>**Policy Change Effective Date: 04/29/2019** |

## Discounts

The following have been included in the total annual premium:

MetRewards Discount
Anti-lock Brake Discount applies to 2018 HYUND
ExpressIT Discount
Auto Policy Plus, including
    Homeowners
      Individual Life / Annuity.
A Special Group Rate applies
Welcome Discount

## Rating Information

**Household Drivers:**

12/08/1973   MARGARET VEGA               Married
              Licensed 28 Years

**IF YOU HAVE A DRIVER IN YOUR HOUSEHOLD WHO IS NOT LISTED ABOVE, PLEASE NOTIFY US IMMEDIATELY.**

## Updated Policy Information

ExpressIt Discount Added                        Billing Payment Plan Changed

For service or claims, see the Customer
Service and Claim Directory located on
the back of your cover page.

                              319 - AVC - 9

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its affiliates, Warwick, RI.

This is to certify that the attached declarations page is a true and accurate representation of the declarations page for the insurance policy described below:

Named Insured(s):    MARGARET VEGA
Policy Type:         Auto
Policy Number:       1352605930
Issuing Insurance Company:   Metropolitan Direct Property and Casualty Insurance Company
As of Date:          02/07/2020

Signed by: _Dave Walter_

Notary: _Patricia L Massie_

Date:  2/10/2021



PATRICIA L MASSIE
NOTARY PUBLIC   OHIO
MY COMMISSION EXPIRES 03-25-24

| | |
|---|---|
| **Policy Number:** 1352605930<br>**Policy Effective Date:** 02/07/2020<br>**Policy Expiration Date:** 02/07/2021<br>**At: 12:01 A.M. Standard Time** | **Page 1 of 2**<br>**Change 01**<br><br>**Policy Change Effective Date: 02/07/2020** |
| **Named Insured:**<br>MARGARET VEGA<br>633 ADAMS ST NE UNIT C<br>ALBUQUERQUE NM 87110 | You Have Selected ExpressIT. Your premium payments will be reflected in the monthly statement from your bank. |

### Insured Vehicle(s)

| Veh | Year | Make | Model | Body Type | Vehicle ID Number | Com/Col Sym | Terr |
|---|---|---|---|---|---|---|---|
| 1 | 2018 | FORD | ECOSPOR | SUV | MAJ3P1VE5JC203376 | 14/14 | 15 |

| Coverage Description | Applicable Limits | | Annual Premiums |
|---|---|---|---|
| | | **2018**<br>**FORD** | |
| **Liability** | | | |
| Bodily Injury | $ | 25,000 Each Person/ | |
| | $ | 50,000 Each Accident | 262 |
| Property Damage | $ | 25,000 Each Accident | 270 |
| **Physical Damage** | | **2018**<br>**FORD** | |
| Actual Cash Value (ACV) or Limit | ACV | | |
| Collision Less Deductible | $ 300 | | 636 |
| Comprehensive Less Deductible | $ 250 | | 280 |
| Towing and Labor Limit | $ 50 | | Incl |
| **Optional Coverages** | | | |
| Substitute Transportation | $ 25 Day/$ 750 Accident | | 70 |
| Glass Deductible Buyback | | | Incl |
| | **Vehicle Totals:** | | 1518 |
| | **Total For All Vehicles:** | | 1,518 |
| **Uninsured/Underinsured Motorists** | | | |
| Bodily Injury | $ | 25,000 Each Person/ | |
| | $ | 50,000 Each Accident | 86 |
| Property Damage | $ | 15,000 Each Accident | 54 |
| | **Total Annual Premium:** | | 1,658 |

Prior Annual Premium: $ 2,074.00
Change in premium from 02/07/2020 through 02/07/2021: $ 416-
This change to your policy is effective back to 01/02/2020
Change in premium from 01/02/2020 through 02/07/2020: $ 40-

This Declarations does not supersede any cancellation notices.

---

**Deductible Savings Benefit (DSB) $ 0**

Deductible Savings reduces Collision or Comprehensive deductibles, excluding towing and glass claims, effective 01/09/2020 for claims occurring after this date. Your next anniversary date is 02/07/2021.

---

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its affiliates, Warwick, RI.

MPL 1380-000

Printed in U.S.A. 0298

| Policy Number: 1352605930 | |
|---|---|
| Policy Effective Date: 02/07/2020 | Page 2 of 2 |
| Policy Expiration Date: 02/07/2021 | Change 01 |
| At: 12:01 A.M. Standard Time | Policy Change Effective Date: 02/07/2020 |

**Forms and Endorsements:**

| | AP6000 0513 | AP6100 0513 | AE70NM 1119 | AE9110 0513 |
|---|---|---|---|---|
| AE9200 0513 | AE40NM 0914 | AE5300 0513 | | |

---

## Discounts

The following have been included in the total annual premium:

MetRewards Discount
Anti-lock Brake Discount applies to 2018 FORD
ExpressIT Discount
Auto Policy Plus, including
      Homeowners
      Individual Life / Annuity
A Special Group Rate applies

---

## Rating Information

**Household Drivers:**

12/08/1973   MARGARET VEGA          Married
             Licensed 29 Years

**IF YOU HAVE A DRIVER IN YOUR HOUSEHOLD WHO IS NOT LISTED ABOVE, PLEASE NOTIFY US IMMEDIATELY.**

---

## Interested Parties

| 2018 FORD | Lien/Loss Payee: | WESTLAKE FINANCIAL SE | | |
|---|---|---|---|---|
| | | PO BOX 997952 | SACRAMENTO | CA 95899 |

---

## Updated Policy Information

Driver Removed From Policy

---

For service or claims, see the Customer
Service and Claim Directory located on
the back of your cover page.

                    319 - AVC - 9

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its affiliates, Warwick, RI.

# Exhibit 3

## MetLife Auto & Home®

## Auto

## Insurance Policy

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its affiliates, Warwick, RI.

THE COMPANY NAMED IN THE DECLARATIONS
Administrative Offices:
700 Quaker Lane, Warwick, Rhode Island 02886

## AUTO INSURANCE POLICY

### TABLE OF CONTENTS

| | PAGE |
|---|---|
| INSURANCE AGREEMENT AND DECLARATIONS | 1 |
| | |
| **GENERAL DEFINITIONS** | 1 |
| Actual Cash Value | 1 |
| Auto | 1 |
| Auto Business | 1 |
| Bodily Injury (BI) | 1 |
| Collision | 1 |
| Covered Auto | 1 |
| Deductible | 2 |
| Fungus and Mold | 2 |
| Insured | 2 |
| Loss | 2 |
| Medical Services | 2 |
| Medical Expense | 2 |
| Motorcycle | 2 |
| Motor Vehicle | 2 |
| Non-Owned Auto | 3 |
| Nuclear Action | 3 |
| Occupying | 3 |
| Property Damage (PD) | 3 |
| Racing | 3 |
| Reasonable Expenses | 3 |
| Relative | 3 |
| Substitute Auto | 3 |
| Total Loss | 4 |
| Trailer | 4 |
| War | 4 |
| We, Us, Our, Company | 4 |
| You, Your | 4 |
| | |
| **LIABILITY COVERAGE** | 4 |
| Insuring Agreement | 4 |
| Supplemental Payments | 4 |
| Exclusions | 5 |
| Limit Of Liability | 5 |
| Duplication Of Payments | 6 |
| Financial Responsibility | 6 |
| Out Of State Insurance | 6 |
| Other Insurance | 6 |
| | |
| **MEDICAL EXPENSE COVERAGE** | 6 |
| Insuring Agreement | 7 |
| Exclusions | 7 |
| Limit Of Liability | 7 |
| Duplicate Payments | 8 |
| Other Insurance | 8 |

Printed in U.S.A. 0513

**PHYSICAL DAMAGE COVERAGE** 8
   Insuring Agreements 8
      Comprehensive Coverage 8
      Collision Coverage 8
      Towing And Labor Coverage 8
      Substitute Transportation Coverage 9
   Supplemental Payments 9
   Exclusions 9
   Limit Of Liability 11
      Replacement Cost Settlement 11
      Actual Cash Value Settlement 11
      Replacement Cost for Special Parts 11
   Deductible 12
   No Benefit To Bailee 12
   Appraisal 12
   Payment Of Loss 12
   Other Insurance 12

**GENERAL POLICY CONDITIONS** 13
   Territory And Policy Period 13
   Changes 13
   Fraud And Misrepresentation 13
   Duties After A Loss 13
   Medical Reports; Proof And Payment Of Claim 14
   Legal Action Against Us 15
   Our Recovery Right 15
   Assignment 15
   Conformity To Law 16
   Loss Payable Clause 16
   Additional Insured 16
   Termination See State Provisions Endorsement

**PERSONAL INJURY PROTECTION COVERAGE**
   If shown in the Declarations, see Personal Injury Protection Coverage Endorsement

**UNINSURED AND UNDERINSURED MOTORISTS COVERAGE**
   If shown in the Declarations, see Uninsured/Underinsured Coverage Endorsement(s)

# AUTO INSURANCE POLICY

## INSURANCE AGREEMENT AND DECLARATIONS

In return for the payment of premium, **we** agree to insure **you** for the coverages and applicable limits of insurance shown in the Declarations. The coverages provided are subject to all the terms, conditions, and limitations of this policy. The policy consists of the policy contract, the Declarations, and all endorsements that apply.

When **you** accept this policy, **you** agree that the representations made by **you** or on **your** behalf for this insurance are true. **We** provide this insurance based upon those truths. This policy contains all agreements between **you** and **us**.

## GENERAL DEFINITIONS

Certain words and phrases are defined for use in this policy. These words and phrases have the same meaning whether in singular, plural, or any other form. Each coverage may define words and phrases that are used only with that coverage. Defined words and phrases appear in boldface type.

A. **ACTUAL CASH VALUE** means the amount that it would cost to repair or replace the damaged property, minus the amount for any physical deterioration and depreciation.

B. **AUTO** means a land **motor vehicle** of the private passenger, pick-up truck, low speed vehicle, or van type which is designed and intended for use mainly on public roads. Golf carts which are registered for use on public roads are **autos**.

C. **AUTO BUSINESS** means the business or occupation of:
    1. selling;
    2. leasing;
    3. repairing;
    4. servicing;
    5. storing;
    6. parking;
    7. delivering; or
    8. testing;
**motor vehicles** or **trailers**.

D. **BODILY INJURY** (referred to as "**BI**") means any physical injury to a person and any resulting sickness, disease or death.

E. **COLLISION** means the contact of an **auto** with another object, vehicle, or the road bed. This includes the overturning of an **auto**.

F. **COVERED AUTO** means:
    1. any **auto** or **trailer** which is shown in the Declarations and is owned by, registered to, or leased by **you** or a **relative**;
    2. any **auto** or **trailer** which is shown in the Declarations and which is furnished to **you** or a **relative** for **your** regular use, but is not owned by or leased to **you** or a **relative**;
    3. a camper that is designed to be mounted on a pickup truck. The camper must be shown in the Declarations;
    4. a substitute **auto**;
    5. an **auto** which is newly acquired by **you**. **You** must ask **us** to add it to **your** policy within 30 days of acquisition and pay any additional premium due.
    If the newly acquired **auto**:
        a. replaces an **auto** shown in the Declarations then the coverages and limits applicable to the replaced **auto** shall apply to the newly acquired **auto**.

    **b.** does not replace an **auto** shown in the Declarations, then the broadest coverages and limits applicable to any **auto** shall apply to the newly acquired **auto**. If Comprehensive or Collision Coverage does not apply to any **auto** shown in the Declarations, **we** will provide Comprehensive and Collision Coverages subject to a $500 deductible for the newly acquired **auto**.

An **auto**, **trailer** or camper is no longer a **covered auto** on the date it is no longer owned by, leased to, or available for regular use by **you** or a **relative**.

**G. DEDUCTIBLE** means the amount of **loss** to be paid by **you**.

**H. FUNGUS AND MOLD** means inhalation, ingestion, the existence of or exposure to any fungi, mold, mushrooms, bacteria, mildew, wet rot or dry rot and any mycotoxins, spores, scents, or by-products produced by any of these.

**I. INSURED** means:
    **1.** with respect to a **covered auto**:
        **a. you**;
        **b.** any **relative**; or
        **c.** any other person using it with **your** or a **relative's** permission. The use must be within the scope of the permission given by **you** or a **relative**.
    **2.** with respect to a **non-owned auto**, **you** or any **relative**. The use must be within the scope of the permission given to **you** or a **relative**.
    **3.** any other person or organization if liable due to the acts or omissions of any person described in **1.** or **2.** above. This provision does not apply:
        **a.** if the vehicle is a **non-owned auto** owned or hired by the person or organization.
        **b.** to the United States of America or any of its agencies.

**J. LOSS** means direct, sudden and accidental damage or total or partial theft. **Loss** does not include any actual or perceived reduction in market or resale value.

**K. MEDICAL SERVICES** means necessary medical treatments, procedures, products, services, and supplies which:
    **1.** are provided by licensed hospitals, physicians, clinics or other medical or healthcare providers, if the provider is required to be licensed by law; and
        **a.** is within the legally authorized scope of the provider's practice or service;
        **b.** are commonly and customarily recognized as the standard of care and treatment throughout the medical and dental professions and within the United States of America as appropriate for the **BI**;
        **c.** serve a medical purpose or are for a medical reason:
        **d.** are not experimental in nature; and
        **e.** are not for research or testing purposes;
    **2.** includes ambulance or medical transportation services;
    **3.** includes professional nursing services;
    **4.** includes the costs of pharmaceuticals prescribed by a licensed medical provider, eyeglasses, hearing aids, orthopedics and prosthetic devices; or
    **5.** are due to common funeral or burial services or practices.

**L. MEDICAL EXPENSE** means the reasonable expenses incurred for any **medical services**.

**M. MOTORCYCLE** means a two-wheeled or three-wheeled motorized vehicle of the motorcycle, motorbike, moped or registered motor scooter type, including, if attached, a sidecar or **trailer**.

**N. MOTOR VEHICLE** means a land motor vehicle designed for use mainly on public roads other than:
    **1.** a farm type tractor or farm equipment designed for use mainly off public roads, while not upon public roads;
    **2.** a vehicle operated on rails or crawler-treads;

3. a self-propelled steam or traction engine;
4. a compactor type engineering vehicle used for the construction of roads or foundations; or
5. a vehicle used primarily as a residence, dwelling, premises, or place of business.

**O. NON-OWNED AUTO** means:
  1. an auto being used by **you** or a **relative** with the owner's permission. The **auto** must not be owned by, furnished to, or made available for regular use by **you**, or any **relative**. However, an **auto** owned by, furnished to, or made available for regular use by a **relative** shall be a **non-owned auto** when it is used by:
     a. **you**; or
     b. any other **relative**.
  2. a commercially rented **auto**, or truck which has a Gross Vehicle Weight Rating of under 26,000 lbs., used by **you** or a **relative** on a temporary basis.

**P. NUCLEAR ACTION** means nuclear reaction, nuclear discharge, radiation or radioactive contamination including any cleanup, decontamination or containment activities regardless of how the reaction, discharge or contamination occurred.

**Q. OCCUPYING** means in, on, entering, or exiting.

**R. PROPERTY DAMAGE** (referred to as **"PD"**) means physical damage to, destruction of, or loss of use of tangible property.

**S. RACING** means preparing, practicing, competing or driving in any organized or prearranged:
  1. race;
  2. speed contest;
  3. high speed driving;
  4. stunting;
  5. demolition; or
  6. other similar organized exhibition or demonstration,
on a closed course.

**T. REASONABLE EXPENSES** means the least of:
  1. the reasonable, usual and customary fees charged by a majority of healthcare providers who provide similar **medical services** in the geographical area in which the fees were incurred. The fee may be established by a database, survey or any other means which identifies the amounts charged by healthcare providers within the same or a similar geographical area in which the fees were incurred;
  2. the fee specified in any fee schedule which is authorized or prescribed by law to apply to medical payments coverage, no-fault coverage, or personal injury protection coverage included in an auto liability policy issued in the state where the **medical services** were provided;
  3. the fees agreed to by both the healthcare provider and **us**; or
  4. the fees agreed to by the healthcare provider and a third party or a network.

**U. RELATIVE** means a person, other than **you**, who is a resident of **your** household, and is related to **you** by blood, marriage, civil union, registered domestic partnership, or adoption. This includes a ward, stepchild, foster-child, and **your** children that are residents of **your** household who are living elsewhere. **We** may require reasonable proof of residency in **your** household.

**V. SUBSTITUTE AUTO** means an **auto** or **trailer** which is not owned by **you** or any **relative**, and which is used with the owner's permission to replace a **covered auto** for a short time. The **covered auto** has to be out of normal use due to:
  1. breakdown;
  2. destruction;
  3. loss;

    **4.** repair; or
    **5.** servicing.

**W. TOTAL LOSS** means a loss in which the cost to repair the vehicle to its pre-loss condition plus the salvage value, equals or exceeds the **actual cash value.**

**X. TRAILER** means a trailer designed to be towed by an **auto** and which is not used as an office, store, display, or passenger trailer. A farm wagon or farm implement is a **trailer** while being towed by an **auto.**

**Y. War** means a state of conflict including:
    **1.** war, declared or undeclared;
    **2.** civil war;
    **3.** insurrection;
    **4.** rebellion;
    **5.** revolution; or
    **6.** warlike actions by a military force or personnel.

**Z. WE, US, OUR** and **COMPANY** mean the company named in the Declarations.

**AA.YOU** and **YOUR** mean the named insured or named insureds shown in the Declarations. If a named insured shown in the Declarations is a person, then **you** and **your** includes that person's:
    **1.** spouse; or
    **2.** partner in a civil union, registered domestic partnership or other similar union.
The spouse or partner must be a resident of the same household as the named insured. The marriage, civil union or domestic partnership must have been validly entered into under the laws of a state, municipality, or territory of the United States or any other country.

## LIABILITY COVERAGE

Coverage is provided when the coverage is shown as applying in the Declarations.

### INSURING AGREEMENT
**We** will pay damages for **BI** and **PD** to others for which the law holds an **insured** responsible because of a **loss** resulting from owning, maintaining, or using a **covered auto** or **non-owned auto**, including a **trailer**, mounted camper unit, attached cap, topper, or canopy which is being used with either. Damages include prejudgment interest awarded against an **insured**. The most **we** will pay for all damages shall not be more than the amount determined by the **LIMIT OF LIABILITY.**

**We** will defend an **insured**, at **our** expense against any suit or claim seeking these damages. **We** may use attorneys of **our** choice in any suit or claim. **We** may investigate, negotiate or settle any such suit or claim. **Our** duty to defend ends when **we** deposit in court or pay any amount due under this coverage. **We** have no duty to defend an **insured** for any suit or settle any claim not covered under this policy.

### SUPPLEMENTAL PAYMENTS
In addition to the limits of liability, **we** will pay the following expenses incurred by an **insured** due to a claim or suit covered under this policy:
    **A.** Premiums on the following bonds:
        **1.** Appeal bonds in any suit **we** defend.
        **2.** Bonds to release attachments in any suit **we** defend. The total amount of the bonds must not exceed **our** limit of liability.
        **3.** Up to $250 for any bail bond needed because of an accident or traffic violation(s) from owning, maintaining or using a **covered auto.**
    **We** have no duty to furnish or apply for any bonds.

**B.** Court costs charged to an insured.

**C.** Costs paid by an insured to give first aid to others at the time of a loss involving a covered auto or non-owned auto.

**D.** Wages an insured loses while attending a hearing or trial at our request. The most we will pay to any insured is up to $250 per day. We will not pay for loss of other income.

**E.** Other reasonable expenses incurred at our request

## EXCLUSIONS

**A.** We do not cover BI to any employee of an insured from his or her employment except domestic employees who are not covered or not required to be covered under any workers' compensation law.

**B.** We do not cover BI to a fellow employee of an insured while on the job and in the business of his employers. This exclusion does not apply to you or any relatives.

**C.** We do not cover BI or PD arising out of an auto business. This exclusion does not apply when a covered auto is used by you, a relative, or by any other person in any auto business in which you have an interest as owner or partner.

**D.** We do not cover any BI or PD which is covered under an atomic or nuclear energy liability insurance policy, or that would have been covered had that policy not been terminated upon exhaustion of its limit of liability.

**E.** We do not cover any BI or PD due to a nuclear action.

**F.** We do not cover BI or PD caused by or resulting from an auto while it is:

    **1.** rented to any person or organization in any fashion; or

    **2.** leased to any person or organization in any fashion.

  This exclusion does not apply:

    **1.** while the auto is rented or leased to or for your or a relative's use;

    **2.** while the auto is used in a shared expense car pool; or

    **3.** while the auto is being used for volunteer or charitable purposes for which reimbursement for normal operating expenses may be paid to you or a relative.

**G.** We do not cover BI or PD caused by or resulting from an auto while it is being used to carry persons for a charge. This exclusion does not apply while the auto:

    **1.** is used in a shared expense car pool; or

    **2.** is being used for volunteer or charitable purposes for which reimbursement for normal operating expenses may be paid to you or a relative.

**H.** We do not cover PD caused by any insured to:

    **1.** an auto that is owned by, rented to, operated by, or in the care of that insured; or

    **2.** any other property that is owned by, rented to, or in the care of any insured. This exclusion does not apply to a rented dwelling or private garage.

**I.** We do not cover any awards or judgments designated as punitive, exemplary, statutory multiple, or delay damages or awards.

**J.** We do not cover BI or PD from an intentional act caused by or at the direction of an insured. This exclusion applies even if the actual injury or damage is different than that which was intended or expected.

**K.** We do not cover BI or PD caused by or resulting from any auto while racing.

**L.** We do not cover BI or PD from the use of an auto for which the provisions of the Federal Tort Claims Act apply.

**M.** We do not cover any BI or PD directly or indirectly caused by fungus and mold.

**N.** We do not cover BI or PD from occupying or using an auto while:

    **1.** it is being used as an aircraft; or

    **2.** it is being used as a watercraft.

**O.** We do not cover BI or PD caused by anyone occupying or using an auto without the owner's permission or a reasonable belief that the person is entitled to occupy or use the auto. This exclusion does not apply to you or a relative occupying or using a covered auto or non-owned auto.

## LIMIT OF LIABILITY

The limit of liability shown for Bodily Injury in the Declarations for "each person" is the most we will pay for all damages, including prejudgment and post-judgment interest, due to BI to any one person as the result of any one accident. This includes all damages sustained by any other person as a result of that BI.

Subject to this limit for "each person", the Bodily Injury limit shown in the Declarations for "each accident" is the most we will pay for all damages, including prejudgment and post-judgment interest, arising out of BI sustained by two or more persons resulting from any one accident.

The limit of liability shown for Property Damage in the Declarations for "each accident" is the most we will pay for all damages, including prejudgment and post-judgment interest, to all property resulting from any one accident.

If a single limit of liability for Bodily Injury and Property Damage is shown in the Declarations, it is the most we will pay for all damages, including prejudgment and post-judgment interest, due to BI and PD as the result of any one accident

The limit of liability includes damages for care, loss of consortium, emotional distress, and loss of services or death.

This is the most we will pay regardless of the number of:
- A. insureds;
- B. claims made;
- C. vehicles shown in the Declarations;
- D. premiums shown in the Declarations; or
- E. vehicles involved in the accident.

An auto and attached trailer are considered one vehicle.

## DUPLICATION OF PAYMENTS
No person is entitled to receive duplicate payments for the same elements of loss under this section and any other coverage provided by this policy.

## FINANCIAL RESPONSIBILITY
When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

## OUT OF STATE INSURANCE
If any insured becomes subject to a financial responsibility law, motor vehicle compulsory insurance law, compulsory insurance for nonresidents, or similar law of:
- A. any state of the United States of America;
- B. a territory, possession, or Commonwealth of the United States of America;
- C. the District of Columbia; or
- D. any province or territory of Canada;

we will interpret this policy to provide the coverage required by those laws.

## OTHER INSURANCE
If two or more auto insurance policies issued to you by us apply to any loss, the most we will pay is the highest dollar limit or benefit in any one such policy.

If there is other applicable insurance, we will pay our fair share. Our fair share is the portion that our limit bears to the total of all applicable limits. Any insurance we provide with respect to non-owned autos or substitute autos will be excess over any other collectible insurance. Any insurance we provide will be excess over any payments received from workers' compensation, disability, or similar law or benefits.

## MEDICAL EXPENSE COVERAGE

Coverage is provided when the coverage is shown as applying in the Declarations.

**INSURING AGREEMENT**

We will pay medical expenses incurred because of BI to:

**A.** you or any relative as a result of a loss involving a motor vehicle, or a trailer while being used with an auto.

**B.** anyone, other than you or any relative, while occupying or using a covered auto with your consent.

Medical services must begin within one year and are rendered within three years from the date of loss.

**EXCLUSIONS**

**A.** We do not cover that portion of any medical expense which is covered under or required to be covered under a workers' compensation, disability or similar law or benefits.

**B.** We do not cover BI arising out of an auto business. This exclusion does not apply when a covered auto is used by you, a relative, or by any other person in any auto business in which you have an interest as owner or partner.

**C.** We do not cover any BI which is covered under an atomic or nuclear energy liability insurance policy, or that would have been covered had that policy not been terminated upon exhaustion of its limit of liability.

**D.** We do not cover any BI due to a nuclear action.

**E.** We do not cover BI caused by, resulting from, or sustained while occupying a covered auto or non-owned auto while it is:

    **1.** rented to any person or organization in any fashion; or

    **2.** leased to any person or organization in any fashion.

  This exclusion does not apply:

    **1.** while the auto is rented or leased to or for your or a relative's use:

    **2.** while the auto is used in a shared expense car pool; or

    **3.** while the auto is being used for volunteer or charitable purposes for which reimbursement for normal operating expenses may be paid to you or a relative.

**F.** We do not cover BI caused by, resulting from, or sustained while occupying a covered auto or non-owned auto while it is being used to carry persons for a charge. This exclusion does not apply while the auto:

    **1.** is used in a shared expense car pool; or

    **2.** is being used for volunteer or charitable purposes for which reimbursement for normal operating expenses may be paid to you or a relative.

**G.** We do not cover BI from an intentional act caused by or at the direction of an insured. This exclusion applies even if the actual injury or damage is different than that which was intended or expected.

**H.** We do not cover BI sustained while occupying any motor vehicle while racing.

**I.** We do not cover any BI directly or indirectly caused by fungus and mold.

**J.** We do not cover any BI caused directly or indirectly by war.

**K.** We do not cover BI sustained while occupying a motor vehicle while:

    **1.** it is located for use as a residence or premises;

    **2.** it is being used as an aircraft; or

    **3.** it is being used as a watercraft.

**L.** We do not cover BI sustained while occupying any motor vehicle or being struck as a pedestrian by any motor vehicle, which is owned by you or a relative or available for your or a relative's regular use. This exclusion does not apply to a covered auto or to a non-owned auto.

**M.** We do not cover BI sustained while occupying a motorcycle.

**N.** We do not cover BI sustained by anyone while occupying a motor vehicle without the owner's permission or a reasonable belief that the person is entitled to occupy the motor vehicle. This exclusion does not apply to you or a relative occupying a covered auto or non-owned auto.

**LIMIT OF LIABILITY**

The limit shown in the Declarations for "each person" is the most we will pay for any one person as a result of any one accident. This is the most we will pay regardless of the number of:

**A.** insureds;

**B.** claims made;

**C.** vehicles shown in the Declarations;
**D.** premiums shown in the Declarations; or
**E.** vehicles involved in the accident.

The total amount **we** will pay includes funeral and burial expenses, not to exceed the lesser of $3,000 or the limit of liability for each person.

## DUPLICATE PAYMENTS

No one will be entitled to receive duplicate payments for the same **medical services** or funeral and burial expenses under this coverage and:

**A.** any other coverage provided by this policy; or
**B.** any amount paid by or on behalf of a party who is legally liable for the **BI**.

## OTHER INSURANCE

If two or more auto insurance policies issued to **you** by **us** apply to any **loss**, the most **we** will pay is the highest dollar limit or benefit in any one such policy.

If there is other applicable insurance, **we** will pay **our** fair share. **Our** fair share is the portion that **our** limit bears to the total of all applicable limits. Any insurance **we** provide with respect to a vehicle **you** or a **relative** do not own will be excess over any other collectible insurance. Any coverage provided shall be excess over any personal injury protection benefits paid or payable, except for a deductible under this or any other motor vehicle insurance policy, for the **medical expenses** for **BI**.

## PHYSICAL DAMAGE COVERAGE

Coverage is provided when the coverage is shown as applying in the Declarations.

## INSURING AGREEMENTS

**A. COMPREHENSIVE COVERAGE**
We will pay for **loss** to **your covered auto**, or to a **non-owned auto**, including its equipment, not caused by **collision**, minus any applicable **deductible** shown in the Declarations. Coverage is included for a **loss** caused by, but not limited to, the following:
1. falling objects or contact with a bird or animal;
2. fire, explosion, or earthquake;
3. theft or larceny;
4. windstorm, hail, water or flood;
5. malicious mischief or vandalism;
6. riot or civil commotion; and
7. breakage of glass.

**B. COLLISION COVERAGE**
We will pay for **loss** to **your covered auto** or to a **non-owned auto,** including its equipment, caused by **collision,** minus any applicable **deductible** shown in the Declarations.

**C. TOWING AND LABOR COVERAGE**
We will pay up to the limit shown in the Declarations for the cost of labor performed at the place of disablement or breakdown and costs of towing a **covered auto** or a **non-owned auto** to be repaired. The disablement or breakdown labor and towing include:
1. labor to repair the vehicle at the place of disablement or breakdown;
2. towing to the nearest repair facility;
3. delivery of fuel, liquids, batteries or tires necessary to make the vehicle drivable, excluding the actual cost of the fuel, liquids, batteries or tires;
4. labor to replace a flat tire at the scene of disablement;
5. jump-starting or boosting a battery to start the vehicle due to a drained battery;

6. winching to bring the vehicle back onto a paved road or driveway; and
7. lockout or locksmith services needed to open a door if the key is lost, stolen or locked inside the vehicle.

No **deductible** applies to this coverage.

**D. SUBSTITUTE TRANSPORTATION COVERAGE**
We will pay up to the limit as shown in the Declarations for the cost of substitute transportation if the **covered auto** is disabled as a result of a **loss** covered under Comprehensive or Collision Coverage. For **loss** caused by theft of the **covered auto**, this coverage is provided in place of any transportation costs paid under item **C.** of **SUPPLEMENTAL PAYMENTS.**

Payment will begin the day the **covered auto** is:
1. out of use due to the **loss**; or
2. the day **you** leave it at the repair shop.

Payment will be made for the reasonable and necessary time required to repair the **covered auto**. Payment will end:
1. the day the **covered auto** has been repaired;
2. when **we** offer settlement; or
3. when **you** reach **your** limit,
whichever occurs first.

**We** will pay up to the amount for each day, as shown in the Declarations, for rental coverage from an auto rental agency, but not more than the maximum amount for each disablement for any one **loss**.

However, if **you** do not rent from an auto rental agency, **we** will pay **you** $25 per day, but not more than the limit shown in the Declarations for each disablement for any one **loss**.

No **deductible** applies to this coverage.

## SUPPLEMENTAL PAYMENTS
A. If the **covered auto** is disabled as a result of **loss**, we will pay up to $50 for transportation to reach the intended destination or return home.
B. If the **covered auto** is in a **loss**, we will pay up to $300 for **loss** to clothes and luggage belonging to **you** or a **relative** which are in the **covered auto**.
C. If an **auto** is stolen, we will pay up to $25 for each day for transportation. Payment will end when we offer settlement for the theft. If **you** do not rent from an auto rental agency, **we** will pay **you** $25 for each day. However, the total amount **we** will pay will not be more than $750.
D. **We** will pay general average and salvage charges for which **you** become legally liable when the **covered auto** is being transported.
E. **We** will pay to replace a child restraint seat or car seat damaged in a **loss** covered under Comprehensive or Collision Coverage.
F. **We** will pay expenses for loss of use, diminished value, and reasonable fees and charges which **you** become legally obligated to pay as a result of direct and accidental damage to a **non-owned auto** commercially rented by **you** or a **relative** on a temporary basis.

No **deductible** applies to these payments.

## EXCLUSIONS
A. **We** do not cover **loss** to **non-owned auto** arising out of an **auto business**.
B. **We** do not cover any **loss** to an **auto** due to a **nuclear action**.
C. **We** do not cover **loss** to an **auto** while it is:
1. rented to any person or organization in any fashion; or

    **2.** leased to any person or organization in any fashion.

This exclusion does not apply:

    **1.** while the **auto** is rented or leased to or for **your** or a **relative's** use;

    **2.** while the **auto** is used in a shared expense car pools;

    **3.** while the **auto** is being used for volunteer or charitable purposes for which reimbursement for normal operating expenses may be paid to **you** or a **relative**.

**D.** **We** do not cover **loss** to an **auto** while it is being used to carry persons for a charge. This exclusion does not apply while the **auto**:

    **1.** is used in a shared expense car pools; or

    **2.** is being used for volunteer or charitable purposes for which reimbursement for normal operating expenses may be paid to **you** or a **relative**.

**E.** **We** do not cover **loss** to an **auto** arising out of an intentional act or theft caused by or at the direction of an **insured**. This exclusion applies even if the actual injury or damage is different than that which was intended or expected.

**F.** **We** do not cover **loss** to any **auto** while **racing**.

**G.** **We** do not cover any **loss** caused by **fungus and mold**.

**H.** **We** do not cover any **loss** caused directly or indirectly by **war**.

**I.** **We** do not cover any **loss** due to and confined to:

    **1.** wear and tear;

    **2.** freezing; or

    **3.** mechanical or electrical breakdown or failure.

This exclusion does not apply if the **loss** results from the total theft of an **auto**

**J.** **We** do not cover **loss** or road damage to tires used with an **auto**. This exclusion does not apply if the **loss** is caused by:

    **1.** falling objects or contact with a bird or animal;

    **2.** fire, explosion or earthquake;

    **3.** theft or larceny;

    **4.** windstorm, hail, water or flood;

    **5.** malicious mischief or vandalism;

    **6.** riot or civil commotion; or

    **7.** a **collision** involving another part of the auto which causes a **loss** to the tires.

**K.** **We** do not cover **loss** to any device used to detect or interfere with speed measuring devices which are used with or located in an **auto**.

**L.** **We** do not cover **loss** to an **auto** or **trailer** due to destruction or confiscation by governmental or civil authorities.

**M.** **We** do not cover **loss** to any electronic equipment that is installed or located in an **auto** and is designed to reproduce, receive or transmit audio, visual or data signals. This includes, but is not limited to:

    **1.** radios and stereos;

    **2.** tape decks;

    **3.** compact disc and digital video disc systems, players and burners;

    **4.** navigation systems;

    **5.** internet access systems;

    **6.** personal computers, including laptops, desktops, and personal digital assistants (PDA), electronic tablet, or any other handheld or portable device;

    **7.** video entertainment systems;

    **8.** telephones;

    **9.** televisions;

    **10.** two-way mobile radios;

    **11.** scanners; or

    **12.** citizens band radios.

This exclusion applies to all accessories used with the equipment or similar equipment.

This exclusion does not apply if the equipment is operated solely from the electrical system of the vehicle and is:

    **1.** permanently installed in a housing unit or location used by the **auto** manufacturer for such equipment; or

    **2.** a component that is removable from a housing unit permanently installed in the location used by the **auto** manufacturer for such equipment; or

    **3.** equipment which was provided by or through **us** for use in the **auto**.

**N.** We do not cover **loss** to removable products used for the storage of audio, video or other data This includes, but is not limited to, tapes, records, discs, memory cards, MP3 data, electronic books, and other media or other devices.

This exclusion applies to the removable products used for storage and all data contained on them, including any time or cost to recreate the data.

**O.** We do not cover **loss** to a camper, including its parts and its equipment, that is:

    **1.** designed to be mounted on an **auto;**

    **2.** owned by **you** or a **relative;** and

    **3.** not a **covered auto.**

**P.** We do not cover any actual or perceived decrease in market value, diminished value, or resale value resulting from a **loss** to an **auto.**

**Q.** We do not cover any undamaged parts or accessories of an **auto**, except to the extent necessary to repair or replace damaged parts or accessories.

**R.** We do not cover a **loss** to an **auto** while:

    **1.** it is being used as an aircraft; or

    **2.** it is being used as a watercraft.

## LIMIT OF LIABILITY

**A.** **Replacement Cost Settlement.** If the **covered auto** is owned by **you** and sustains a **loss** within

    **1.** one year after purchase; or

    **2.** the vehicle's first 15,000 miles,

whichever occurs first, **we** will pay, at **our** option, the full cost of repair or replace the vehicle, less the applicable **deductible.**

We will not pay more than the cost to replace the damaged property with:

    **1.** a previously untitled vehicle of the year, make, model and equipment of the damaged **auto** or, if unavailable,

    **2.** a vehicle that is most similar in class and body type to the year, make, model and equipment of the damaged **auto.**

This applies only to a **covered auto** that has not been previously titled and was not more than one model year old when purchased by **you.** This does not apply to a **substitute auto**, a **non-owned auto** or a leased vehicle. We will not pay more than the **actual cash value** of the damaged part or property until the actual repair or replacement is complete. If we agree that the **auto** is a **total loss, you** may make claim for additional payments for the cost to replace the damaged property by submitting proof of purchasing a replacement **auto** within 91 days of the date of **loss.**

**B.** **Actual Cash Value Settlement.** If the **covered auto** is not covered under A. above, **our** payments will not exceed the lesser of:

    **1.** the limit shown in the Declarations for Physical Damage for the **auto;**

    **2.** the **actual cash value** of the property at the time of **loss;** or

    **3.** the cost to repair or replace the property with other of like kind and quality.

If the repair or replacement results in the betterment of the property or part, **you** must pay the amount of the betterment.

**C.** **Replacement Cost For Special Parts.** **We** will not take a deduction for depreciation for **loss** to, steering and suspension components, brake parts, electrical wiring and components, batteries, and tires if repair or replacement results in a better part than was damaged. This does not apply

to the theft of tires or batteries. This does not apply when an **auto** sustains a **total loss.**

If the **loss** is only to a part of the property, **our** responsibility extends to that part only.

The most **we** will pay for **loss** to a **trailer you** do not own or did not commercially rent is $1,500.

The cost necessary to repair or replace damaged property with other of like kind, quality, make, model, year or equipment will be the fair and reasonable prices to make the repairs or replacement locally. To the extent there is a range of fair and reasonable prices to make such repairs locally, **we** will pay a competitive price within that range determined at **our** sole discretion. Property of like kind and quality may include new, used, recycled, and reconditioned parts. Any of these parts may be produced by or for the **auto's** manufacturer or may be from non-original equipment manufacturers.

## DEDUCTIBLE
The Comprehensive Coverage and Collision Coverage **deductible** applicable to each **covered auto** is shown in the Declarations. **We** will waive the **deductible** if the **loss** is the result of **collision** with another vehicle insured by **us**. If the **loss** is to a **non-owned auto**, the Comprehensive Coverage or Collision Coverage **deductible** applicable to the **loss** shall be the lowest **deductible** displayed in the Declarations for the applicable coverage for a **covered auto** which is not a **trailer.**

If a Deductible Savings Benefit (DSB) is shown in the Declarations, the amount shown is available to reduce the Comprehensive or Collision **deductible** applicable to a **loss.** The Deductible Savings Benefit is not applicable to **losses** involving only the repair or replacement of glass

## NO BENEFIT TO BAILEE
This coverage shall not directly or indirectly benefit any carrier or bailee for hire for **loss** to the **covered auto.**

## APPRAISAL
If within 60 days after proof of **loss** is filed there is a disagreement as to the amount of **loss, you** or **we** may demand an appraisal. Each party will select a competent appraiser. Each appraiser will state separately the **actual cash value** and the amount of **loss.** If they fail to agree, they must select and submit their differences to a competent and disinterested umpire. Agreement by any two will determine the amount of **loss.** Each party will pay his chosen appraiser and will equally share the expenses of the appraisal process and umpire. Disagreements over any coverage provided by this policy are not subject to appraisal.

## PAYMENT OF LOSS
If property is stolen, **we** may, at any time before the **loss** is paid or the property replaced, return at **our** own expense any stolen property. **We** will return the property to **you** or, at **our** option, to the address shown in the Declarations. If **we** return stolen property **we** will pay for any damage resulting from the theft. **We** may take all or part of the damaged property at the agreed or appraised value, but **you** cannot abandon the property to **us.**
**We** may, at **our** option, make payment for a **loss** to one or more of the following:
    **A. You.**
    **B.** The owner of the **auto.**
    **C.** The repairer.
    **D.** Any other party who has an interest, title, or lien on the property.

## OTHER INSURANCE
If two or more auto insurance policies issued to **you** by **us** apply to any **loss,** the most **we** will pay is the highest dollar limit or benefit in any one such policy.

If there is other applicable insurance, **we** will pay **our** fair share. **Our** fair share is the portion that **our** limit bears to the total of all applicable limits. Any insurance **we** provide with respect to **non-owned autos** or **substitute autos** will be excess over any other collectible insurance.

## GENERAL POLICY CONDITIONS

### A. TERRITORY AND POLICY PERIOD

This policy applies to accidents and **losses** which happen during the policy period shown by the effective date and expiration date in the Declarations, and within:

1. the United States, its territories, its possessions, and its Commonwealths;
2. the District of Columbia;
3. Canada; and
4. while the **covered auto or non-owned auto** is being shipped between the ports of the United States, its territories, its possessions, its Commonwealths, and Canada.

### B. CHANGES

1. This policy contains all the agreements between **you** and **us**. Its terms may not be changed or waived except by endorsement issued by **us**.
2. The premiums for this policy are computed using the rules, rates, rating plans, premiums and minimum premiums for the coverages provided. The premiums **we** charge are based on information **we** received from **you** and from other sources. **You** agree to assist **us** in determining that this information is complete and correct. **You** must inform **us** if any of the information is incorrect or incomplete, or changes during the policy period. If any of the information used to determine the premium is incorrect, incomplete, changes or if **you** do not provide it to **us** when **we** ask, **we** may increase or decrease the premium during the policy period.

   Changes during the policy period that may result in a premium increase or decrease include, but are not limited to, changes in:
   a. the number, type, or use of the **covered autos**.
   b. drivers using the **covered autos**, including **you**, **relatives** and all licensed drivers in **your** household.
   c. the principal garaging location of the **covered autos**.
   d. coverage, deductible or limits of the policy.

   If a change requires a premium increase or decrease, **we** will increase or decrease the premium following **our** rules and rates. If the premium is increased, **you** must pay the amount of increase on the date set by **us**.
3. **We** will automatically give **you** the benefits of any extension or broadening of coverage if a policy change does not require additional premiums. The change will automatically apply to **your** policy as of the date **we** implement the change in **your** state. This will not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:
   a. a future edition of **your** policy; or
   b. an endorsement changing the policy.
4. If **we** offer to renew this policy, the renewal premium will be based upon the rates in effect at the time of the renewal.

### C. FRAUD AND MISREPRESENTATION

**You** will have no coverage, and **your** policy will be void, if before or after a **loss**, **you** or any person:

1. conceals or misrepresents any material fact or circumstance;
2. makes a fraudulent statement; or
3. takes part in or attempts any fraudulent conduct;

relating to this policy or any **loss** for which coverage is sought.

### D. DUTIES AFTER A LOSS

**We** have no duty to provide coverage under this policy if the failure to comply with any of the following duties is prejudicial to **us** or results in additional **loss** or damage.

1. **You** or someone on **your** behalf must notify **us** as soon as possible of any **loss**. **We** may

require notification in writing. The notification should include as many details as possible, including:

  a. the names and addresses of drivers, injured persons and witnesses;
  b. the time and place of the loss; and
  c. all details and circumstances of the loss.

2. You must protect the auto from further loss. We will pay you for reasonable expenses incurred for this protection. We will not cover any loss which results from your failure to protect the auto from further loss.

3. In the event of a theft, you must promptly report the loss to the police.

4. You or a relative seeking coverage under Physical Damage Coverage must file with us a proof of loss within 91 days, or within the number of days required by law, of the loss.

5. You, a relative, and anyone seeking any coverage must:

  a. cooperate with us in the investigation, settlement or defense of any claim or suit;
  b. assist in securing and making evidence available to us. This includes, but is not limited to, allowing us to inspect damage to a covered auto or a non-owned auto before it is repaired;
  c. promptly send us copies of any notices, complaints, summons or legal papers received in connection with the loss;
  d. attend hearings and trials at our request;
  e. assist in finding and having witnesses participate in the investigation and settlement of claims;
  f. submit to:
    i. physical or mental exams by physicians of our choice as often as we require;
    ii. examinations under oath as often as we require; and
    iii. interviews and recorded statements without the need for us to conduct an examination under oath.
  g. authorize us to obtain any:
    i. medical, laboratory, or treatment reports, results, or tests related to BI which may have resulted from the accident or loss; and
    ii. other pertinent records, including, but not limited to, police or traffic reports, vehicle usage, information contained in or transmitted by any device located in or on the covered auto or trailer.

6. You, a relative, and anyone seeking any coverage will not voluntarily make any payment, assume any obligation, or incur any expense at the time of the loss, except at your expense. This does not apply to any first aid you or any relative provides to others.

## E. MEDICAL REPORTS; PROOF AND PAYMENT OF CLAIM

Any person making a claim must do the following as soon as possible:

1. Give us details about the death, injury, treatment, and other information we need to determine the amount payable. We have the right to make or obtain a review of medical expenses and medical services to determine if they are reasonable and necessary for the BI sustained. Forms for providing this information may be provided by us.

2. Consent to be examined by physicians chosen and paid by us when, and as often as, we reasonably may require.

3. Sign authorizations to permit us to obtain medical reports and records. If the person is dead or unable to act, such authorizations must be signed by his or her legal representative.

4. Submit to and provide all details concerning loss information through written or recorded statements or examinations under oath as often as we reasonably may require.

In addition, any person making a claim as a result of BI, which may result in payment from Personal Injury Protection or Medical Expense Coverage, must notify us in writing. This notification should be sent to us as soon as reasonably possible after the person's first examination or treatment resulting from the BI. Another person may give us the required notice on behalf of the person making a claim.

Under Personal Injury Protection and Medical Expense Coverage, we may pay the injured person or

any person or organization rendering the services. Any such payment will reduce the total amount we will pay for the injury. Any payment made by us will not constitute admission of liability or fault.

If a loss is covered under Personal Injury Protection or Medical Expense Coverage, we will defend you or any person if a lawsuit is brought for the balance of a bill that we did not pay in full based on the charge being in excess of a usual, customary and reasonable charge. Any defense we provide will be at our expense and with attorneys of our choice.

Under Personal Injury Protection, Uninsured Motorists, and Underinsured Motorists Coverage, we may pay any amount due to one or more of the following:
1.  the injured person;
2.  a parent or guardian, if the injured person is a minor;
3.  the surviving spouse;
4.  the person authorized by law to receive such payment; or
5.  the person entitled by law to recover the damages, which the payment represents.

To receive payment for any BI, we may require, where applicable by law, all medical billing, electronic or not, by the provider to be submitted to us in a standard format that meets the Federal Health Insurance Portability and Accountability Act electronic transaction regulation requirements and coded according to Current Procedural Terminology (CPT) guidelines and appropriate International Classification of Diseases diagnosis codes.

## F.  LEGAL ACTION AGAINST US
Legal action may not be brought against us unless there is full compliance with all of the terms of this policy. In addition, legal action may not be brought against us regarding:
1.  Liability Coverage until the amount of damages an insured is legally liable to pay has been finally determined by:
    a.  judgment after an actual trial; or
    b.  the written agreement of you, the claimant, and us.
    No one has the right to make us a party in a suit to determine legal liability.
2.  Physical Damage Coverage:
    a.  until 30 days after a proof of loss is filed with us;
    b.  until the amount of loss is determined as provided in this policy; and
    c.  except during the first twelve months after the loss.

Your bankruptcy or insolvency will not change or relieve us of any of our obligations under this policy.

## G.  OUR RECOVERY RIGHT
In the event of any payment under this policy, we are entitled to all of the rights of recovery of the person to whom, or on whose behalf, payment was made. That person must:
1.  hold in trust for us all rights of recovery;
2.  sign and deliver to us any legal papers relating to the recovery;
3.  help us exercise our rights; and
4.  do nothing after the loss to prejudice our rights.

In the event of recovery, we must be repaid for all of the amounts paid out by us plus any related collection expenses. We will enforce this provision only in the manner and to the extent permitted under all the applicable state laws.

## H.  ASSIGNMENT
Your rights and duties under this policy cannot be transferred or assigned without our consent.

If you die, this policy will continue until the end of the policy period for:
1.  the surviving spouse if a resident of the same household at the time of death;

2. **your** legal representative, but only with respect to the representative's legal responsibility to maintain or use a **covered auto**; or
3. any person having proper temporary custody of a **covered auto**.

## I. CONFORMITY TO LAW

The terms of this policy that conflict with the laws of the state for which this policy has been issued are amended to conform to those laws.

## J. LOSS PAYABLE CLAUSE

If a loss payee is shown in the Declarations, **we** may, at our option, pay any Comprehensive or Collision **loss** to one or more of the following:

1. **You.**
2. The owner of the **auto**.
3. The repairer.
4. Any other party who has an interest, title, or lien on the property.

Coverage for the loss payee's interest is only provided for a **loss** that is payable to **you**.

If **we** pay the loss payee for a **loss**, **we** are entitled to the loss payee's right of recovery to the extent of **our** payment. **Our** right of recovery shall not impair the loss payee's right to recover the full amount of its claim.

If this policy is terminated, **we** will provide coverage for the loss payee's interest until **we** notify the loss payee. Any coverage provided for the loss payee's interest will only be provided for a **loss** that would have been covered except for the termination.

## K. ADDITIONAL INSURED

If an additional insured is shown in the Declarations:

1. Liability Coverage will be provided for the additional insured to the extent that the additional insured is an **insured** under the definitions of this policy;
2. the additional insured shall have the same rights of recovery under Liability Coverage as if they were not an additional insured; and
3. **we** will notify the additional insured if the policy coverages change or are terminated.

## L. TERMINATION

See State Provisions Endorsement. ▌

IN WITNESS WHEREOF, **we** have caused this policy to be signed by its President and its Secretary at Warwick, Rhode Island. In the event that the President or Secretary who signed this contract cease to be **our** officers either before or after the contract is issued, the contract may be issued with the same effect as if they were still **our** officers.

Secretary                    President

**NEW MEXICO**
**STATE PROVISIONS ENDORSEMENT**

A. Under **GENERAL POLICY CONDITIONS**, item **L. TERMINATION** is replaced by:

**L. TERMINATION**
    **1. CANCELLATION**
        **a. How You May Cancel. You** may cancel this policy by telling **us** on what future date **you** wish to stop coverage.
        **b. How We May Cancel. We** can cancel this policy by mailing notice to **you** at **your** last known address as shown on **our** records. The notice will state the date cancellation is effective. This notice will be mailed to **you:**
            **i.** at least 10 days prior to the effective date of cancellation if:
                **1)** the premium is not paid when due; or
                **2)** this policy:
                    **a)** has been in effect less than 60 days at the time notice of cancellation is mailed; and
                    **b)** is not a renewal or continuation policy.
            **ii.** at least 30 days prior to the effective date of cancellation in all other cases.
            If this policy has been in force for 60 days, or if this is a renewal policy, **we** may cancel only:
                **1)** if premium is not paid when due;
                **2)** for fraud or material misrepresentation in obtaining or continuing the policy;
                **3)** if **your** driver's license or that of:
                    **a)** any driver who lives with **you;** or
                    **b)** any driver who customarily uses the **covered auto;**
                    has been suspended or revoked during the 12 months before the cancellation effective date. However, **we** will not cancel this policy if it is agreed to exclude coverage for the person who has had his or her license suspended or revoked.
                **4)** for any other reason permitted by law.
        **c. Cancellation Refund.** If **you** or **we** cancel this policy, any premium refund will be computed on a pro rata basis. Any premium refund will be rounded to the nearest dollar. If **you** are entitled to a refund it will be sent to **you.** However, **our** making or offering a refund is not a condition of cancellation.
    **2. NONRENEWAL**
    If **we** decide not to renew **your** policy as permitted by law, **we** will mail a notice to **you** at the last known address as shown on **our** records. The notice will be mailed at least 30 days before the end of the policy period.
    If **we** offer to renew this policy and **you** do not accept, this policy will automatically terminate at the end of the current policy period. **Your** failure to pay the required renewal premium when it is due will mean that **you** have not accepted **our** offer.
    **3. OTHER TERMINATION PROVISIONS**
        **a.** If **you** obtain other insurance on **your covered auto,** any similar insurance provided by this policy will automatically terminate as to that **covered auto** on the effective date of the other insurance.
        **b.** If the law in effect in **your** state at the time this policy is issued, renewed or continued:
            **i.** requires a longer notice period;
            **ii.** requires a special form of or procedure for giving notice; or
            **iii.** modifies any of the stated termination reasons,
        **we** will comply with the requirement.

    **c.** We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

    **d.** The effective date of cancellation or termination as stated in the notice shall become the end of the policy period. The notice will provide the date cancellation is effective.

All other policy terms and conditions apply.

## IDENTITY THEFT RESOLUTION

The following is added:

**MISCELLANEOUS**

**IDENTITY THEFT RESOLUTION**
**We** will provide, at **our** expense, a representative of **our** choice to assist **you,** and any relatives in resolving issues of unauthorized use of personal identity or credit information. The unauthorized use must be reported to us during the policy period. **Our** obligation under this provision is limited to paying for the services of a representative of **our** choice. No other limit of liability or deductible applies.

**Our** obligation terminates when the policy terminates for any reason.

All other policy terms and conditions apply.

## MEXICO COVERAGE - LIMITED

### WARNING
### READ THIS ENDORSEMENT CAREFULLY

**Auto accidents in Mexico are subject to the laws of Mexico only – NOT the laws of the United States of America. Under Mexican law an auto accident may be considered a CRIMINAL OFFENSE as well as a civil matter.**

**In some cases, the coverage under this endorsement may NOT be recognized by Mexican authorities and we may not be allowed to implement this coverage at all in Mexico. You should consider purchasing auto coverage from a licensed Mexican Insurance Company before driving into Mexico.**

**This endorsement does not apply to trips into Mexico that exceed 25 miles from the boundary of the United States of America.**

**This insurance does not cover legal liability for bodily injury or property damage caused in Mexico.**

Under **PHYSICAL DAMAGE COVERAGE**, the following are added:

A. Coverage extends to cover **losses** occurring in Mexico within 25 miles of the United States border. This extension applies only for infrequent trips into Mexico not exceeding 10 days at any one time.

B. Under **EXCLUSIONS**, the following are added:

We will not pay for loss to a **covered auto** which is not principally garaged and used in the United States.

C. **SPECIAL CONDITIONS**

1. **Other Insurance**
The insurance provided by this endorsement is excess over any other collectible insurance.

2. **Losses Payable Under Physical Damage Coverage**
**We** will pay **losses** under this coverage in the United States but not in Mexico. If the **covered auto** must be repaired in Mexico in order to be driven, **we** will not pay more that the **actual cash value** of the **loss** at the nearest United States point where the repairs can be made.

All other policy terms and conditions apply.

## NEW MEXICO
## UNINSURED MOTORISTS COVERAGE ENDORSEMENT

## SCHEDULE

Name of Company: Refer to the Policy Declarations Page
Uninsured Motorists Coverage
Limit of Liability:    Bodily Injury        Refer to the Policy Declarations Page
                  Property Damage    Refer to the Policy Declarations Page

Vehicle Description and Premium      Refer to the Policy Declarations Page

The following is added:

## UNINSURED MOTORISTS COVERAGE

### ADDITIONAL DEFINITIONS FOR THIS COVERAGE

**A.** The following **GENERAL DEFINITIONS** are changed for this coverage only:

**INSURED** means:
1. **you** or any **relative.**
2. any other person **occupying your covered auto.**
3. any person for damages that person is entitled to recover because of **BI** to which this coverage applies sustained by a person in **1.** or **2.** above.

**B.** The following definitions are added for this coverage only:
**PROPERTY DAMAGE** (referred to as **"PD"**) means physical damage to destruction of or loss of use of an **insured's** tangible property.

**C.** The following definition is added for this coverage only:

**UNINSURED MOTOR VEHICLE** means:
1. a **motor vehicle** for which:
   a. no liability insurance policy or bond applies at the time of the accident.
   b. a liability insurance policy or bond is in effect at the time of the accident, but:
      i. the amount of coverage or the amount of the bond is less than the minimum financial security requirements specified by the state of New Mexico:
      ii. the company writing such policy or the company or individual writing such bond denies coverage, or which is, or becomes, insolvent.
2. a hit and run **motor vehicle** which causes an accident resulting in **BI** or **PD** arising out of physical contact or attempted physical contact of the **motor vehicle** with:
   a. **you** or a **relative;**
   b. a **motor vehicle** which **you** or a **relative** are **occupying** at the time of the accident; or
   c. property of the **insured,** including a **covered auto.** If:
      i. the identity of the driver and the owner of the hit and run **motor vehicle** is unknown;
      ii. the accident is reported within 24 hours to a state or local police officer, peace or judicial officer, or the Director of Motor Vehicles;
      iii. the injured person or someone on the injured person's behalf files with **us** within 30 days of the accident a statement under oath that the injured person or his or her legal representative has a cause of action due to the accident for damages against someone whose identity is unknown; and
      iv. the injured person or the injured person's legal representative makes available for inspection by **us,** when requested, the **motor vehicle** occupied by that person at the time of the accident.

The term **uninsured motor vehicle** does not include a **motor vehicle**:

1. owned by, leased to, regularly furnished or available for the use of **you** or any **relative**; However, this exception does not apply for damages sustained by **you** or any **relative** if liability coverage is excluded for such damages under this policy or any other policy.
2. owned or operated by a self-insurer as defined in the applicable **motor vehicle** law, financial responsibility law, motor carrier law or similar law; or
3. owned by a governmental unit or agency.
4. owned by a person who has purchased a surety bond as payment for loss on account of his or her legal liability for injury to or the death of people and damage to property arising out of the ownership, operation, or use of a **motor vehicle**.
5. any vehicle or equipment:
   a. operated on rails or crawler treads;
   b. while located for use as a residence or premises; or
   c. which is a farm type tractor or equipment designed for use principally off public roads, except when actually upon public roads.

**D.** The following definition is added for this coverage only:

**UNDERINSURED MOTOR VEHICLE** means a **motor vehicle** for which the sum of the limits of all bodily injury liability bonds or insurance policies applicable at the time of the accident is less than the sum of the limits of liability applicable to the injured person for Uninsured Motorists Coverage under this policy and any other policy(ies).

The term **underinsured motor vehicle** does not include a **motor vehicle**:

1. owned by, leased to, regularly furnished or available for the use of **you** or any **relative**;
   However, this exception does not apply for damages sustained by **you** or any **relative** if the sum of the limits of liability under all bodily injury liability bonds or policies applicable at the time of the accident is less than the sum of the limits of liability for Uninsured Motorists Coverage under this policy and any other policy(ies).
2. owned or operated by a self-insurer as defined in the applicable **motor vehicle** law, or
3. owned by a governmental unit or agency: or
4. any vehicle or equipment:
   a. operated on rails or crawler treads;
   b. while located for use as a residence or premises; or
   c. which is a farm type tractor or equipment designed for use principally off public roads, except when actually upon public roads.
5. which has a liability bond or insurance policy in effect at the time of the accident, but the company writing such bond or policy:
   a. denies coverage; or
   b. is or becomes insolvent.

## INSURING AGREEMENT

In consideration of the payment of the premium for this endorsement and subject to all of the terms of this endorsement, the company agrees with the named insured as to the insuring agreement in 13.12.3.13 through 13.12.3.17 NMAC.

This coverage is provided only if it is indicated in the Declarations.

We will pay compensatory damages which an **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** for BI or PD:

A. sustained by an **insured**; and
B. caused by an accident arising out of owning, maintaining, or the use of an **uninsured motor vehicle**.

## EXCLUSIONS

A. We do not cover any person or property **occupying** or struck by a **motor vehicle** owned by

you or a **relative**, other than a **covered auto.**

**B.** We do not cover any person who settles a **BI** or **PD** claim with any liable party and the settlement is without **our** consent.

**C.** We do not cover any claim which would benefit directly or indirectly any insurer or self-insurer under any workers' compensation, disability benefits, or similar law.

**D.** We do not cover **BI** or **PD** sustained while a **covered auto** is:

    **1.** rented to any person or organization in any fashion; or

    **2.** leased to any person or organization in any fashion.

This exclusion does not apply:

    **1.** while the **auto** is rented or leased to or for **your** or a **relative's** use;

    **2.** while the **auto** is used in a shared expense car pool; or

    **3.** while the **auto** is being used for volunteer or charitable purposes for which reimbursement for normal operating expenses may be paid to **you** or a **relative.**

**E.** We do not cover **BI** or **PD** sustained while a **covered auto** is being used to carry persons for a charge. This exclusion does not apply while the **auto:**

    **1.** is used in a shared expense car pool; or

    **2.** is being used for volunteer or charitable purposes for which reimbursement for normal operating expenses may be paid to **you** or a **relative.**

**F.** We do not cover **BI** or **PD** awards or judgments designated as punitive, exemplary, statutory multiple, or delay damages or awards when the tortfeasor is deceased.

**G.** We do not cover a **relative** who owns, leases or has available for his or her regular use, an **auto** which is insured for uninsured motorists coverage on a primary basis under any other policy.

**H.** We do not cover any person using a **motor vehicle** without a reasonable belief he or she is entitled to do so. This exclusion does not apply to **you** or a **relative** using a **covered auto.**

**I.** We do not cover any claim which would benefit any insurer of any property.

**J.** We do not cover any actual or perceived decrease in market value, diminished value, or resale value resulting from **PD.**

**K.** We do not cover **PD** for which the person making a claim has been or is entitled to be compensated by other property or physical damage insurance.

**L.** We do not cover the first $250 of the amount of **PD** to the property of each **insured** as the result of any one accident.

**M.** any claim for **BI** or **PD** due to or resulting from an accident which occurred before the effective date of this coverage or outside the United States of America, its territories or possessions, or Canada.

## LIMIT OF LIABILITY

**A.** If **BI** is sustained by **you** or any **relative:**

The maximum amount **we** will pay for all damages, including damages for care, loss of consortium, emotional distress, loss of services, death, or prejudgment interest arising out of **BI** sustained by any one person as the result of any one accident is the limit of liability shown in the Schedule or in the Declarations for "each person" for Uninsured Motorists Bodily Injury Coverage multiplied by the number of **covered auto** shown in the Schedule or in the Declarations. Subject to this limit for "each person", the maximum amount **we** will pay to all people for all damages, including damages for care, loss of consortium, emotional distress, loss of services, death, or prejudgment interest arising out of **BI** sustained by two or more people resulting from any one accident is the limit of liability shown in the Schedule or in the Declarations for "each accident" for Uninsured Motorists Bodily Injury Coverage multiplied by the number of **covered autos** shown in the Schedule or in the Declarations.

However, if the Schedule or the Declarations indicates Non-Stacked Uninsured Motorists Coverage limits, then the maximum amount **we** will pay for all damages, including damages for care, loss of consortium, emotional distress, loss of services, death, or prejudgment interest arising out of **BI** sustained by any one person as the result of any one accident is the limit of liability shown in the Schedule or in the Declarations for "each person" for Uninsured Motorists Bodily Injury Coverage. Subject to this limit for "each person", the maximum amount **we** will pay to all people for all damages, including damages for care, loss of consortium, emotional distress, loss of services, death, or prejudgment interest arising out of **BI** sustained by two or more people

resulting from any one accident is the limit of liability shown in the Schedule or in the Declarations for "each accident" for Uninsured Motorists Bodily Injury Coverage.

This is the most we will pay regardless of the number of:
1. insureds;
2. claims made;
3. vehicles shown in the Declarations;
4. premiums shown in the Declarations; or
5. vehicles involved in the accident.

**B.** If BI is sustained by any person other than you or any relative:

The maximum amount we will pay for all damages, including damages for care, loss of consortium, emotional distress, loss of services, death, or prejudgment or post judgment interest arising out of bodily injury sustained by any one person as the result of any one accident is the limit of liability shown in the Schedule or in the Declarations for each person for Uninsured Motorists Bodily Injury Coverage. Subject to this limit for each person, the maximum amount we will pay to all people for all damages, including damages for care, loss of consortium, emotional distress, loss of services, death, or prejudgment interest arising out of bodily injury sustained by two or more people resulting from any one accident is the limit of liability shown in the Schedule or in the Declarations for each accident for Uninsured Motorists Bodily Injury Coverage.

This is the most we will pay regardless of the number of:
1. insureds;
2. claims made;
3. vehicles shown in the Declarations;
4. premiums shown in the Declarations; or
5. vehicles involved in the accident.

**C.** The maximum amount we will pay for all damages, including prejudgment and post judgment interest, arising out of PD as a result of any one accident is the limit of liability shown in the Declarations for Uninsured Motorists Property Damage.

This is the most we will pay regardless of the number of:
1. insureds;
2. claims made;
3. vehicles shown in the Declarations;
4. premiums shown in the Declarations; or
5. vehicles involved in the accident.

**D.** With respect to damages caused by an accident with an **underinsured motor vehicle**, the limit of liability shall be reduced by all sums paid because of BI by or on behalf of people or organizations who may be legally responsible. This includes all sums paid under the **LIABILITY COVERAGE** section of this policy or any other insurance policy.

**E.** No person is entitled to receive duplicate payments for the same elements of loss under this endorsement and any amount paid by or on behalf of any liable parties.

## SETTLEMENT
Whether any person is legally entitled to collect damages under this section, and the amount to which such person is entitled, will be determined by agreement between that person and us.

If a person seeking coverage files a suit against the owner or operator of the **uninsured motor vehicle**, copies of suit papers must be forwarded to us. We have the right to defend on the issues of the:
A. legal liability of; and
B. the damages owed by,
the owner or operator.

**We** are not bound by any judgment, settlement or agreement against any person or organization obtained without **our** consent.

**We** may pay any amount due to one or more of the following:
- **A.** the **insured**;
- **B.** a parent or guardian, if the **insured** is a minor;
- **C.** the surviving spouse, civil union partner or other similar union;
- **D.** the person authorized by law to receive such payment; or
- **E.** the person entitled by law to recover the damages, which the payment represents.

## OTHER INSURANCE

If there is other similar insurance, **we** will pay only **our** fair share. The total amount of recovery under all policies will be limited to the highest of the applicable limits of liability of this insurance and such other insurance.

**Our** fair share is the proportion that **our** limit bears to the total of all applicable limits. However, any insurance **we** provide with respect to a vehicle:
- **A.** not owned by **you** or any **relative**, including any vehicle while used as a substitute automobile; or
- **B.** owned by **you** or any **relative** which is not insured for this coverage under this policy;

shall be excess over any other collectible similar insurance. With respect to **PD**, this insurance will be excess over any other similar insurance available for **PD**. No payments will be made until the limits of all other liability insurance and bonds that apply have been exhausted by payments.

## ADDITIONAL DUTIES AFTER A LOSS

All **insureds** must cooperate with **us** in investigating an accident.

**We** may require the **insured** to take appropriate action to preserve the **insured's** right to recover damages from any other person responsible for the accident, **BI** or **PD**. In any lawsuit against **us**, **we** may require the **insured** to join the responsible person as a defendant.

An **insured** must report an accident involving an **uninsured motor vehicle** within 24 hours to law enforcement authorities.

## CONFORMITY OF STATE STATUTES

If any provisions of this coverage are in conflict with the statutes of the State of New Mexico, those provisions are amended to conform to the minimum requirements of the statutes.

All other policy terms and conditions apply.

## SAFETY GLASS DEDUCTIBLE BUYBACK ENDORSEMENT

A. Under **GENERAL DEFINITIONS**, the following is added:

**SAFETY GLASS** means the glass, plastic or other material used in the windshield and windows of an auto.

B. Under **PHYSICAL DAMAGE COVERAGE, DEDUCTIBLE**, the following is added:

"Glass Deductible Buyback" applies to a **covered auto** when shown in the Declarations. No deductible will apply for **loss** to that **covered auto** when the only payment is for the repair or replacement of damaged **safety glass**.

All other policy terms and conditions apply.

# Exhibit 4

**MetLife**

November 30, 2020

Law Office Of Adam Oakley
P.O. Box 70483
Albuquerque, NM  87197

| | |
|---|---|
| Our Customer: | Margaret Vega |
| Our Claim Number: | SLN12024 D2 |
| Policy Number: | 0593 |
| Date of Loss: | August 25, 2019 |
| Your Client: | Margaret Vega |

Dear Maier:

We received your emailed dated 11/30/2020 and based upon our investigation and information that has been provided to us at this time, there appears to be no evidence to support an uninsured or underinsured motorist claim due to offsetting limits of $25,000. Per your email, GEICO their liability limits of $25,0000 and our insured's UM/UIM limits are $25,000; therefore, after the reduction/offset of the tort carrier's limits there isn't any UIM potential.

If you have additional evidence or other supporting documentation to suggest otherwise please send to our office immediately and we will be happy to review.

At this time, we are closing our claim and will take no further action. Please do not hesitate to contact us with any additional supports or information for further consideration.

Sincerely,

Jacob Martinez
Metropolitan Direct Property and Casualty Insurance Company
Senior Claim Adjuster
(800) 854-6011 Ext. 5520
Fax: (866) 947-0184
Email: Metlifeimaging@metlife.com

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.



Office of Superintendent of Insurance
Attn: Service of Process
P. O Box 1689
Santa Fe, NM 87504-1689



7018 0680 0000 1044 2027



US POSTAGE ᴹᴾPITNEY BOWES

ZIP 87501 $ 011.33⁰
02 4W
0000371432 JUL. 26 2022

National Document

AUG 0 3 2022

Center

Metropolitan Direct Property and
Casualty Insurance Company C/O
Farmers Direct Property and
Casualty Insurance Company
6301 Owensmouth Ave
Woodland, CA 91367
# 2732



PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

# EXHIBIT B

**Margaret Vega v. Metropolitan Direct Property and Casualty Insurance Company**

## Notice of Removal – Exhibit B

(B-1)  Docket

(B-2)  Complaint

(B-3)  Plaintiff's Certification re Arbitration

(B-4)  Disposition Order for Lack of Prosecution

(B-5)  Motion to Reinstate Case

(B-6)  First Amended Complaint

(B-7)  Acceptance of Service

# EXHIBIT B-1

# REGISTER OF ACTIONS
## CASE NO. D-202-CV-2021-01096

| | | | | |
|---|---|---|---|---|
| Margaret Vega v. Metropolitan Direct Property and Casualty Insurance Company | §<br>§<br>§<br>§<br>§ | | Case Type: | **Civil Violations, Statutes, Ordinances** |
| | | | Date Filed: | **02/13/2021** |
| | | | Location: | |
| | | | Judicial Officer: | **Chavez, Benjamin** |

---

### PARTY INFORMATION

| | | **Attorneys** |
|---|---|---|
| **Defendant** | **Metropolitan Direct Property and Casualty Insurance Company** | |
| | | |
| **Plaintiff** | **Vega, Margaret** | **Kedar Bhasker**<br>*Retained*<br>505-720-2113(W) |

---

### EVENTS & ORDERS OF THE COURT

**DISPOSITIONS**

| | |
|---|---|
| 12/28/2021 | **Dismissal for Lack of Prosecution** (Judicial Officer: Chavez, Benjamin) |

**OTHER EVENTS AND HEARINGS**

| | | |
|---|---|---|
| 02/13/2021 | **Cause Of Actions**<br>Action Type | Statutes, Ordinance Violations, Miscellaneous<br>Action |
| 02/13/2021 | **OPN: COMPLAINT** | |
| 02/13/2021 | **ARB: CERT NOT SUBJECT** | |
| 12/28/2021 | **CLS: DISMISSAL BY LACK OF PROSECUTION**<br>*DISPOSITION ORDER FOR LACK OF PROSECUTION* | |
| 12/30/2021 | **RETURNED MAIL** | |
| 01/20/2022 | **Cause Of Actions**<br>Action Type | Statutes, Ordinance Violations, Miscellaneous<br>Action |
| 01/20/2022 | **RPN: REOPEN NO FEE REQUIRED**<br>*Motion to reinstate case* | |
| 07/15/2022 | **AMENDED COMPLAINT**<br>*First Amended Complaint* | |
| 07/20/2022 | **Summons**<br>Metropolitan Direct Property and Casualty Insurance<br>Company | Unserved |
| 07/22/2022 | **ACCEPTANCE OF SERVICE** | |

---

### FINANCIAL INFORMATION

| | | | |
|---|---|---|---|
| **Plaintiff** Vega, Margaret | | | |
| Total Financial Assessment | | | 132.00 |
| Total Payments and Credits | | | 132.00 |
| **Balance Due as of 08/15/2022** | | | **0.00** |
| | | | |
| 02/15/2021 | Transaction Assessment | | 132.00 |
| 02/15/2021 | File & Serve Payment | Receipt # ALBD-2021-3190 | Vega, Margaret | (132.00) |

# EXHIBIT B-2

FILED
2ND JUDICIAL DISTRICT COURT
Bernalillo County
2/13/2021 2:51 PM
CLERK OF THE COURT
Catherine Chavez

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT COURT

MARGARET VEGA, individually and on behalf of other
similarly situated individuals,

      Plaintiff,

          v.

**No.** D-202-CV-2021-01096

METROPOLITAN DIRECT PROPERTY AND
CASUALTY INSURANCE COMPANY,

      Defendant.

## CLASS ACTION COMPLAINT

Plaintiffs Margaret Vega, for herself and on behalf of the Class and Subclass defined

herein, brings this Class Action Complaint under Rule 1-023 NMRA to recover damages

from Metropolitan Direct Property and Casualty Insurance Company ("MetLife"), and states

as follows:

### JURISDICTION AND VENUE

1.     This Court has jurisdiction under Article VI, Section 13 of the New Mexico

Constitution.

2.     Venue is proper under NMSA 1978, § 38-3-1(B).

### PARTIES

3.     Plaintiff Margaret Vega is, and was at all material times, a resident of

Bernalillo County, New Mexico.

4.     Defendant MetLife is a foreign for-profit corporation conducting business,

including the sales and solicitations for the sales of insurance policies, throughout the State

of New Mexico. Process is properly served on it via its registered agent, the Office of Superintendent of Insurance.

## FACTUAL ALLEGATIONS

**Margaret Vega purchased an underinsured motorist policy from Defendant.**

5. On March 27, 2018 Ms. Vega applied for auto-coverage and MetLife collected premiums from her. See Ex. 1, Application.

6. Defendant's application states that underinsured motorists bodily injury or UIMBI coverage will pay for loss resulting from bodily injury or death which you are legally entitled to collect from the owner or driver of a motor vehicle insured for amounts insufficient to pay for your loss.

7. Pursuant to New Mexico law, Defendant's application does not demonstrate whether Defendant made a meaningful offer of UIM coverage to Plaintiff and those similarly situated.

8. Defendant's did not provide a meaningful offer of UIM coverage to Plaintiff and those similarly situated.

9. The policy that MetLife issued an which was in effect at the time of Vega's loss was Policy No. 1352605930, effective from February 7, 2018 to February 7, 2019 ("Vega Policy"), Ex. 2.

10. MetLife automatically renewed policy number 1352605930, annually.

11. On February 7, 2019, MetLife issued the insurance policy and provided her with declaration pages that were in effect from February 7, 2018 through February 7, 2019. Ex. 3, Vega Declaration Pages.

12. Throughout the time MetLife insured Vega, they had issued additional

declaration pages that included substantially the same language with regard to underinsured motorist coverage.

13.     The Vega February 2, 2019 Policy provided liability coverage on one vehicles in the amount of $25,000 per person / $50,000 per occurrence. *Id.*

14.     MetLife has collected from Vega $248 in premiums for uninsured and underinsured motorist coverage that it purportedly sold her since the inception of this policy.

**MetLife's systematic application process, declarations, UM/UIM information and selection forms, and policies misrepresented the true value of underinsured motorist coverage and failed to properly inform Vega that the underinsured motorist coverage for which MetLife collected a premium was illusory and misleading.**

15.     MetLife's forms failed to properly inform Vega about the offset described in *Schmick v. State Farm Mutual Automobile Insurance Company*, 704 P.2d 1092 (1985) ("the *Schmick* offset"), and did not meet Vega's reasonable expectations of being properly insured in the event she sustained significant injuries.

16.     When Vega purchased automobile coverage, MetLife did not properly inform her of how underinsured motorist coverage is illusory in the event of a covered occurrence involving an underinsured driver.

17.     MetLife failed to properly inform Vega that she would most likely not benefit from paying a premium for underinsured motorist coverage that was equal to the amount of a tortfeasor's liability coverage because, pursuant to the *Schmick* offset, Vega's recovery of underinsured motorist benefits would be offset by the amount of the tortfeasor's liability coverage.

18.     MetLife's forms did not contain clear, unambiguous language regarding the effects of the *Schmick* offset.

19.     MetLife's systematic processes forms did not alert Vega, nor make clear to ordinarily and similarly situated insureds, the fact that the *Schmick* offset drastically and materially diminished payment of benefits arising from a covered occurrence under the policy for crashes involving underinsured motorists.

20.     MetLife's systematic processes and forms did not alert Vega that she would be billed a premium for underinsured motorists coverage on a policy, where there was no likelihood of her ever being able to recover the full amount of underinsured motorists coverage for which she was billed and unable to collect any underinsured motorist coverage for which MetLife collected a premium.

21.     MetLife's systematic processes and forms misrepresented the true value of the illusory and misleading underinsured motorist coverage that it advertised and sold to Vega and for which MetLife collected premiums.

**Margaret Vega was injured in a collision with an underinsured motorist.**

22.     On August 25, 2019, Margaret Vega suffered serious bodily injuries and other damages arising from an automobile collision that occurred on San Mateo Boulevard, SE in Albuquerque, New Mexico, at the intersection with Zuni Road when an underinsured motorists, ran a red light entering San Mateo and Zuni and caused a heavy impact with the Ms. Vega's vehicle.

23.     Ms. Vega was as not at fault for the collision of August 25, 2019.

24.     As a result of the collision, Margaret Vega suffered serious bodily injuries.

25.     Margaret Vega suffered total damages well in excess of $50,000.00.

26.     At the time of the collision, Margaret Vega was insured by the MetLife Policy No. 1352605930, which purportedly provided her with uninsured and underinsured

motorist insurance coverage in the amount of up to $25,000.00 per person/ $50,000.00 per occurrence.

27. After the collision, Margaret Vega made a claim with the tortfeasor's insurer and was provided the limits of liability insurance of $25,000.00.

**Margaret Vega makes a claim that MetLife denies.**

28. Before the collision at issue, MetLife collected a premium for automobile coverage pursuant to Vega Policy, under which Margaret Vega had a reasonable expectation that she carried stacked underinsured motorist coverage of $25,000.00 per person / $50,000.00 per occurrence.

29. At the time of the collision, Margaret Vega was under the belief and had a reasonable expectation that she and her insureds were entitled to underinsured motorist benefits for insurance policy that MetLife had issued her.

30. After the collision, Margaret Vega reported the collision to MetLife and, through counsel, notified MetLife that a claim for the underinsured motorist coverage, for which MetLife collected a premium for, would be made.

31. MetLife, under a standardized business practice, opened a claim, assigned claim number 058014483 0101 023, and randomly assigned the adjustment of the matter to one of its adjusters and preemptively denied Margaret Vega's underinsured motorist coverage claim for the full amount of UIM coverage as reflected on MetLife's declaration page.

32. MetLife denied Margaret Vega's claim for the underinsured motorist coverage because, after addressing an offset of the tort carrier's liability limits, no coverage remains for a claim under her MetLife auto policy. Ex. 4, November 20, 2020

Correspondence from MetLife.

33.    Margaret Vega did not receive the full amount underinsured motorist coverage from MetLife, her UIM policy carrier, as reflected on her declaration pages.

34.    Margaret Vega had a reasonable expectation she would benefit from the insurance premiums MetLife collected from her.

**MetLife's forms misrepresented the true value of underinsured motorist coverage and failed to properly inform Margaret Vega that the underinsured motorist coverage for which MetLife collected a premium was illusory and misleading.**

35.    MetLife's forms failed to properly inform Margaret Vega about the offset described in *Schmick v. State Farm Mutual Automobile Insurance Company*, 704 P.2d 1092 (1985) ("the Schmick offset"), and did not meet Vega's reasonable expectations of being properly insured in the event she or her passengers suffered significant injuries.

36.    When Margaret Vega purchased automobile coverage, MetLife did not properly inform her of how underinsured motorist coverage is illusory and misleading in the event of a covered occurrence involving an underinsured driver.

37.    MetLife failed to properly inform Margaret Vega that she or the people covered under her policy would not receive the full benefit from paying a premium for underinsured motorist coverage on each of her vehicles because, pursuant to the *Schmick* offset, the recovery of underinsured motorist benefits would be offset by the amount of the tortfeasor's liability coverage.

38.    MetLife's forms did not contain clear, unambiguous language regarding the effects of the *Schmick* offset.

39.    MetLife failed to properly inform Margaret Vega about combined premium costs corresponding to the available levels of coverage and failed to offer Margaret Vega a

coverage that was not illusory and misleading.

40. MetLife's forms did not alert Margaret Vega, nor make clear to the ordinarily and similarly situated insured, the fact that the *Schmick* offset significantly and materially diminished payment of benefits arising from a covered occurrence under the policy for collisions involving underinsured motorists.

41. MetLife's forms did not alert Margaret Vega that she would be billed a premium for stacked underinsured motorist coverage on the policies corresponding to her covered vehicle, where there was no likelihood of her ever being able to recover the full amount of stacked underinsured motorists coverage for which she was charged and paid a premium.

42. MetLife's forms misrepresented the true value of the underinsured motorist coverage that it advertised and sold to Margaret Vega and for which MetLife collected premiums for.

## CLASS ACTION ALLEGATIONS

43. This action is properly maintainable as a class action pursuant to Rule 1-023 NMRA. The Class is defined as follows:

> "All persons (and their heirs, executors, administrators, successors, and assigns), from whom MetLife collected a premium for underinsured motorist coverage after August 14, 1985 to present, on a policy that was issued or renewed in New Mexico by MetLife and that purported to provide underinsured motorist coverage, but which effectively does not provide any or the full amount of underinsured motorist coverage ("UIM") because of the statutory offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, 704 P.2d 1092 (1985)."

44. Pursuant to Rule 1-023(C)(4)(b), the Class properly includes a Subclass:

> All Class Members (and their heirs, executors, administrators,

successors, and assigns) where an underinsured motorist coverage on a policy that was issued or renewed in New Mexico by MetLife and that purported to provide an amount of UM/UIM limits per occurrence, but which in fact provides none or a misleading amount of underinsured motorists coverage, because of the statutory offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, 704 P.2d 1092 (1985), and who sustained damages in excess of an insured tortfeasor's policy limits, received the extent of all bodily injury liability limits available, made a claim with MetLife for underinsured motorist benefits and were denied those benefits.

45.     Excluded from the Class are all of Defendants' present and former officers and directors, "Referees" serving the Evaluation Appeal process proposed below, Class counsel and their resident relatives, and Defendant's counsel of record and their resident relatives.

46.     The proposed class and subclass definitions are precise, objective, and presently ascertainable, and it is administratively feasible for the Court to ascertain whether a particular individual is a member of the Class.

47.     The members of the Class are so numerous that joinder of all members of the Class is impracticable.

48.     Vega's claims are typical of the claims of members of the Class and Subclass.

49.     Certification of the Class and Subclass is desirable and proper, because there are questions of law and fact in this case common to all members of the Class. Such common questions of law and fact include, but are not limited to:

    a.      Whether MetLife breached contractual obligations owed to their New

            Mexico policyholders;

    b.      Whether MetLife breached duties owed to New Mexican insureds

under the implied covenant of good faith and fair dealing;

c.      Whether MetLife violated NMSA 1978, §§ 59A-16-1 to 30;

d.      Whether MetLife failed to disclose one or more material facts in connection with the marketing or sale of the insurance policies at issue;

e.      Whether MetLife misled or deceived their policyholders in connection with the marketing or sale of the policies at issue;

f.      How properly to construe MetLife's standard application forms and other standard form documents relative to the *Schmick* offset;

g.      What remedies are available to Margaret Vega and Margaret Vega and Class Members in light of the answers to the foregoing questions; and

h.      Whether and to what extent there may be merit in any affirmative defenses that MetLife might claim.

50.      These common questions of law or fact common to members of the Class predominate over any questions affecting only individual members, and a class action is superior to all other available methods for the fair and efficient adjudication of the controversy. In this action:

51.      Common or generalized proof will predominate with respect to the essential elements of the nine claims at issue.

52.      The common questions of law or fact that pertain to the Class predominate over any individual questions and any individual issues do not overwhelm the common ones.

53.      If any member or members of the Class has an individually controlling interest to prosecute a separate action, they may exclude themselves from the Class upon

receipt of notice under Rule 1-023(C)(2).

54. The determination of the claims of all members of the Class in a single forum and in a single proceeding would be a fair, efficient and superior means of resolving the issues raised in this litigation.

55. Any difficulty encountered in the management of the proposed Class is reasonably manageable, especially when weighed against the impossibility of affording adequate relief to the members of the Class through numerous independent actions.

56. The need for proof of Vega's and Class members' damages will not cause individual issues to predominate over common questions. The amounts of losses can be efficiently demonstrated either at trial or as part of routine claims administration through accepted and court-approved methodologies with the assistance of court-appointed personnel, including Special Masters. Certain types or elements of damage are subject to proof using aggregate damage methodologies or simply rote calculation and summation.

57. The particular common issues of liability and the quantum of punitive damages or ratio of punitive damages to actual harm, are common to Class Members no matter what type of harm or injury was suffered by each Class Member.

58. MetLife has acted or refused to act on grounds generally applicable to all Class Members, thereby making appropriate injunctive relief and corresponding declaratory relief with respect to Class Members. Vega' seek to establish the rights and obligations of the parties with respect to the claims at issue in this case and to enjoin MetLife from continuing to engage in those practices that violate the duties, and the contractual and legal obligations owed to Vega's and Class Members under New Mexico statutory and common law.

59.     A class action is superior to maintenance of these claims on a claim-by-claim basis when all actions arise out of the same circumstances and course of conduct. A class action allows the Court to process all rightful claims in one proceeding. Class litigation is manageable considering the opportunity to afford reasonable notice of significant phases of the litigation to Class Members and permit distribution of any recovery. The prosecution of separate actions by individual Class Members, or the individual joinder of all Class Members in this action, is impracticable and would create a massive and unnecessary burden on the resources of the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of each Class Member, should that be determined to be appropriate.

60.     The conduct of this action as a class action conserves the resources of the parties and the court system, protects the rights of each member of the class, and meets all due process requirements.

61.     Certification of the Class with respect to particular common factual and legal issues concerning liability, as well as the necessary and appropriate quantum of punitive damages, or ratio of punitive damages to actual harm, is appropriate under Rule 1-023.

62.     Certification of the Class is desirable and proper, because Vega will fairly and adequately protect the interests of the Class that she seeks to represent. There are no conflicts of interest between Vega's claims and those other members of the Class. Margaret Vega is cognizant of her duties and responsibilities to the Class. Vega's attorneys are qualified, experienced, and able to conduct the proposed class action.

## CLAIM 1 - NEGLIGENCE

63.     Vega and Class Members incorporate by reference the preceding paragraphs as if they were fully stated herein.

64.     MetLife had a duty to ensure Vega and Class Members would be offered and obtain the maximum benefit of underinsured coverage purchased and would not be sold illusory and/or misleading underinsured coverage.

65.     MetLife had a duty to provide Vega and Class Members coverage for which a premium was charged and collected.

66.     It was reasonably foreseeable that the underinsured coverage sold Margaret Vega and Class Members was illusory and/or misleading and MetLife therefore materially misrepresented the terms and benefits of underinsured coverage, yet charged a premium for such illusory and/or misleading coverage.

67.     A reasonably prudent insurance company exercising ordinary care would offer and sell underinsured coverage that was not illusory and/or misleading and would not materially misrepresent the terms of underinsured coverage by properly informing its insureds of the coverage they were purchasing and obtaining a written waiver acknowledging its insured's consent to the purchase of what amounts to illusory underinsured motorist coverage.

68.     A reasonably prudent insurer would not charge a premium for coverage it intended to deny or did not provide.

69.     MetLife's actions and inactions, through its agents, employees, or others on its behalf, were negligent in that they breached the standard of care required of an insurance company issuing auto policies in New Mexico.

70. As a result of MetLife's negligence, Margaret Vega and Class Members sustained actual damages for which MetLife is liable. Margaret Vega and Class Members are entitled to punitive damages for actions of MetLife that were willful, reckless and wanton, and in bad faith and/or based on dishonest business judgments.

## CLAIM 2 - VIOLATIONS OF THE NEW MEXICO UNFAIR TRADE PRACTICES ACT

71. Vega and Class Members incorporate by reference the preceding paragraphs as if they were fully stated herein.

72. There was in effect, at all times material, a New Mexico statute commonly known as the New Mexico Unfair Trade Practices Act, N.M.S.A.1978, § 57-12-2 to 58-12-10 ("UPA"), including but not limited to Sections 57-12-2(D)(7), (D)(l4), (D)(15), (D)(l7) and Section 57-12- 2(E), which prohibits a person selling insurance from engaging in unfair or deceptive trade practices:

> D. "unfair or deceptive trade practice" means an act specifically declared unlawful pursuant to the Unfair Trade Practices Act [Chapter 57, Article 12 NMSA 1978], a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services or in the extension of credit or in the collection of debts by a person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead and includes but is not limited to:
>
> (7) representing that the goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another ;
>
> (14) using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact if doing so deceives or tends to deceive;

(15) stating that a transaction involves rights, remedies or obligations that it does not involve;

(17) failing to deliver the quality or quantity of goods or services contracted for;

E. "unconscionable trade practice" means an act or practice in connection with the sale, lease, rental or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services, including services provided by licensed professionals, or in the extension of credit or in the collection of debts which to a person's detriment: takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or results in a gross disparity between the value received by a person and the price paid.

73.     MetLife failed to deliver the quality or quantity of services applied for and purchased and paid for by Margaret Vega and other insureds by failing to provide insurance applications and policies containing sufficient information to properly inform a reasonably prudent person purchasing underinsured insurance when Margaret Vega and others similarly situated were under the reasonable belief that such coverage existed and would protect them.

74.     In the regular course of its business, MetLife or its agents knowingly made oral and written statements that were false and misleading in connection with the sale of underinsured motorist insurance in New Mexico.

75.     These false and misleading representations may, tend to, and do deceive or mislead persons into believing that underinsured motorist coverage has a value that it does not have and into contracting for and paying premiums for underinsured motorist policies that are illusory and do not provide the underinsured motorist coverage and benefits that MetLife's customers reasonably expected to receive.

76.     In the regular course of its business, MetLife or its agents took advantage

of its customers' lack of knowledge, ability, experience or capacity to a grossly unfair degree by marketing, advertising, selling, and receiving premium payments for illusory underinsured motorist coverage.

77.     Since the New Mexico Supreme Court's opinion in *Progressive Northwest Insurance Co. v. Weed Warrior Services*, 2010-NMSC-050, 149 N.M. 157, 245 P.3d 1209, MetLife has been on notice that underinsured motorist policies provide no coverage at minimal limits and misleading coverage at higher limits, yet MetLife markets, advertises, sells, and received premiums for above-minimal limits underinsured motorist policies to and from customers, such as Margaret Vega and Class Members, who do not know and do not understand that if they purchase underinsured motorist coverage, they will not receive any underinsured motorist coverage at all when damages in excess of the tortfeasor's liability coverage are incurred, losing the full benefit of their above-minimal limits coverage displayed on the face of their declaration pages because of the *Schmick* offset.

78.     MetLife's actions resulted in a gross disparity between the value of the illusory and/or misleading underinsured motorist coverage received by Margaret Vega and Class Members and the price of the premiums that Margaret Vega and Class Members paid for illusory and/or misleading underinsured motorist coverage.

79.     MetLife, acting through its agents, adjusters, and employees, as set forth above, knowingly and willfully engaged in unfair trade practices in violation of Section 57-12-3, including but not limited to Sections 57-12-2(D)(7), (D)(l4), (D)(I5), (D)(17) and Section 57-12- 2(E).

**CLAIM 3 - VIOLATIONS OF THE NEW MEXICO UNFAIR INSURANCE PRACTICES ACT**

80. Vega and Class Members incorporate by reference the preceding paragraphs as if they were fully stated herein.

81. There was in effect at all times material a New Mexico statute commonly known as the Insurance Code New Mexico Unfair Insurance Practices Act, NMSA 1978, §§ 59A-16-1 to 59A-16-30 ("UIPA").

82. The UIPA provides a private right of action to any person covered by the UIPA who has suffered damages as a result of a violation of that statute by an insurer or agent and is granted a right to bring an action in district court to recover actual damages.

83. Vega and Class Members were insured under the policies issued by MetLife.

84. MetLife owed Margaret Vega and Class Members the duties of good faith, fair dealing, and the accompanying fiduciary obligations.

85. In the sale and provision of insurance, MetLife failed to exercise good faith and failed to give the interests of Margaret Vega and of Class Members the same consideration it gave their own interests.

86. MetLife misrepresented the terms of the policy sold and provided to Margaret Vega and Class Members, and/or failed to disclose material facts reasonably necessary to prevent other statements from being misleading and failed to implement and follow reasonable standards in the sale and provision of insurance.

87. MetLife's acts and failures to act were in reckless disregard of Vega's, and Class Members' rights as insureds under the subject policies.

88. MetLife's acts and practices took advantage of the lack of knowledge and experience of Margaret Vega and Class Members to a grossly unfair degree.

89.     MetLife failed to abide by its statutory duties under the UIPA, and such violations constitute negligence per se.

90.     MetLife misrepresented to Margaret Vega and Class Members pertinent facts or policy provisions relating to coverages at issue, in violation of NMSA 1978, § 59A-16- 20(A).

91.     MetLife's failure to act in good faith and MetLife's violations of the Insurance Code and Unfair Practices Act are proximate causes of damages sustained by Margaret Vega and Class Members.

92.     MetLife's conduct was in bad faith, malicious, willful, wanton, fraudulent, based on dishonest business judgments and/or in reckless disregard of Vega's and Class Members' rights.

93.     Margaret Vega and Class Members are entitled to attorneys' fees and costs pursuant to NMSA 1978, §§ 59A-16-30 and 39-2-1. As a direct and proximate result of Defendants' acts, omissions policies, and conduct in violating UIPA, as set forth above, Vega and Class Members have sustained damages, in addition to the damages common to all counts of this complaint, including but not limited to the actual damages incurred, the cost of prosecution of this lawsuit, attorneys' fees, and interest on the sums owed under the policy. These injuries and damages are ongoing, permanent, and are expected to continue in the future.

### CLAIM 4 - REFORMATION OF INSURANCE POLICY

94.     Vega and Class Members incorporate by reference the preceding paragraphs as though they were stated fully herein.

95.     Margaret Vega and similarly situated Class Members mistakenly believed

that, by paying a premium for specific dollar amounts and limits of underinsured motorist coverage, they would receive underinsured motorist coverage at those same specific dollar amounts and limits.

96.     MetLife and its agents knew that, because of the operation of the offset described in *Schmick*, Margaret Vega and similarly situated Class Members were unlikely to receive the full underinsured motorist benefits that they contracted for and for which MetLife collected premiums.

97.     At the time of contract formation, MetLife and its agents inequitably misrepresented the value of underinsured motorist coverage and failed to inform Margaret Vega and similarly situated Class Members that, because of the operation of the offset described in *Schmick*, they were unlikely to receive the underinsured motorist benefits that they contracted for and for which MetLife collected premiums.

98.     The inequitable failure of MetLife and its agents to inform Margaret Vega and similarly situated Class Members that they were vanishingly unlikely to receive the underinsured motorist coverage reasonably caused Margaret Vega and similarly situated Class Members to believe that, by paying a premium for underinsured motorist coverage, they and their covered insureds would receive the full amount of underinsured motorist coverage reflected on their declaration pages.

99.     The insurance contracts respectively entered between MetLife and its agents, on the one hand, and Margaret Vega and Class Members, on the other hand, do not express the intentions and reasonable beliefs of Margaret Vega and Class Members that they would receive the underinsured motorist coverage that they contracted for and for which MetLife collected premiums.

100.     The Court should reform the insurance contracts respectively entered between MetLife and its agents, on the one hand, and Margaret Vega and Class Members, on the other hand, to conform to the intentions and reasonable beliefs of Margaret Vega and Class Members that they would receive the underinsured motorist coverage that they contracted for and for which MetLife collected premiums.

## CLAIM 5 - BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

101.     Margaret Vega and Class Members incorporate by reference the preceding paragraphs as though they were stated fully herein.

102.     A special relationship exists between MetLife, on the one hand, and Margaret Vega and Class Members, respectively, on the other hand, sufficient to impose a duty of good faith and fair dealing on MetLife owed to Margaret Vega and Class Members.

103.     Implicit in the contract of insurance between Margaret Vega and Class Members, on the one hand, and MetLife on the other, was the covenant that Defendants would, at all times, act in good faith and deal honestly and fairly with Margaret Vega and Class Members.

104.     MetLife breached the implied covenant of good faith and fair dealing, in one or more of the following ways, including but not limited to:

      a.     Failing to properly inform Margaret Vega and Class Members of the illusory and/or misleading coverage it solicited and sold;

      b.     Charging a premium for coverage that would not be provided;

105.     As a direct and proximate result of MetLife's acts and omissions alleged

herein, Margaret Vega and Class Members have suffered damages in an amount to be proven at trial.

106.     MetLife's acts and omissions alleged herein and breach of the implied covenant of good faith and fair dealing were done intentionally, willfully, wantonly, grossly, with dishonest business judgment, and/or with reckless disregard for the rights of Margaret Vega and Class Members.

107.     Accordingly, Margaret Vega and Class Members are entitled to recover punitive damages in an amount to be determined by the jury and sufficient to punish MetLife for its misconduct and to deter others from similar conduct in the future.

## CLAIM 6 - NEGLIGENT MISREPRESENTATION

108.     Vega and Class Members incorporate by reference the preceding paragraphs as though they were stated fully herein.

109.     A special relationship existed between MetLife, on the one hand, and Margaret Vega and Class Members, respectively, on the other hand, sufficient to impose a duty on MetLife to disclose accurate information to Vega and Class Members.

110.     As early as 1985, when the New Mexico Supreme Court published its decision in *Schmick v. State Farm*, MetLife knew that underinsured motorist coverage would be illusory and/or misleading under most ordinary circumstances.

111.     MetLife, however, withheld this information from Margaret Vega and Class Members and hid from them the fact that the underinsured motorist coverage as impacted by the *Schmick* offset is illusory and/or misleading in its effect.

112.     From 1985 through the present, MetLife failed to disclose material facts and made material misrepresentations to Margaret Vega and Class Members regarding

illusory and/or misleading underinsured motorist coverage.

113.    MetLife, by their failures and omissions, misrepresented underinsured motorist coverages through their standard and uniform applications and policies given to Margaret Vega and Class Members, which MetLife knew or should have known, were misleading and contained material misrepresentations.

114.    MetLife's material omissions and misrepresentations were made to induce Margaret Vega and Class Members to purchase underinsured motorist coverage that MetLife knew or should have known was illusory and/or misleading.

115.    Margaret Vega and Class Members reasonably relied on MetLife's material omissions and misrepresentations when deciding to purchase underinsured motorist coverage at the level of coverage they respectively purchased.

116.    As a result of MetLife's misrepresentations and omissions, MetLife is liable to Margaret Vega and Class Members for their damages flowing from those misrepresentations and omissions.

117.    As a direct and proximate result of MetLife's negligent misrepresentations, Margaret Vega and Class Members suffered economic loss, including the payment of premiums for coverage that had no value.  Margaret Vega and Class Members seek the full measure of damages allowed under applicable law.

**CLAIM 7 - DECLARATORY JUDGMENT**

118.    Vega, and Class members incorporate by reference the preceding paragraphs as though they were stated fully herein.

119.    An actual controversy exists between the parties thereby rendering declaratory relief proper under the New Mexico Declaratory Judgment Act, NMSA 1978,

21

Sections 44-6-1 through 44-6-15.

120. Vega, and Class Members are entitled to a declaratory judgment establishing their respective rights and obligations of the parties with respect to the claims set forth herein.

## INJUNCTIVE RELIEF

121. Margaret Vega and Class Members incorporate by reference the preceding paragraphs as though they were stated fully herein.

122. Margaret Vega and Class Members are entitled to injunctive relief under the claims they have pled because Margaret Vega and Class Members would suffer an irreparable injury that monetary damages at a later time would not adequately compensate them for the injury of paying a premium for illusory and/or misleading coverage.

123. MetLife should be enjoined from continuing practices that violate the duties, and the contractual and legal obligations owed to Margaret Vega and Class Members.

124. MetLife must be compelled to stop their practice of collecting premiums for the sale of illusory and/or misleading underinsured motorist coverage and failing to provide underinsured motorist coverage benefits equal to the limits of liability coverage where they failed to properly inform Vega and Class Members throughout the application and policy underwriting process.

## REQUEST FOR RELIEF

Margaret Vega and Class Members request a jury trial and the following relief:

i. An order certifying this action to proceed as a class action,

authorizing Margaret Vega to represent the interests of the Class Members as appropriated and appointing undersigned counsel to represent the class.

ii.     Awarding compensatory damages to Margaret Vega and Class Members for the damages done to them by MetLife in an amount to be proven at trial;

iii.    Awarding Margaret Vega and Class Members damages from MetLife as a result of its violations of the UIPA, in an amount to be determined at trial for attorneys' fees and costs;

iv.     Awarding treble damages in accordance with NMSA 1978, Sections 57-12-10(B) and any and all damages pursuant to NMSA 1978, Sections 57-12-1 through -26, which will deter MetLife and others from such unfair trade practices and wrongful conduct in the future and will punish them for the conduct set forth herein;

v.      Granting declaratory relief that establishes the rights and obligations of the parties with respect the claims set forth herein;

vi.     Granting injunctive relief requiring MetLife to properly inform Margaret Vega and Class Members throughout the application and policy underwriting process of the true value of the underinsured motorist benefits that are being advertised and sold;

vii.    Awarding Margaret Vega and Class Members their costs and expenses incurred in these actions, including reasonable attorney's fees, experts' fees, and costs; and

viii.   Granting such other and further relief as the Court deems just and

proper.

Respectfully submitted,

/s/ *Kedar Bhasker*
Kedar Bhasker
BHASKER LAW
1400 Central Ave. SE, Suite 2000
Albuquerque, NM 87106
Phone: (505) 407-2088
Kedar@bhaskerlaw.com

and

Corbin Hildebrandt
CORBIN HILDEBRANDT P.C.
1400 Central Ave. SE, Suite 2000
Albuquerque, NM 87106
Phone: 505 998-6626
corbin@hildebrandtlawnm.com

*Counsel for the Plaintiffs*

# Exhibit 1

*Margaret Christine*

Named Insured (print)

### PLEASE SIGN AND RETURN TO US

A 135260593 0

Policy Number

**NEW MEXICO**
**UNINSURED / UNDERINSURED MOTORISTS COVERAGE**
**ELECTION / REJECTION FORM**

This form is used to select the limits for the Uninsured / Underinsured Motorists Bodily Injury and Property Damage coverages that are best suited to your needs. Please read it carefully. The form must be completed, signed, and mailed to the address below when you are selecting, rejecting, or changing your Uninsured / Underinsured Motorists Bodily Injury (UMBI/UIMBI) coverage limits or your Uninsured Motorists Property Damage (UMPD) coverage limits. If you have any questions, please see the "How To Reach Us" section in the front of your policy package for your choice of contact options.

Uninsured Motorists Bodily Injury (UMBI) coverage will pay for loss resulting from bodily injury or death which you, or any other person occupying your covered automobile, are legally entitled to collect from the owner or driver of any uninsured motor vehicle or a hit-and-run motor vehicle.

Underinsured Motorists Bodily Injury (UIMBI) coverage will pay for loss resulting from bodily injury or death which you are legally entitled to collect from the owner or driver of a motor vehicle insured for amounts insufficient to pay for your loss.

Uninsured Motorists Property Damage (UMPD) coverage provides coverage for property damage you sustain as a result of an accident with an uninsured motor vehicle. UMPD coverage is subject to a $250 deductible.

You may select UMBI / UIMBI and UMPD coverage at the minimum limits required by law, or, for relatively modest increases in premium, in any amount up to the Bodily Injury and Property Damage Liability limits of your policy. You may also reject these coverages. Please indicate your selection below by checking the option you desire:

Your Bodily Injury limit on the policy: $ 25,000 / $ 50,000

I understand that if I select a coverage limit for Uninsured / Underinsured Motorists coverage that is lower than the limit on my policy for Bodily Injury Liability coverage, that I am rejecting Uninsured / Underinsured Motorists coverage limits equal to my Bodily Injury Liability coverage.

**I SELECT THE UNINSURED / UNDERINSURED MOTORISTS BODILY INJURY LIMITS INDICATED BELOW:**

_____ $25,000 per person / $50,000 per accident    $ 122
_____ $30,000 per person / $60,000 per accident    $ 156
_____ $50,000 per person / $100,000 per accident   $ 160
_____ $60,000 per person / $120,000 per accident   $ 188
_____ $100,000 per person / $300,000 per accident  $ 206
_____ $150,000 per person / $350,000 per accident  $ 222
_____ $250,000 per person / $500,000 per accident  $ 238
_____ $300,000 per person / $600,000 per accident  $ 244

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its affiliates. Warwick, RI

**I SELECT THE UNINSURED MOTORISTS PROPERTY DAMAGE LIMITS INDICATED BELOW:**

| | | |
|---|---|---|
| \_\_\_\_ | $10,000 per accident | $ 58 |
| MC | $15,000 per accident | $ 72 |
| \_\_\_\_ | $20,000 per accident | $ 82 |
| \_\_\_\_ | $25,000 per accident | $ 100 |
| \_\_\_\_ | $50,000 per accident | $ 114 |
| \_\_\_\_ | $100,000 per accident | $ 140 |

\_\_\_\_ **I reject the Uninsured / Underinsured Motorists coverage, as well as Uninsured Motorists Property Damage in their entirety. I understand that I may add these coverages at any future date.**

**NEW MEXICO STACKING OF UNINSURED MOTORISTS COVERAGE**

If you have elected to purchase Uninsured Motorists coverage, you have the option to reject intra-policy Stacked Uninsured Motorists coverage and, instead, purchase Non-Stacked Uninsured Motorists coverage. Subject to the provisions of the policy, intra-policy stacking refers to aggregating the Uninsured Motorists coverage limits, for you and members of your household, for each vehicle specifically insured under the policy.

Please indicate your choice of stacking Uninsured Motorists coverage below.

\_\_\_\_ I SELECT the Stacking of Uninsured Motorists coverage $ 166

MC I REJECT the Stacking of Uninsured Motorists coverage $ 122

Signature _Margaret Christie_

Date _3/27/18_

Mail to:
Attention: Services
MetLife Auto & Home
P.O. Box 6060
Scranton, PA 18505-6060

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its affiliates. Warwick, RI



From: Margaret Christine
1133 Orchards St-NE Unit C
ABQ, NM 87110

U S POSTAGE $.50

BEFORE SEALING, PLEASE BE SURE THE MAILING ADDRESS APPEARS IN THE WINDOW.

www.eservice.metlife.com

*E160180162I*

# Exhibit 2

## MetLife Auto & Home®

## Auto

## Insurance Policy

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its affiliates, Warwick, RI.

THE COMPANY NAMED IN THE DECLARATIONS
Administrative Offices:
700 Quaker Lane, Warwick, Rhode Island 02886

## AUTO INSURANCE POLICY

### TABLE OF CONTENTS

|  | PAGE |
|---|---|
| **INSURANCE AGREEMENT AND DECLARATIONS** | 1 |
| **GENERAL DEFINITIONS** | 1 |
| Actual Cash Value | 1 |
| Auto | 1 |
| Auto Business | 1 |
| Bodily Injury (BI) | 1 |
| Collision | 1 |
| Covered Auto | 1 |
| Deductible | 2 |
| Fungus and Mold | 2 |
| Insured | 2 |
| Loss | 2 |
| Medical Services | 2 |
| Medical Expense | 2 |
| Motorcycle | 2 |
| Motor Vehicle | 2 |
| Non-Owned Auto | 3 |
| Nuclear Action | 3 |
| Occupying | 3 |
| Property Damage (PD) | 3 |
| Racing | 3 |
| Reasonable Expenses | 3 |
| Relative | 3 |
| Substitute Auto | 3 |
| Total Loss | 4 |
| Trailer | 4 |
| War | 4 |
| We, Us, Our, Company | 4 |
| You, Your | 4 |
| **LIABILITY COVERAGE** | 4 |
| Insuring Agreement | 4 |
| Supplemental Payments | 4 |
| Exclusions | 5 |
| Limit Of Liability | 5 |
| Duplication Of Payments | 6 |
| Financial Responsibility | 6 |
| Out Of State Insurance | 6 |
| Other Insurance | 6 |
| **MEDICAL EXPENSE COVERAGE** | 6 |
| Insuring Agreement | 7 |
| Exclusions | 7 |
| Limit Of Liability | 7 |
| Duplicate Payments | 8 |
| Other Insurance | 8 |

**PHYSICAL DAMAGE COVERAGE**    8
  Insuring Agreements    8
    Comprehensive Coverage    8
    Collision Coverage    8
    Towing And Labor Coverage    8
    Substitute Transportation Coverage    9
  Supplemental Payments    9
  Exclusions    9
  Limit Of Liability    11
    Replacement Cost Settlement    11
    Actual Cash Value Settlement    11
    Replacement Cost for Special Parts    11
  Deductible    12
  No Benefit To Bailee    12
  Appraisal    12
  Payment Of Loss    12
  Other Insurance    12

**GENERAL POLICY CONDITIONS**    13
  Territory And Policy Period    13
  Changes    13
  Fraud And Misrepresentation    13
  Duties After A Loss    13
  Medical Reports; Proof And Payment Of Claim    14
  Legal Action Against Us    15
  Our Recovery Right    15
  Assignment    15
  Conformity To Law    16
  Loss Payable Clause    16
  Additional Insured    16
  Termination    See State Provisions Endorsement

**PERSONAL INJURY PROTECTION COVERAGE**
  If shown in the Declarations, see Personal Injury Protection Coverage Endorsement

**UNINSURED AND UNDERINSURED MOTORISTS COVERAGE**
  If shown in the Declarations, see Uninsured/Underinsured Coverage Endorsement(s)

# AUTO INSURANCE POLICY

## INSURANCE AGREEMENT AND DECLARATIONS

In return for the payment of premium, **we** agree to insure **you** for the coverages and applicable limits of insurance shown in the Declarations. The coverages provided are subject to all the terms, conditions, and limitations of this policy. The policy consists of the policy contract, the Declarations, and all endorsements that apply.

When **you** accept this policy, **you** agree that the representations made by **you** or on **your** behalf for this insurance are true. **We** provide this insurance based upon those truths. This policy contains all agreements between **you** and **us**.

## GENERAL DEFINITIONS

Certain words and phrases are defined for use in this policy. These words and phrases have the same meaning whether in singular, plural, or any other form. Each coverage may define words and phrases that are used only with that coverage. Defined words and phrases appear in boldface type.

**A. ACTUAL CASH VALUE** means the amount that it would cost to repair or replace the damaged property, minus the amount for any physical deterioration and depreciation.

**B. AUTO** means a land **motor vehicle** of the private passenger, pick-up truck, low speed vehicle, or van type which is designed and intended for use mainly on public roads. Golf carts which are registered for use on public roads are **autos**.

**C. AUTO BUSINESS** means the business or occupation of:
    **1.** selling;
    **2.** leasing;
    **3.** repairing;
    **4.** servicing;
    **5.** storing;
    **6.** parking;
    **7.** delivering; or
    **8.** testing;
**motor vehicles** or **trailers**.

**D. BODILY INJURY** (referred to as "**BI**") means any physical injury to a person and any resulting sickness, disease or death.

**E. COLLISION** means the contact of an **auto** with another object, vehicle, or the road bed. This includes the overturning of an **auto**.

**F. COVERED AUTO** means:
    **1.** any **auto** or **trailer** which is shown in the Declarations and is owned by, registered to, or leased by **you** or a **relative**;
    **2.** any **auto** or **trailer** which is shown in the Declarations and which is furnished to **you** or a **relative** for **your** regular use, but is not owned by or leased to **you** or a **relative**;
    **3.** a camper that is designed to be mounted on a pickup truck. The camper must be shown in the Declarations;
    **4.** a **substitute auto**;
    **5.** an **auto** which is newly acquired by **you**. **You** must ask **us** to add it to **your** policy within 30 days of acquisition and pay any additional premium due.
    If the newly acquired **auto**:
        **a.** replaces an **auto** shown in the Declarations then the coverages and limits applicable to the replaced **auto** shall apply to the newly acquired **auto**.

    **b.** does not replace an **auto** shown in the Declarations, then the broadest coverages and limits applicable to any **auto** shall apply to the newly acquired **auto.** If Comprehensive or Collision Coverage does not apply to any **auto** shown in the Declarations, **we** will provide Comprehensive and Collision Coverages subject to a $500 deductible for the newly acquired **auto.**

An **auto, trailer** or camper is no longer a **covered auto** on the date it is no longer owned by, leased to, or available for regular use by **you** or a **relative.**

**G. DEDUCTIBLE** means the amount of **loss** to be paid by **you.**

**H. FUNGUS AND MOLD** means inhalation, ingestion, the existence of or exposure to any fungi, mold, mushrooms, bacteria, mildew, wet rot or dry rot and any mycotoxins, spores, scents, or by-products produced by any of these.

**I. INSURED** means:
    **1.** with respect to a **covered auto:**
        **a. you;**
        **b.** any **relative;** or
        **c.** any other person using it with **your** or a **relative's** permission. The use must be within the scope of the permission given by **you** or a **relative.**
    **2.** with respect to a **non-owned auto, you** or any **relative.** The use must be within the scope of the permission given to **you** or a **relative.**
    **3.** any other person or organization if liable due to the acts or omissions of any person described in **1.** or **2.** above. This provision does not apply:
        **a.** if the vehicle is a **non-owned auto** owned or hired by the person or organization.
        **b.** to the United States of America or any of its agencies.

**J. LOSS** means direct, sudden and accidental damage or total or partial theft. **Loss** does not include any actual or perceived reduction in market or resale value.

**K. MEDICAL SERVICES** means necessary medical treatments, procedures, products, services, and supplies which:
    **1.** are provided by licensed hospitals, physicians, clinics or other medical or healthcare providers, if the provider is required to be licensed by law; and
        **a.** is within the legally authorized scope of the provider's practice or service;
        **b.** are commonly and customarily recognized as the standard of care and treatment throughout the medical and dental professions and within the United States of America as appropriate for the **BI;**
        **c.** serve a medical purpose or are for a medical reason;
        **d.** are not experimental in nature; and
        **e.** are not for research or testing purposes;
    **2.** includes ambulance or medical transportation services;
    **3.** includes professional nursing services;
    **4.** includes the costs of pharmaceuticals prescribed by a licensed medical provider, eyeglasses, hearing aids, orthopedics and prosthetic devices; or
    **5.** are due to common funeral or burial services or practices.

**L. MEDICAL EXPENSE** means the **reasonable expenses** incurred for any **medical services.**

**M. MOTORCYCLE** means a two-wheeled or three-wheeled motorized vehicle of the motorcycle, motorbike, moped or registered motor scooter type, including, if attached, a sidecar or **trailer.**

**N. MOTOR VEHICLE** means a land motor vehicle designed for use mainly on public roads other than:
    **1.** a farm type tractor or farm equipment designed for use mainly off public roads, while not upon public roads;
    **2.** a vehicle operated on rails or crawler-treads;

3. a self-propelled steam or traction engine;
4. a compactor type engineering vehicle used for the construction of roads or foundations; or
5. a vehicle used primarily as a residence, dwelling, premises, or place of business.

O. **NON-OWNED AUTO** means:
   1. an **auto** being used by **you** or a **relative** with the owner's permission. The **auto** must not be owned by, furnished to, or made available for regular use by **you**, or any **relative**. However, an **auto** owned by, furnished to, or made available for regular use by a **relative** shall be a **non-owned auto** when it is used by:
      **a.** **you**; or
      **b.** any other **relative**.
   2. a commercially rented **auto**, or truck which has a Gross Vehicle Weight Rating of under 26,000 lbs., used by **you** or a **relative** on a temporary basis.

P. **NUCLEAR ACTION** means nuclear reaction, nuclear discharge, radiation or radioactive contamination including any cleanup, decontamination or containment activities regardless of how the reaction, discharge or contamination occurred.

Q. **OCCUPYING** means in, on, entering, or exiting.

R. **PROPERTY DAMAGE** (referred to as **"PD"**) means physical damage to, destruction of, or loss of use of tangible property.

S. **RACING** means preparing, practicing, competing or driving in any organized or prearranged:
   1. race;
   2. speed contest;
   3. high speed driving;
   4. stunting;
   5. demolition; or
   6. other similar organized exhibition or demonstration,
on a closed course.

T. **REASONABLE EXPENSES** means the least of:
   1. the reasonable, usual and customary fees charged by a majority of healthcare providers who provide similar **medical services** in the geographical area in which the fees were incurred. The fee may be established by a database, survey or any other means which identifies the amounts charged by healthcare providers within the same or a similar geographical area in which the fees were incurred;
   2. the fee specified in any fee schedule which is authorized or prescribed by law to apply to medical payments coverage, no-fault coverage, or personal injury protection coverage included in an auto liability policy issued in the state where the **medical services** were provided;
   3. the fees agreed to by both the healthcare provider and **us**; or
   4. the fees agreed to by the healthcare provider and a third party or a network.

U. **RELATIVE** means a person, other than **you**, who is a resident of **your** household, and is related to **you** by blood, marriage, civil union, registered domestic partnership, or adoption. This includes a ward, stepchild, foster-child, and **your** children that are residents of **your** household who are living elsewhere. **We** may require reasonable proof of residency in **your** household.

V. **SUBSTITUTE AUTO** means an **auto** or trailer which is not owned by **you** or any **relative**, and which is used with the owner's permission to replace a **covered auto** for a short time. The **covered auto** has to be out of normal use due to:
   1. breakdown;
   2. destruction;
   3. loss;

4. repair; or
5. servicing.

**W. TOTAL LOSS** means a **loss** in which the cost to repair the vehicle to its pre-**loss** condition plus the salvage value, equals or exceeds the **actual cash value.**

**X. TRAILER** means a trailer designed to be towed by an **auto** and which is not used as an office, store, display, or passenger trailer. A farm wagon or farm implement is a **trailer** while being towed by an **auto.**

**Y. War** means a state of conflict including:
1. war, declared or undeclared;
2. civil war;
3. insurrection;
4. rebellion;
5. revolution; or
6. warlike actions by a military force or personnel.

**Z. WE, US, OUR** and **COMPANY** mean the company named in the Declarations.

**AA.YOU** and **YOUR** mean the named insured or named insureds shown in the Declarations. If a named insured shown in the Declarations is a person, then **you** and **your** includes that person's:
1. spouse; or
2. partner in a civil union, registered domestic partnership or other similar union.
The spouse or partner must be a resident of the same household as the named insured. The marriage, civil union or domestic partnership must have been validly entered into under the laws of a state, municipality, or territory of the United States or any other country.

## LIABILITY COVERAGE

Coverage is provided when the coverage is shown as applying in the Declarations.

### INSURING AGREEMENT
**We** will pay damages for **BI** and **PD** to others for which the law holds an **insured** responsible because of a **loss** resulting from owning, maintaining, or using a **covered auto** or **non-owned auto**, including a **trailer**, mounted camper unit, attached cap, topper, or canopy which is being used with either. Damages include prejudgment interest awarded against an **insured.** The most **we** will pay for all damages shall not be more than the amount determined by the **LIMIT OF LIABILITY.**

**We** will defend an **insured**, at **our** expense against any suit or claim seeking these damages. **We** may use attorneys of **our** choice in any suit or claim. **We** may investigate, negotiate or settle any such suit or claim. **Our** duty to defend ends when **we** deposit in court or pay any amount due under this coverage. **We** have no duty to defend an **insured** for any suit or settle any claim not covered under this policy.

### SUPPLEMENTAL PAYMENTS
In addition to the limits of liability, **we** will pay the following expenses incurred by an **insured** due to a claim or suit covered under this policy:
**A.** Premiums on the following bonds:
1. Appeal bonds in any suit **we** defend.
2. Bonds to release attachments in any suit **we** defend. The total amount of the bonds must not exceed **our** limit of liability.
3. Up to $250 for any bail bond needed because of an accident or traffic violation(s) from owning, maintaining or using a **covered auto.**
**We** have no duty to furnish or apply for any bonds.

B. Court costs charged to an **insured**.
C. Costs paid by an **insured** to give first aid to others at the time of a **loss** involving a **covered auto** or **non-owned auto.**
D. Wages an **insured** loses while attending a hearing or trial at **our** request. The most **we** will pay to any **insured** is up to $250 per day. **We** will not pay for loss of other income.
E. Other reasonable expenses incurred at **our** request.

## EXCLUSIONS

A. **We** do not cover **BI** to any employee of an **insured** from his or her employment except domestic employees who are not covered or not required to be covered under any workers' compensation law.
B. **We** do not cover **BI** to a fellow employee of an **insured** while on the job and in the business of his employers. This exclusion does not apply to **you** or any **relatives.**
C. **We** do not cover **BI** or **PD** arising out of an **auto business.** This exclusion does not apply when a **covered auto** is used by **you**, a **relative**, or by any other person in any **auto business** in which **you** have an interest as owner or partner.
D. **We** do not cover any **BI** or **PD** which is covered under an atomic or nuclear energy liability insurance policy, or that would have been covered had that policy not been terminated upon exhaustion of its limit of liability.
E. **We** do not cover any **BI** or **PD** due to a **nuclear action.**
F. **We** do not cover **BI** or **PD** caused by or resulting from an **auto** while it is:
     1. rented to any person or organization in any fashion; or
     2. leased to any person or organization in any fashion.
   This exclusion does not apply:
     1. while the **auto** is rented or leased to or for **your** or a **relative's** use;
     2. while the **auto** is used in a shared expense car pool; or
     3. while the **auto** is being used for volunteer or charitable purposes for which reimbursement for normal operating expenses may be paid to **you** or a **relative.**
G. **We** do not cover **BI** or **PD** caused by or resulting from an **auto** while it is being used to carry persons for a charge. This exclusion does not apply while the **auto:**
     1. is used in a shared expense car pool; or
     2. is being used for volunteer or charitable purposes for which reimbursement for normal operating expenses may be paid to **you** or a **relative.**
H. **We** do not cover **PD** caused by any **insured** to:
     1. an **auto** that is owned by, rented to, operated by, or in the care of that **insured**; or
     2. any other property that is owned by, rented to, or in the care of any **insured.** This exclusion does not apply to a rented dwelling or private garage.
I. **We** do not cover any awards or judgments designated as punitive, exemplary, statutory multiple, or delay damages or awards.
J. **We** do not cover **BI** or **PD** from an intentional act caused by or at the direction of an **insured.** This exclusion applies even if the actual injury or damage is different than that which was intended or expected.
K. **We** do not cover **BI** or **PD** caused by or resulting from any **auto** while **racing.**
L. **We** do not cover **BI** or **PD** from the use of an **auto** for which the provisions of the Federal Tort Claims Act apply.
M. **We** do not cover any **BI** or **PD** directly or indirectly caused by **fungus and mold.**
N. **We** do not cover **BI** or **PD** from **occupying** or using an **auto** while:
     1. it is being used as an aircraft; or
     2. it is being used as a watercraft.
O. **We** do not cover **BI** or **PD** caused by anyone **occupying** or using an **auto** without the owner's permission or a reasonable belief that the person is entitled to **occupy** or use the **auto.** This exclusion does not apply to **you** or a **relative occupying** or using a **covered auto** or **non-owned auto.**

## LIMIT OF LIABILITY

The limit of liability shown for Bodily Injury in the Declarations for "each person" is the most **we** will pay for all damages, including prejudgment and post-judgment interest, due to **BI** to any one person as the result of any one accident. This includes all damages sustained by any other person as a result of that **BI.**

Subject to this limit for "each person", the Bodily Injury limit shown in the Declarations for "each accident" is the most **we** will pay for all damages, including prejudgment and post-judgment interest, arising out of **BI** sustained by two or more persons resulting from any one accident.

The limit of liability shown for Property Damage in the Declarations for "each accident" is the most **we** will pay for all damages, including prejudgment and post-judgment interest, to all property resulting from any one accident.

If a single limit of liability for Bodily Injury and Property Damage is shown in the Declarations, it is the most **we** will pay for all damages, including prejudgment and post-judgment interest, due to **BI** and **PD** as the result of any one accident.

The limit of liability includes damages for care, loss of consortium, emotional distress, and loss of services or death.

This is the most **we** will pay regardless of the number of:
   A. **insureds**;
   B. claims made;
   C. vehicles shown in the Declarations;
   D. premiums shown in the Declarations; or
   E. vehicles involved in the accident.

An **auto** and attached **trailer** are considered one vehicle.

## DUPLICATION OF PAYMENTS
No person is entitled to receive duplicate payments for the same elements of **loss** under this section and any other coverage provided by this policy.

## FINANCIAL RESPONSIBILITY
When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

## OUT OF STATE INSURANCE
If any **insured** becomes subject to a financial responsibility law, motor vehicle compulsory insurance law, compulsory insurance for nonresidents, or similar law of:
   A. any state of the United States of America;
   B. a territory, possession, or Commonwealth of the United States of America;
   C. the District of Columbia; or
   D. any province or territory of Canada;
**we** will interpret this policy to provide the coverage required by those laws.

## OTHER INSURANCE
If two or more auto insurance policies issued to **you** by **us** apply to any **loss**, the most **we** will pay is the highest dollar limit or benefit in any one such policy.

If there is other applicable insurance, **we** will pay **our** fair share. **Our** fair share is the portion that **our** limit bears to the total of all applicable limits. Any insurance **we** provide with respect to **non-owned autos** or **substitute autos** will be excess over any other collectible insurance. Any insurance **we** provide will be excess over any payments received from workers' compensation, disability, or similar law or benefits.

## MEDICAL EXPENSE COVERAGE

Coverage is provided when the coverage is shown as applying in the Declarations.

## INSURING AGREEMENT

We will pay **medical expenses** incurred because of **BI** to:

**A.** **you** or any **relative** as a result of a **loss** involving a **motor vehicle**, or a **trailer** while being used with an **auto**.

**B.** anyone, other than **you** or any **relative**, while **occupying** or using a **covered auto** with **your** consent.

**Medical services** must begin within one year and are rendered within three years from the date of **loss**.

## EXCLUSIONS

**A.** **We** do not cover that portion of any **medical expense** which is covered under or required to be covered under a workers' compensation, disability or similar law or benefits.

**B.** **We** do not cover **BI** arising out of an **auto business**. This exclusion does not apply when a **covered auto** is used by **you**, a **relative**, or by any other person in any **auto business** in which **you** have an interest as owner or partner.

**C.** **We** do not cover any **BI** which is covered under an atomic or nuclear energy liability insurance policy, or that would have been covered had that policy not been terminated upon exhaustion of its limit of liability.

**D.** **We** do not cover any **BI** due to a **nuclear action**.

**E.** **We** do not cover **BI** caused by, resulting from, or sustained while **occupying** a **covered auto** or **non-owned auto** while it is:

    **1.** rented to any person or organization in any fashion; or

    **2.** leased to any person or organization in any fashion.

This exclusion does not apply:

    **1.** while the **auto** is rented or leased to or for **your** or a **relative's** use;

    **2.** while the **auto** is used in a shared expense car pool; or

    **3.** while the **auto** is being used for volunteer or charitable purposes for which reimbursement for normal operating expenses may be paid to **you** or a **relative**.

**F.** **We** do not cover **BI** caused by, resulting from, or sustained while **occupying** a **covered auto** or **non-owned auto** while it is being used to carry persons for a charge. This exclusion does not apply while the **auto**:

    **1.** is used in a shared expense car pool; or

    **2.** is being used for volunteer or charitable purposes for which reimbursement for normal operating expenses may be paid to **you** or a **relative**.

**G.** **We** do not cover **BI** from an intentional act caused by or at the direction of an **insured**. This exclusion applies even if the actual injury or damage is different than that which was intended or expected.

**H.** **We** do not cover **BI** sustained while **occupying** any **motor vehicle** while **racing**.

**I.** **We** do not cover any **BI** directly or indirectly caused by **fungus and mold**.

**J.** **We** do not cover any **BI** caused directly or indirectly by **war**.

**K.** **We** do not cover **BI** sustained while **occupying** a **motor vehicle** while:

    **1.** it is located for use as a residence or premises;

    **2.** it is being used as an aircraft; or

    **3.** it is being used as a watercraft.

**L.** **We** do not cover **BI** sustained while **occupying** any **motor vehicle** or being struck as a pedestrian by any **motor vehicle**, which is owned by **you** or a **relative** or available for **your** or a **relative's** regular use. This exclusion does not apply to a **covered auto** or to a **non-owned auto**.

**M.** **We** do not cover **BI** sustained while **occupying** a **motorcycle**.

**N.** **We** do not cover **BI** sustained by anyone while **occupying** a **motor vehicle** without the owner's permission or a reasonable belief that the person is entitled to **occupy** the **motor vehicle**. This exclusion does not apply to **you** or a **relative occupying** a **covered auto** or **non-owned auto**.

## LIMIT OF LIABILITY

The limit shown in the Declarations for "each person" is the most **we** will pay for any one person as a result of any one accident. This is the most **we** will pay regardless of the number of:

**A.** **insureds**;

**B.** claims made;

   **C.** vehicles shown in the Declarations;
   **D.** premiums shown in the Declarations; or
   **E.** vehicles involved in the accident.

The total amount **we** will pay includes funeral and burial expenses, not to exceed the lesser of $3,000 or the limit of liability for each person.

## DUPLICATE PAYMENTS

No one will be entitled to receive duplicate payments for the same **medical services** or funeral and burial expenses under this coverage and:
   **A.** any other coverage provided by this policy; or
   **B.** any amount paid by or on behalf of a party who is legally liable for the **BI**.

## OTHER INSURANCE

If two or more auto insurance policies issued to **you** by **us** apply to any **loss**, the most **we** will pay is the highest dollar limit or benefit in any one such policy.

If there is other applicable insurance, **we** will pay **our** fair share. **Our** fair share is the portion that **our** limit bears to the total of all applicable limits. Any insurance **we** provide with respect to a vehicle **you** or a **relative** do not own will be excess over any other collectible insurance. Any coverage provided shall be excess over any personal injury protection benefits paid or payable, except for a deductible under this or any other motor vehicle insurance policy, for the **medical expenses for BI**.

## PHYSICAL DAMAGE COVERAGE

Coverage is provided when the coverage is shown as applying in the Declarations.

## INSURING AGREEMENTS

### A. COMPREHENSIVE COVERAGE

**We** will pay for **loss** to **your covered auto**, or to a **non-owned auto**, including its equipment, not caused by **collision**, minus any applicable **deductible** shown in the Declarations. Coverage is included for a **loss** caused by, but not limited to, the following:
   **1.** falling objects or contact with a bird or animal;
   **2.** fire, explosion, or earthquake;
   **3.** theft or larceny;
   **4.** windstorm, hail, water or flood;
   **5.** malicious mischief or vandalism;
   **6.** riot or civil commotion; and
   **7.** breakage of glass.

### B. COLLISION COVERAGE

**We** will pay for **loss** to **your covered auto** or to a **non-owned auto**, including its equipment, caused by **collision**, minus any applicable **deductible** shown in the Declarations.

### C. TOWING AND LABOR COVERAGE

**We** will pay up to the limit shown in the Declarations for the cost of labor performed at the place of disablement or breakdown and costs of towing a **covered auto** or a **non-owned auto** to be repaired. The disablement or breakdown labor and towing include:
   **1.** labor to repair the vehicle at the place of disablement or breakdown;
   **2.** towing to the nearest repair facility;
   **3.** delivery of fuel, liquids, batteries or tires necessary to make the vehicle drivable, excluding the actual cost of the fuel, liquids, batteries or tires;
   **4.** labor to replace a flat tire at the scene of disablement;
   **5.** jump-starting or boosting a battery to start the vehicle due to a drained battery;

    6.  winching to bring the vehicle back onto a paved road or driveway; and
    7.  lockout or locksmith services needed to open a door if the key is lost, stolen or locked inside the vehicle.

No **deductible** applies to this coverage.

### D. SUBSTITUTE TRANSPORTATION COVERAGE

**We** will pay up to the limit as shown in the Declarations for the cost of substitute transportation if the **covered auto** is disabled as a result of a **loss** covered under Comprehensive or Collision Coverage. For **loss** caused by theft of the **covered auto**, this coverage is provided in place of any transportation costs paid under item **C.** of **SUPPLEMENTAL PAYMENTS**.

Payment will begin the day the **covered auto** is:
    1.  out of use due to the **loss**; or
    2.  the day **you** leave it at the repair shop.

Payment will be made for the reasonable and necessary time required to repair the **covered auto**. Payment will end:
    1.  the day the **covered auto** has been repaired;
    2.  when **we** offer settlement; or
    3.  when **you** reach **your** limit,
whichever occurs first.

**We** will pay up to the amount for each day, as shown in the Declarations, for rental coverage from an auto rental agency, but not more than the maximum amount for each disablement for any one **loss**.

However, if **you** do not rent from an auto rental agency, **we** will pay **you** $25 per day, but not more than the limit shown in the Declarations for each disablement for any one **loss**.

No **deductible** applies to this coverage.

## SUPPLEMENTAL PAYMENTS
  **A.**  If the **covered auto** is disabled as a result of **loss**, **we** will pay up to $50 for transportation to reach the intended destination or return home.
  **B.**  If the **covered auto** is in a **loss**, **we** will pay up to $300 for **loss** to clothes and luggage belonging to **you** or a **relative** which are in the **covered auto**.
  **C.**  If an **auto** is stolen, **we** will pay up to $25 for each day for transportation. Payment will end when **we** offer settlement for the theft. If **you** do not rent from an auto rental agency, **we** will pay **you** $25 for each day. However, the total amount **we** will pay will not be more than $750.
  **D.**  **We** will pay general average and salvage charges for which **you** become legally liable when the **covered auto** is being transported.
  **E.**  **We** will pay to replace a child restraint seat or car seat damaged in a **loss** covered under Comprehensive or Collision Coverage.
  **F.**  **We** will pay expenses for loss of use, diminished value, and reasonable fees and charges which **you** become legally obligated to pay as a result of direct and accidental damage to a **non-owned auto** commercially rented by **you** or a **relative** on a temporary basis.

No **deductible** applies to these payments.

## EXCLUSIONS
  **A.**  **We** do not cover **loss** to **non-owned auto** arising out of an **auto business**.
  **B.**  **We** do not cover any **loss** to an **auto** due to a **nuclear action**.
  **C.**  **We** do not cover **loss** to an **auto** while it is:
      1.  rented to any person or organization in any fashion; or

    **2.** leased to any person or organization in any fashion.

This exclusion does not apply:
1. while the **auto** is rented or leased to or for **your** or a **relative's** use;
2. while the **auto** is used in a shared expense car pools;
3. while the **auto** is being used for volunteer or charitable purposes for which reimbursement for normal operating expenses may be paid to **you** or a **relative**.

**D.** **We** do not cover **loss** to an **auto** while it is being used to carry persons for a charge. This exclusion does not apply while the **auto**:
1. is used in a shared expense car pools; or
2. is being used for volunteer or charitable purposes for which reimbursement for normal operating expenses may be paid to **you** or a **relative**.

**E.** **We** do not cover **loss** to an **auto** arising out of an intentional act or theft caused by or at the direction of an **insured**. This exclusion applies even if the actual injury or damage is different than that which was intended or expected.

**F.** **We** do not cover **loss** to any **auto** while **racing**.

**G.** **We** do not cover any **loss** caused by **fungus and mold**.

**H.** **We** do not cover any **loss** caused directly or indirectly by **war**.

**I.** **We** do not cover any **loss** due to and confined to:
1. wear and tear;
2. freezing; or
3. mechanical or electrical breakdown or failure.

This exclusion does not apply if the **loss** results from the total theft of an **auto**.

**J.** **We** do not cover **loss** or road damage to tires used with an **auto**. This exclusion does not apply if the **loss** is caused by:
1. falling objects or contact with a bird or animal;
2. fire, explosion or earthquake;
3. theft or larceny;
4. windstorm, hail, water or flood;
5. malicious mischief or vandalism;
6. riot or civil commotion; or
7. a **collision** involving another part of the **auto** which causes a **loss** to the tires.

**K.** **We** do not cover **loss** to any device used to detect or interfere with speed measuring devices which are used with or located in an **auto**.

**L.** **We** do not cover **loss** to an **auto** or **trailer** due to destruction or confiscation by governmental or civil authorities.

**M.** **We** do not cover **loss** to any electronic equipment that is installed or located in an **auto** and is designed to reproduce, receive or transmit audio, visual or data signals. This includes, but is not limited to:
1. radios and stereos;
2. tape decks;
3. compact disc and digital video disc systems, players and burners;
4. navigation systems;
5. internet access systems;
6. personal computers, including laptops, desktops, and personal digital assistants (PDA), electronic tablet, or any other handheld or portable device;
7. video entertainment systems;
8. telephones;
9. televisions;
10. two-way mobile radios;
11. scanners; or
12. citizens band radios.

This exclusion applies to all accessories used with the equipment or similar equipment.

This exclusion does not apply if the equipment is operated solely from the electrical system of the vehicle and is:
1. permanently installed in a housing unit or location used by the **auto** manufacturer for such equipment; or

    **2.** a component that is removable from a housing unit permanently installed in the location used by the **auto** manufacturer for such equipment; or

    **3.** equipment which was provided by or through **us** for use in the **auto**.

**N.** **We** do not cover **loss** to removable products used for the storage of audio, video or other data. This includes, but is not limited to, tapes, records, discs, memory cards, MP3 data, electronic books, and other media or other devices.

This exclusion applies to the removable products used for storage and all data contained on them, including any time or cost to recreate the data.

**O.** **We** do not cover **loss** to a camper, including its parts and its equipment, that is:

    **1.** designed to be mounted on an **auto;**

    **2.** owned by **you** or a **relative**; and

    **3.** not a **covered auto**.

**P.** **We** do not cover any actual or perceived decrease in market value, diminished value, or resale value resulting from a **loss** to an **auto**.

**Q.** **We** do not cover any undamaged parts or accessories of an **auto**, except to the extent necessary to repair or replace damaged parts or accessories.

**R.** **We** do not cover a **loss** to an **auto** while:

    **1.** it is being used as an aircraft; or

    **2.** it is being used as a watercraft.

## LIMIT OF LIABILITY

**A.** **Replacement Cost Settlement**. If the **covered auto** is owned by **you** and sustains a **loss** within:

    **1.** one year after purchase; or

    **2.** the vehicle's first 15,000 miles,

whichever occurs first, **we** will pay, at **our** option, the full cost of repair or replace the vehicle, less the applicable **deductible**.

**We** will not pay more than the cost to replace the damaged property with:

    **1.** a previously untitled vehicle of the year, make, model and equipment of the damaged **auto** or, if unavailable,

    **2.** a vehicle that is most similar in class and body type to the year, make, model and equipment of the damaged **auto**.

This applies only to a **covered auto** that has not been previously titled and was not more than one model year old when purchased by **you**. This does not apply to a **substitute auto**, a **non-owned auto** or a leased vehicle. **We** will not pay more than the **actual cash value** of the damaged part or property until the actual repair or replacement is complete. If **we** agree that the **auto** is a **total loss**, **you** may make claim for additional payments for the cost to replace the damaged property by submitting proof of purchasing a replacement **auto** within 91 days of the date of **loss**.

**B.** **Actual Cash Value Settlement**. If the **covered auto** is not covered under **A.** above, **our** payments will not exceed the lesser of:

    **1.** the limit shown in the Declarations for Physical Damage for the **auto**;

    **2.** the **actual cash value** of the property at the time of **loss**; or

    **3.** the cost to repair or replace the property with other of like kind and quality.

If the repair or replacement results in the betterment of the property or part, **you** must pay the amount of the betterment.

**C.** **Replacement Cost For Special Parts**. **We** will not take a deduction for depreciation for **loss** to, steering and suspension components, brake parts, electrical wiring and components, batteries, and tires if repair or replacement results in a better part than was damaged. This does not apply

to the theft of tires or batteries. This does not apply when an **auto** sustains a **total loss.**

If the **loss** is only to a part of the property, **our** responsibility extends to that part only.

The most **we** will pay for **loss** to a **trailer you** do not own or did not commercially rent is $1,500.

The cost necessary to repair or replace damaged property with other of like kind, quality, make, model, year or equipment will be the fair and reasonable prices to make the repairs or replacement locally. To the extent there is a range of fair and reasonable prices to make such repairs locally, **we** will pay a competitive price within that range determined at **our** sole discretion. Property of like kind and quality may include new, used, recycled, and reconditioned parts. Any of these parts may be produced by or for the **auto's** manufacturer or may be from non-original equipment manufacturers.

## DEDUCTIBLE

The Comprehensive Coverage and Collision Coverage **deductible** applicable to each **covered auto** is shown in the Declarations. **We** will waive the **deductible** if the **loss** is the result of **collision** with another vehicle insured by **us.** If the **loss** is to a **non-owned auto,** the Comprehensive Coverage or Collision Coverage **deductible** applicable to the **loss** shall be the lowest **deductible** displayed in the Declarations for the applicable coverage for a **covered auto** which is not a **trailer.**

If a Deductible Savings Benefit (DSB) is shown in the Declarations, the amount shown is available to reduce the Comprehensive or Collision **deductible** applicable to a **loss.** The Deductible Savings Benefit is not applicable to **losses** involving only the repair or replacement of glass.

## NO BENEFIT TO BAILEE

This coverage shall not directly or indirectly benefit any carrier or bailee for hire for **loss** to the **covered auto.**

## APPRAISAL

If within 60 days after proof of **loss** is filed there is a disagreement as to the amount of **loss, you** or **we** may demand an appraisal. Each party will select a competent appraiser. Each appraiser will state separately the **actual cash value** and the amount of **loss.** If they fail to agree, they must select and submit their differences to a competent and disinterested umpire. Agreement by any two will determine the amount of **loss.** Each party will pay his chosen appraiser and will equally share the expenses of the appraisal process and umpire. Disagreements over any coverage provided by this policy are not subject to appraisal.

## PAYMENT OF LOSS

If property is stolen, **we** may, at any time before the **loss** is paid or the property replaced, return at **our** own expense any stolen property. **We** will return the property to **you** or, at **our** option, to the address shown in the Declarations. If **we** return stolen property **we** will pay for any damage resulting from the theft. **We** may take all or part of the damaged property at the agreed or appraised value, but **you** cannot abandon the property to **us.**
**We** may, at **our** option, make payment for a **loss** to one or more of the following:
   **A.** **You.**
   **B.** The owner of the **auto.**
   **C.** The repairer.
   **D.** Any other party who has an interest, title, or lien on the property.

## OTHER INSURANCE

If two or more auto insurance policies issued to **you** by **us** apply to any **loss,** the most **we** will pay is the highest dollar limit or benefit in any one such policy.

If there is other applicable insurance, **we** will pay **our** fair share. **Our** fair share is the portion that **our** limit bears to the total of all applicable limits. Any insurance **we** provide with respect to **non-owned autos** or **substitute autos** will be excess over any other collectible insurance.

## GENERAL POLICY CONDITIONS

### A. TERRITORY AND POLICY PERIOD
This policy applies to accidents and **losses** which happen during the policy period shown by the effective date and expiration date in the Declarations, and within:

1. the United States, its territories, its possessions, and its Commonwealths;
2. the District of Columbia;
3. Canada; and
4. while the **covered auto** or **non-owned auto** is being shipped between the ports of the United States, its territories, its possessions, its Commonwealths, and Canada.

### B. CHANGES
1. This policy contains all the agreements between **you** and **us**. Its terms may not be changed or waived except by endorsement issued by **us**.
2. The premiums for this policy are computed using the rules, rates, rating plans, premiums and minimum premiums for the coverages provided. The premiums **we** charge are based on information **we** received from **you** and from other sources. **You** agree to assist **us** in determining that this information is complete and correct. **You** must inform **us** if any of the information is incorrect or incomplete, or changes during the policy period. If any of the information used to determine the premium is incorrect, incomplete, changes or if **you** do not provide it to **us** when **we** ask, **we** may increase or decrease the premium during the policy period.

   Changes during the policy period that may result in a premium increase or decrease include, but are not limited to, changes in:
   a. the number, type, or use of the **covered autos**.
   b. drivers using the **covered autos**, including **you**, **relatives** and all licensed drivers in **your** household.
   c. the principal garaging location of the **covered autos**.
   d. coverage, deductible or limits of the policy.

   If a change requires a premium increase or decrease, **we** will increase or decrease the premium following **our** rules and rates. If the premium is increased, **you** must pay the amount of increase on the date set by **us**.
3. **We** will automatically give **you** the benefits of any extension or broadening of coverage if a policy change does not require additional premiums. The change will automatically apply to **your** policy as of the date **we** implement the change in **your** state. This will not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:
   a. a future edition of **your** policy; or
   b. an endorsement changing the policy.
4. If **we** offer to renew this policy, the renewal premium will be based upon the rates in effect at the time of the renewal.

### C. FRAUD AND MISREPRESENTATION
**You** will have no coverage, and **your** policy will be void, if before or after a **loss**, **you** or any person:

1. conceals or misrepresents any material fact or circumstance;
2. makes a fraudulent statement; or
3. takes part in or attempts any fraudulent conduct;

relating to this policy or any **loss** for which coverage is sought.

### D. DUTIES AFTER A LOSS
**We** have no duty to provide coverage under this policy if the failure to comply with any of the following duties is prejudicial to **us** or results in additional **loss** or damage.

1. **You** or someone on **your** behalf must notify **us** as soon as possible of any **loss**. **We** may

require notification in writing. The notification should include as many details as possible, including:

    a. the names and addresses of drivers, injured persons and witnesses;
    b. the time and place of the **loss**; and
    c. all details and circumstances of the **loss**.

2. **You** must protect the **auto** from further **loss**. **We** will pay **you** for reasonable expenses incurred for this protection. **We** will not cover any **loss** which results from **your** failure to protect the **auto** from further **loss**.

3. In the event of a theft, **you** must promptly report the **loss** to the police.

4. **You** or a **relative** seeking coverage under Physical Damage Coverage must file with **us** a proof of **loss** within 91 days, or within the number of days required by law, of the **loss**.

5. **You**, a **relative**, and anyone seeking any coverage must:

    a. cooperate with **us** in the investigation, settlement or defense of any claim or suit;
    b. assist in securing and making evidence available to **us**. This includes, but is not limited to, allowing **us** to inspect damage to a **covered auto** or a **non-owned auto** before it is repaired;
    c. promptly send **us** copies of any notices, complaints, summons or legal papers received in connection with the **loss**;
    d. attend hearings and trials at **our** request;
    e. assist in finding and having witnesses participate in the investigation and settlement of claims;
    f. submit to:
        i. physical or mental exams by physicians of **our** choice as often as **we** require;
        ii. examinations under oath as often as **we** require; and
        iii. interviews and recorded statements without the need for **us** to conduct an examination under oath.
    g. authorize **us** to obtain any:
        i. medical, laboratory, or treatment reports, results, or tests related to **BI** which may have resulted from the accident or **loss**; and
        ii. other pertinent records, including, but not limited to, police or traffic reports, vehicle usage, information contained in or transmitted by any device located in or on the covered **auto** or **trailer**.

6. **You**, a **relative**, and anyone seeking any coverage will not voluntarily make any payment, assume any obligation, or incur any expense at the time of the **loss**, except at **your** expense. This does not apply to any first aid **you** or any **relative** provides to others.

## E. MEDICAL REPORTS; PROOF AND PAYMENT OF CLAIM

Any person making a claim must do the following as soon as possible:

1. Give **us** details about the death, injury, treatment, and other information **we** need to determine the amount payable. **We** have the right to make or obtain a review of **medical expenses** and **medical services** to determine if they are reasonable and necessary for the **BI** sustained. Forms for providing this information may be provided by **us**.

2. Consent to be examined by physicians chosen and paid by **us** when, and as often as, **we** reasonably may require.

3. Sign authorizations to permit **us** to obtain medical reports and records. If the person is dead or unable to act, such authorizations must be signed by his or her legal representative.

4. Submit to and provide all details concerning **loss** information through written or recorded statements or examinations under oath as often as **we** reasonably may require.

In addition, any person making a claim as a result of **BI**, which may result in payment from Personal Injury Protection or Medical Expense Coverage, must notify **us** in writing. This notification should be sent to **us** as soon as reasonably possible after the person's first examination or treatment resulting from the **BI**. Another person may give **us** the required notice on behalf of the person making a claim.

Under Personal Injury Protection and Medical Expense Coverage, **we** may pay the injured person or

any person or organization rendering the services. Any such payment will reduce the total amount **we** will pay for the injury. Any payment made by **us** will not constitute admission of liability or fault.

If a **loss** is covered under Personal Injury Protection or Medical Expense Coverage, **we** will defend **you** or any person if a lawsuit is brought for the balance of a bill that **we** did not pay in full based on the charge being in excess of a usual, customary and reasonable charge. Any defense **we** provide will be at **our** expense and with attorneys of **our** choice.

Under Personal Injury Protection, Uninsured Motorists, and Underinsured Motorists Coverage, **we** may pay any amount due to one or more of the following:
   1. the injured person;
   2. a parent or guardian, if the injured person is a minor;
   3. the surviving spouse;
   4. the person authorized by law to receive such payment; or
   5. the person entitled by law to recover the damages, which the payment represents.

To receive payment for any **BI**, **we** may require, where applicable by law, all medical billing, electronic or not, by the provider to be submitted to **us** in a standard format that meets the Federal Health Insurance Portability and Accountability Act electronic transaction regulation requirements and coded according to Current Procedural Terminology (CPT) guidelines and appropriate International Classification of Diseases diagnosis codes.

## F. LEGAL ACTION AGAINST US
Legal action may not be brought against **us** unless there is full compliance with all of the terms of this policy. In addition, legal action may not be brought against **us** regarding:
   1. Liability Coverage until the amount of damages an **insured** is legally liable to pay has been finally determined by:
      a. judgment after an actual trial; or
      b. the written agreement of **you**, the claimant, and **us**.
   No one has the right to make **us** a party in a suit to determine legal liability.
   2. Physical Damage Coverage:
      a. until 30 days after a proof of **loss** is filed with **us**;
      b. until the amount of **loss** is determined as provided in this policy; and
      c. except during the first twelve months after the **loss**.

**Your** bankruptcy or insolvency will not change or relieve **us** of any of **our** obligations under this policy.

## G. OUR RECOVERY RIGHT
In the event of any payment under this policy, **we** are entitled to all of the rights of recovery of the person to whom, or on whose behalf, payment was made. That person must:
   1. hold in trust for **us** all rights of recovery;
   2. sign and deliver to **us** any legal papers relating to the recovery;
   3. help **us** exercise **our** rights; and
   4. do nothing after the **loss** to prejudice **our** rights.

In the event of recovery, **we** must be repaid for all of the amounts paid out by **us** plus any related collection expenses. **We** will enforce this provision only in the manner and to the extent permitted under all the applicable state laws.

## H. ASSIGNMENT
**Your** rights and duties under this policy cannot be transferred or assigned without **our** consent.

If **you** die, this policy will continue until the end of the policy period for:
   1. the surviving spouse if a resident of the same household at the time of death;

    **2.** **your** legal representative, but only with respect to the representative's legal responsibility to maintain or use a **covered auto**; or

    **3.** any person having proper temporary custody of a **covered auto**.

## I. CONFORMITY TO LAW

The terms of this policy that conflict with the laws of the state for which this policy has been issued are amended to conform to those laws.

## J. LOSS PAYABLE CLAUSE

If a loss payee is shown in the Declarations, **we** may, at our option, pay any Comprehensive or Collision **loss** to one or more of the following:

    **1.** **You**.

    **2.** The owner of the **auto**.

    **3.** The repairer.

    **4.** Any other party who has an interest, title, or lien on the property.

Coverage for the loss payee's interest is only provided for a **loss** that is payable to **you**.

If **we** pay the loss payee for a **loss**, **we** are entitled to the loss payee's right of recovery to the extent of **our** payment. **Our** right of recovery shall not impair the loss payee's right to recover the full amount of its claim.

If this policy is terminated, **we** will provide coverage for the loss payee's interest until **we** notify the loss payee. Any coverage provided for the loss payee's interest will only be provided for a **loss** that would have been covered except for the termination.

## K. ADDITIONAL INSURED

If an additional insured is shown in the Declarations:

    **1.** Liability Coverage will be provided for the additional insured to the extent that the additional insured is an **insured** under the definitions of this policy;

    **2.** the additional insured shall have the same rights of recovery under Liability Coverage as if they were not an additional insured; and

    **3.** **we** will notify the additional insured if the policy coverages change or are terminated.

## L. TERMINATION

See State Provisions Endorsement

IN WITNESS WHEREOF, **we** have caused this policy to be signed by its President and its Secretary at Warwick, Rhode Island. In the event that the President or Secretary who signed this contract cease to be **our** officers either before or after the contract is issued, the contract may be issued with the same effect as if they were still **our** officers.

       Secretary                           President

# ENDORSEMENT AE70NM 0914

## NEW MEXICO
## STATE PROVISIONS ENDORSEMENT

A. Under **GENERAL POLICY CONDITIONS**, item **L. TERMINATION** is replaced by:

**L. TERMINATION**

   **1. CANCELLATION**

     **a. How You May Cancel. You** may cancel this policy by telling **us** on what future date **you** wish to stop coverage.

     **b. How We May Cancel. We** can cancel this policy by mailing notice to **you** at **your** last known address as shown on **our** records. The notice will state the date cancellation is effective. This notice will be mailed to **you**:

       **i.** at least 10 days prior to the effective date of cancellation if:

         **1)** the premium is not paid when due; or

         **2)** this policy:

           **a)** has been in effect less than 60 days at the time notice of cancellation is mailed; and

           **b)** is not a renewal or continuation policy.

       **ii.** at least 30 days prior to the effective date of cancellation in all other cases.

       If this policy has been in force for 60 days, or if this is a renewal policy, **we** may cancel only:

         **1)** if premium is not paid when due;

         **2)** for fraud or material misrepresentation in obtaining or continuing the policy;

         **3)** if **your** driver's license or that of:

           **a)** any driver who lives with **you**; or

           **b)** any driver who customarily uses the **covered auto**; has been suspended or revoked during the 12 months before the cancellation effective date. However, **we** will not cancel this policy if it is agreed to exclude coverage for the person who has had his or her license suspended or revoked.

         **4)** for any other reason permitted by law.

     **c. Cancellation Refund.** If **you** or **we** cancel this policy, any premium refund will be computed on a pro rata basis. Any premium refund will be rounded to the nearest dollar. If **you** are entitled to a refund it will be sent to **you**. However, **our** making or offering a refund is not a condition of cancellation.

   **2. NONRENEWAL**

   If **we** decide not to renew **your** policy as permitted by law, **we** will mail a notice to **you** at the last known address as shown on **our** records. The notice will be mailed at least 30 days before the end of the policy period.

   If **we** offer to renew this policy and **you** do not accept, this policy will automatically terminate at the end of the current policy period. **Your** failure to pay the required renewal premium when it is due will mean that **you** have not accepted **our** offer.

   **3. OTHER TERMINATION PROVISIONS**

     **a.** If **you** obtain other insurance on **your covered auto**, any similar insurance provided by this policy will automatically terminate as to that **covered auto** on the effective date of the other insurance.

     **b.** If the law in effect in **your** state at the time this policy is issued, renewed or continued:

       **i.** requires a longer notice period;

       **ii.** requires a special form of or procedure for giving notice; or

       **iii.** modifies any of the stated termination reasons,

     **we** will comply with the requirement.

# ENDORSEMENT AE70NM 0914

    **c.** **We** may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

    **d.** The effective date of cancellation or termination as stated in the notice shall become the end of the policy period. The notice will provide the date cancellation is effective.

All other policy terms and conditions apply.

# ENDORSEMENT AE9110 0513

## IDENTITY THEFT RESOLUTION

The following is added:

**MISCELLANEOUS**

**IDENTITY THEFT RESOLUTION**
**We** will provide, at **our** expense, a representative of **our** choice to assist **you,** and any **relatives** in resolving issues of unauthorized use of personal identity or credit information. The unauthorized use must be reported to us during the policy period. **Our** obligation under this provision is limited to paying for the services of a representative of **our** choice. No other limit of liability or deductible applies.

**Our** obligation terminates when the policy terminates for any reason.

All other policy terms and conditions apply.

# ENDORSEMENT AE9200 0513

## MEXICO COVERAGE - LIMITED

**WARNING**
**READ THIS ENDORSEMENT CAREFULLY**

Auto accidents in Mexico are subject to the laws of Mexico only – NOT the laws of the United States of America. Under Mexican law an auto accident may be considered a CRIMINAL OFFENSE as well as a civil matter.

In some cases, the coverage under this endorsement may NOT be recognized by Mexican authorities and we may not be allowed to implement this coverage at all in Mexico. You should consider purchasing auto coverage from a licensed Mexican Insurance Company before driving into Mexico.

This endorsement does not apply to trips into Mexico that exceed 25 miles from the boundary of the United States of America.

This insurance does not cover legal liability for bodily injury or property damage caused in Mexico.

Under **PHYSICAL DAMAGE COVERAGE**, the following are added:

A. Coverage extends to cover **losses** occurring in Mexico within 25 miles of the United States border. This extension applies only for infrequent trips into Mexico not exceeding 10 days at any one time.

B. Under **EXCLUSIONS**, the following are added:

> **We** will not pay for loss to a **covered auto** which is not principally garaged and used in the United States.

C. **SPECIAL CONDITIONS**

1. **Other Insurance**
The insurance provided by this endorsement is excess over any other collectible insurance.

2. **Losses Payable Under Physical Damage Coverage**
**We** will pay **losses** under this coverage in the United States but not in Mexico. If the **covered auto** must be repaired in Mexico in order to be driven, **we** will not pay more that the **actual cash value** of the **loss** at the nearest United States point where the repairs can be made.

All other policy terms and conditions apply.

## NEW MEXICO
## UNINSURED MOTORISTS COVERAGE ENDORSEMENT

### SCHEDULE

Name of Company: Refer to the Policy Declarations Page
Uninsured Motorists Coverage
Limit of Liability:  Bodily Injury          Refer to the Policy Declarations Page
                     Property Damage        Refer to the Policy Declarations Page


Vehicle Description and Premium            Refer to the Policy Declarations Page


The following is added:

### UNINSURED MOTORISTS COVERAGE

## ADDITIONAL DEFINITIONS FOR THIS COVERAGE

**A.** The following **GENERAL DEFINITIONS** are changed for this coverage only:

**INSURED** means:
1. **you** or any **relative**.
2. any other person **occupying your covered auto**.
3. any person for damages that person is entitled to recover because of **BI** to which this coverage applies sustained by a person in **1.** or **2.** above.

**B.** The following definitions are added for this coverage only:
**PROPERTY DAMAGE** (referred to as **"PD"**) means physical damage to destruction of or loss of use of an **insured's** tangible property.

**C.** The following definition is added for this coverage only:

**UNINSURED MOTOR VEHICLE** means:
1. a **motor vehicle** for which:
   **a.** no liability insurance policy or bond applies at the time of the accident.
   **b.** a liability insurance policy or bond is in effect at the time of the accident, but:
      **i.** the amount of coverage or the amount of the bond is less than the minimum financial security requirements specified by the state of New Mexico;
      **ii.** the company writing such policy or the company or individual writing such bond denies coverage, or which is, or becomes, insolvent.
2. a hit and run **motor vehicle** which causes an accident resulting in **BI** or **PD** arising out of physical contact or attempted physical contact of the **motor vehicle** with:
   **a.** **you** or a **relative**;
   **b.** a **motor vehicle** which **you** or a **relative** are **occupying** at the time of the accident; or
   **c.** property of the **insured**, including a **covered auto**, if:
      **i.** the identity of the driver and the owner of the hit and run **motor vehicle** is unknown;
      **ii.** the accident is reported within 24 hours to a state or local police officer, peace or judicial officer, or the Director of Motor Vehicles;
      **iii.** the injured person or someone on the injured person's behalf files with **us** within 30 days of the accident a statement under oath that the injured person or his or her legal representative has a cause of action due to the accident for damages against someone whose identity is unknown; and
      **iv.** the injured person or the injured person's legal representative makes available for inspection by **us**, when requested, the **motor vehicle occupied** by that person at the time of the accident.

The term **uninsured motor vehicle** does not include a **motor vehicle**:
1. owned by, leased to, regularly furnished or available for the use of **you** or any **relative**; However, this exception does not apply for damages sustained by **you** or any **relative** if liability coverage is excluded for such damages under this policy or any other policy.
2. owned or operated by a self-insurer as defined in the applicable **motor vehicle** law, financial responsibility law, motor carrier law or similar law; or
3. owned by a governmental unit or agency.
4. owned by a person who has purchased a surety bond as payment for loss on account of his or her legal liability for injury to or the death of people and damage to property arising out of the ownership, operation, or use of a **motor vehicle**.
5. any vehicle or equipment:
   a. operated on rails or crawler treads;
   b. while located for use as a residence or premises; or
   c. which is a farm type tractor or equipment designed for use principally off public roads, except when actually upon public roads.

**D.** The following definition is added for this coverage only:

**UNDERINSURED MOTOR VEHICLE** means a **motor vehicle** for which the sum of the limits of all bodily injury liability bonds or insurance policies applicable at the time of the accident is less than the sum of the limits of liability applicable to the injured person for Uninsured Motorists Coverage under this policy and any other policy(ies).

The term **underinsured motor vehicle** does not include a **motor vehicle**:
1. owned by, leased to, regularly furnished or available for the use of **you** or any **relative**; However, this exception does not apply for damages sustained by **you** or any **relative** if the sum of the limits of liability under all bodily injury liability bonds or policies applicable at the time of the accident is less than the sum of the limits of liability for Uninsured Motorists Coverage under this policy and any other policy(ies).
2. owned or operated by a self-insurer as defined in the applicable **motor vehicle** law; or
3. owned by a governmental unit or agency: or
4. any vehicle or equipment:
   a. operated on rails or crawler treads;
   b. while located for use as a residence or premises; or
   c. which is a farm type tractor or equipment designed for use principally off public roads, except when actually upon public roads
5. which has a liability bond or insurance policy in effect at the time of the accident, but the company writing such bond or policy:
   a. denies coverage; or
   b. is or becomes insolvent.

## INSURING AGREEMENT

In consideration of the payment of the premium for this endorsement and subject to all of the terms of this endorsement, the company agrees with the named insured as to the insuring agreement in 13.12.3.13 through 13.12.3.17 NMAC.

This coverage is provided only if it is indicated in the Declarations.

**We** will pay compensatory damages which an **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** for **BI** or **PD**:
A. sustained by an **insured**; and
B. caused by an accident arising out of owning, maintaining, or the use of an **uninsured motor vehicle**.

## EXCLUSIONS

A. **We** do not cover any person or property **occupying** or struck by a **motor vehicle** owned by

**you** or a **relative**, other than a **covered auto**.

**B.** **We** do not cover any person who settles a **BI** or **PD** claim with any liable party and the settlement is without **our** consent.

**C.** **We** do not cover any claim which would benefit directly or indirectly any insurer or self-insurer under any workers' compensation, disability benefits, or similar law.

**D.** **We** do not cover **BI** or **PD** sustained while a **covered auto** is:
    **1.** rented to any person or organization in any fashion; or
    **2.** leased to any person or organization in any fashion.
This exclusion does not apply:
    **1.** while the **auto** is rented or leased to or for **your** or a **relative's** use;
    **2.** while the **auto** is used in a shared expense car pool; or
    **3.** while the **auto** is being used for volunteer or charitable purposes for which reimbursement for normal operating expenses may be paid to **you** or a **relative**.

**E.** **We** do not cover **BI** or **PD** sustained while a **covered auto** is being used to carry persons for a charge. This exclusion does not apply while the **auto**:
    **1.** is used in a shared expense car pool; or
    **2.** is being used for volunteer or charitable purposes for which reimbursement for normal operating expenses may be paid to **you** or a **relative**.

**F.** **We** do not cover **BI** or **PD** awards or judgments designated as punitive, exemplary, statutory multiple, or delay damages or awards when the tortfeasor is deceased.

**G.** **We** do not cover a **relative** who owns, leases or has available for his or her regular use, an **auto** which is insured for uninsured motorists coverage on a primary basis under any other policy.

**H.** **We** do not cover any person using a **motor vehicle** without a reasonable belief he or she is entitled to do so. This exclusion does not apply to **you** or a **relative** using a **covered auto**.

**I.** **We** do not cover any claim which would benefit any insurer of any property.

**J.** **We** do not cover any actual or perceived decrease in market value, diminished value, or resale value resulting from **PD**.

**K.** **We** do not cover **PD** for which the person making a claim has been or is entitled to be compensated by other property or physical damage insurance.

**L.** **We** do not cover the first $250 of the amount of **PD** to the property of each **insured** as the result of any one accident.

**M.** any claim for **BI** or **PD** due to or resulting from an accident which occurred before the effective date of this coverage or outside the United States of America, its territories or possessions, or Canada.

## LIMIT OF LIABILITY

**A.** If **BI** is sustained by **you** or any **relative**:

The maximum amount **we** will pay for all damages, including damages for care, loss of consortium, emotional distress, loss of services, death, or prejudgment interest arising out of **BI** sustained by any one person as the result of any one accident is the limit of liability shown in the Schedule or in the Declarations for "each person" for Uninsured Motorists Bodily Injury Coverage multiplied by the number of **covered auto** shown in the Schedule or in the Declarations. Subject to this limit for "each person", the maximum amount **we** will pay to all people for all damages, including damages for care, loss of consortium, emotional distress, loss of services, death, or prejudgment interest arising out of **BI** sustained by two or more people resulting from any one accident is the limit of liability shown in the Schedule or in the Declarations for "each accident" for Uninsured Motorists Bodily Injury Coverage multiplied by the number of **covered autos** shown in the Schedule or in the Declarations.

However, if the Schedule or the Declarations indicates Non-Stacked Uninsured Motorists Coverage limits, then the maximum amount **we** will pay for all damages, including damages for care, loss of consortium, emotional distress, loss of services, death, or prejudgment interest arising out of **BI** sustained by any one person as the result of any one accident is the limit of liability shown in the Schedule or in the Declarations for "each person" for Uninsured Motorists Bodily Injury Coverage. Subject to this limit for "each person", the maximum amount **we** will pay to all people for all damages, including damages for care, loss of consortium, emotional distress, loss of services, death, or prejudgment interest arising out of **BI** sustained by two or more people

resulting from any one accident is the limit of liability shown in the Schedule or in the Declarations for "each accident" for Uninsured Motorists Bodily Injury Coverage.

This is the most **we** will pay regardless of the number of:
1. **insureds**;
2. claims made;
3. vehicles shown in the Declarations;
4. premiums shown in the Declarations; or
5. vehicles involved in the accident.

**B.** If **BI** is sustained by any person other than **you** or any **relative**:

The maximum amount **we** will pay for all damages, including damages for care, loss of consortium, emotional distress, loss of services, death, or prejudgment or post judgment interest arising out of bodily injury sustained by any one person as the result of any one accident is the limit of liability shown in the Schedule or in the Declarations for each person for Uninsured Motorists Bodily Injury Coverage. Subject to this limit for each person, the maximum amount **we** will pay to all people for all damages, including damages for care, loss of consortium, emotional distress, loss of services, death, or prejudgment interest arising out of bodily injury sustained by two or more people resulting from any one accident is the limit of liability shown in the Schedule or in the Declarations for each accident for Uninsured Motorists Bodily Injury Coverage.

This is the most **we** will pay regardless of the number of:
1. **insureds**;
2. claims made;
3. vehicles shown in the Declarations;
4. premiums shown in the Declarations; or
5. vehicles involved in the accident.

**C.** The maximum amount **we** will pay for all damages, including prejudgment and post judgment interest, arising out of **PD** as a result of any one accident is the limit of liability shown in the Declarations for Uninsured Motorists Property Damage.

This is the most **we** will pay regardless of the number of:
1. **insureds**;
2. claims made;
3. vehicles shown in the Declarations;
4. premiums shown in the Declarations; or
5. vehicles involved in the accident.

**D.** With respect to damages caused by an accident with an **underinsured motor vehicle**, the limit of liability shall be reduced by all sums paid because of **BI** by or on behalf of people or organizations who may be legally responsible. This includes all sums paid under the **LIABILITY COVERAGE** section of this policy or any other insurance policy.

**E.** No person is entitled to receive duplicate payments for the same elements of **loss** under this endorsement and any amount paid by or on behalf of any liable parties.

## SETTLEMENT
Whether any person is legally entitled to collect damages under this section, and the amount to which such person is entitled, will be determined by agreement between that person and **us**.

If a person seeking coverage files a suit against the owner or operator of the **uninsured motor vehicle**, copies of suit papers must be forwarded to **us**. **We** have the right to defend on the issues of the:
**A.** legal liability of; and
**B.** the damages owed by,
the owner or operator.

# ENDORSEMENT AE40NM 0914

**We** are not bound by any judgment, settlement or agreement against any person or organization obtained without **our** consent.

**We** may pay any amount due to one or more of the following:
- **A.** the **insured**;
- **B.** a parent or guardian, if the **insured** is a minor;
- **C.** the surviving spouse, civil union partner or other similar union;
- **D.** the person authorized by law to receive such payment; or
- **E.** the person entitled by law to recover the damages, which the payment represents.

## OTHER INSURANCE
If there is other similar insurance, **we** will pay only **our** fair share. The total amount of recovery under all policies will be limited to the highest of the applicable limits of liability of this insurance and such other insurance.

**Our** fair share is the proportion that **our** limit bears to the total of all applicable limits. However, any insurance **we** provide with respect to a vehicle.
- **A.** not owned by **you** or any **relative**, including any vehicle while used as a substitute automobile; or
- **B.** owned by **you** or any **relative** which is not insured for this coverage under this policy;

shall be excess over any other collectible similar insurance. With respect to **PD**, this insurance will be excess over any other similar insurance available for **PD**. No payments will be made until the limits of all other liability insurance and bonds that apply have been exhausted by payments.

## ADDITIONAL DUTIES AFTER A LOSS
All **insureds** must cooperate with **us** in investigating an accident.

**We** may require the **insured** to take appropriate action to preserve the **insured's** right to recover damages from any other person responsible for the accident, **BI** or **PD**. In any lawsuit against **us**, **we** may require the **insured** to join the responsible person as a defendant.

An **insured** must report an accident involving an **uninsured motor vehicle** within 24 hours to law enforcement authorities.

## CONFORMITY OF STATE STATUTES
If any provisions of this coverage are in conflict with the statutes of the State of New Mexico, those provisions are amended to conform to the minimum requirements of the statutes.

All other policy terms and conditions apply.

# ENDORSEMENT AE5300 0513

## SAFETY GLASS DEDUCTIBLE BUYBACK ENDORSEMENT

**A.** Under **GENERAL DEFINITIONS,** the following is added:

**SAFETY GLASS** means the glass, plastic or other material used in the windshield and windows of an **auto.**

**B.** Under **PHYSICAL DAMAGE COVERAGE, DEDUCTIBLE,** the following is added:

"Glass Deductible Buyback" applies to a **covered auto** when shown in the Declarations. No **deductible** will apply for **loss** to that **covered auto** when the only payment is for the repair or replacement of damaged **safety glass.**

All other policy terms and conditions apply.

**MetLife Auto & Home®**
Dayton Customer Service Center
9797 Springboro Pike, Dayton, Ohio 45448

# Exhibit 3

This is to certify that the attached declarations page is a true and accurate representation of the declarations page for the insurance policy described below:

Named Insured(s):    MARGARET CHRISTINE
Policy Type:    Auto
Policy Number:    1352605930
Issuing Insurance Company:    Metropolitan Direct Property and Casualty Insurance Company
As of Date:    02/07/2018

Signed by: _Dave Walker_

_____

Notary: _Patricia L Massie_

_____

Date: 2/10/2021



PATRICIA L MASSIE
NOTARY PUBLIC · OHIO
MY COMMISSION EXPIRES 03-26-24

MetLife® Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its Affiliates, Warwick, RI

MPL9192-078                                                                                    Printed in U.S.A. 1105

**Metropolitan Direct Property and Casualty Insurance Company**
**Automobile Insurance Declarations**

01/30/2018
ST 30

| | |
|---|---|
| **Policy Number: 1352605930**<br>**Policy Effective Date: 02/07/2018**<br>**Policy Expiration Date: 02/07/2019**<br>**At: 12:01 A.M. Standard Time** | **Page 1 of 2**<br><br>**New Policy Effective Date: 02/07/2018** |
| **Named Insured:**<br>MARGARET CHRISTINE<br>633 ADAMS ST NE UNIT C<br>ALBUQUERQUE NM 87110 | You have selected our Payroll Deduction Plan. Your premium includes the Payroll Deduction Discount. |

## Insured Vehicle(s)

| Veh | Year | Make | Model | Body Type | Vehicle ID Number | Com/Col Sym | Terr |
|---|---|---|---|---|---|---|---|
| 1 | 2006 | CHEVROLET | MALIBU | SEDAN | 1G1ZU53806F209036 | 21/25 | 15 |

| Coverage Description | Applicable Limits | | Annual Premiums |
|---|---|---|---|
| | | **2006**<br>**CHEVR** | |
| **Liability** | | | |
| Bodily Injury | $ | 25,000 Each Person/ | |
| | $ | 50,000 Each Accident | 346 |
| Property Damage | $ | 25,000 Each Accident | 248 |
| **Physical Damage** | **2006**<br>**CHEVR** | | |
| Actual Cash Value (ACV) or Limit | ACV | | |
| Collision Less Deductible | $ 300 | | 498 |
| Comprehensive Less Deductible | $ 250 | | 232 |
| Towing and Labor Limit | $ 50 | | Incl |
| **Optional Coverages** | | | |
| Substitute Transportation | $ 25 Day/$ 750 Accident | | 70 |
| Glass Deductible Buyback | | | Incl |
| | **Vehicle Totals:** | 1394 | |
| | **Total For All Vehicles:** | | 1,394 |
| **Uninsured/Underinsured Motorists** | | | |
| Bodily Injury | $ | 25,000 Each Person/ | |
| | $ | 50,000 Each Accident | 80 |
| Property Damage | $ | 20,000 Each Accident | 56 |
| | **Total Annual Premium:** | | 1,530 |

---

**Forms and Endorsements:**   AP6000 0513   AP6100 0513   AE70NM 0914   AE9110 0513
AE9200 0513   AE40NM 0914   AE5300 0513

---

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its affiliates, Warwick, RI.

MPL 1380-000

Printed in U.S.A. 0298

| Policy Number: 1352605930 Policy Effective Date: 02/07/2018 Policy Expiration Date: 02/07/2019 At: 12:01 A.M. Standard Time | Page 2 of 2 New Policy Effective Date: 02/07/2018 |
|---|---|

## Discounts

The following have been included in the total annual premium:

    MetRewards Discount
    Anti-lock Brake Discount applies to 2006 CHEVR
    Payroll Discount
    Auto Policy Plus, including
        Homeowners
        Individual Life / Annuity
    A Special Group Rate applies
    Welcome Discount

-------------------------------------------------------------------------

## Rating Information

### Household Drivers:

12/08/1973  MARGARET  CHRISTINE        Divorced
           Licensed 27 Years

**IF YOU HAVE A DRIVER IN YOUR HOUSEHOLD WHO IS NOT LISTED ABOVE, PLEASE NOTIFY US IMMEDIATELY.**

-------------------------------------------------------------------------

## Interested Parties

2006 CHEVROLET   Lien/Loss Payee:   JD BYRIDER
                             6008 CENTRAL AVE SE       ALBUQUERQUE    NM87108

-------------------------------------------------------------------------

For service or claims, see the Customer
Service and Claim Directory located on
the back of your cover page.

               319 - AVC - 1

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its affiliates, Warwick, RI.

**MetLife Auto & Home®**
Dayton Customer Service Center
9797 Springboro Pike, Dayton, Ohio 45448

This is to certify that the attached declarations page is a true and accurate representation of the declarations page for the insurance policy described below:

Named Insured(s): MARGARET CHRISTINE
Policy Type: Auto
Policy Number: 1352605930
Issuing Insurance Company: Metropolitan Direct Property and Casualty Insurance Company
As of Date: 02/07/2019

Signed by: _Dave Walker_

Notary: _Patricia L Massie_

Date: 2/10/2021



PATRICIA L MASSIE
NOTARY PUBLIC — OHIO
MY COMMISSION EXPIRES 03-25-24

MetLife® Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its Affiliates, Warwick, RI

MPL9192-078                                                                                    Printed in U.S.A. 1105

| | |
|---|---|
| Policy Number: 1352605930<br>Policy Effective Date: 02/07/2019<br>Policy Expiration Date: 02/07/2020<br>At: 12:01 A.M. Standard Time | Page 1 of 2<br><br>Renewal Effective Date: 02/07/2019 |
| Named Insured:<br>MARGARET CHRISTINE<br>633 ADAMS ST NE UNIT C<br>ALBUQUERQUE NM 87110 | You Have Selected ExpressIT. Your premium payments will be reflected in the monthly statement from your bank. |

### Insured Vehicle(s)

| Veh | Year | Make | Model | Body Type | Vehicle ID Number | Com/Col Sym | Terr |
|---|---|---|---|---|---|---|---|
| 1 | 2018 | HYUNDAI | ELANTRA | SEDAN | 5NPD84LF1JH311216 | 25/15 | 15 |

| Coverage Description | Applicable Limits | | Annual Premiums |
|---|---|---|---|
| | | **2018<br>HYUND** | |
| **Liability** | | | |
| Bodily Injury | $ 25,000 Each Person/ | | |
| | $ 50,000 Each Accident | | 402 |
| Property Damage | $ 25,000 Each Accident | | 330 |
| **Physical Damage** | | **2018<br>HYUND** | |
| Actual Cash Value (ACV) or Limit | ACV | | |
| Collision Less Deductible | $ 300 | | 848 |
| Comprehensive Less Deductible | $ 250 | | 554 |
| Towing and Labor Limit | $ 50 | | Incl |
| **Optional Coverages** | | | |
| Substitute Transportation | $ 25 Day/$ 750 Accident | | 70 |
| Glass Deductible Buyback | | | Incl |
| | **Vehicle Totals:** | **2204** | |
| | **Total For All Vehicles:** | | **2,204** |
| **Uninsured/Underinsured Motorists** | | | |
| Bodily Injury | $ 25,000 Each Person/ | | |
| | $ 50,000 Each Accident | | 104 |
| Property Damage | $ 15,000 Each Accident | | 64 |
| | **Total Annual Premium:** | | **2,372** |

---

**Deductible Savings Benefit (DSB) $     0**

Deductible Savings reduces Collision or Comprehensive deductibles, excluding towing and glass claims, effective 02/07/2019 for claims occurring after this date. Your next anniversary date is 02/07/2020.

---

**Forms and Endorsements:**     AP6000 0513     AP6100 0513     AE70NM 0914     AE9110 0513
AE9200 0513     AE40NM 0914     AE5300 0513

---

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its affiliates, Warwick, RI.

| Policy Number: 1352605930 | |
| --- | --- |
| Policy Effective Date: 02/07/2019 | **Page 2 of 2** |
| Policy Expiration Date: 02/07/2020 | |
| At: 12:01 A.M. Standard Time | **Renewal Effective Date: 02/07/2019** |

**Discounts**

The following have been included in the total annual premium:

MetRewards Discount
Anti-lock Brake Discount applies to 2018 HYUND
ExpressIT Discount
Auto Policy Plus, including
      Homeowners
       Individual Life / Annuity
A Special Group Rate applies
Welcome Discount

------------------------------------------------------------------------------------

**Rating Information**

**Household Drivers:**

| 12/08/1973 | MARGARET CHRISTINE | Divorced |
| --- | --- | --- |
| | Licensed 28 Years | |

**IF YOU HAVE A DRIVER IN YOUR HOUSEHOLD WHO IS NOT LISTED ABOVE, PLEASE NOTIFY US IMMEDIATELY.**

------------------------------------------------------------------------------------

For service or claims, see the Customer
Service and Claim Directory located on
the back of your cover page.

                         319 - AVC - 9

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its affiliates, Warwick, RI.

| Policy Number: 1352605930 | |
|---|---|
| Policy Effective Date: 02/07/2019 | Page 2 of 2 |
| Policy Expiration Date: 02/07/2020 | Change 03 |
| At: 12:01 A.M. Standard Time | Policy Change Effective Date: 04/29/2019 |

### Discounts

The following have been included in the total annual premium:

    MetRewards Discount
    Anti-lock Brake Discount applies to 2018 HYUND
    ExpressIT Discount
    Auto Policy Plus, including
        Homeowners
        Individual Life / Annuity
    A Special Group Rate applies
    Welcome Discount

### Rating Information

### Household Drivers:

12/08/1973   MARGARET  VEGA                     Married
             Licensed 28 Years

**IF YOU HAVE A DRIVER IN YOUR HOUSEHOLD WHO IS NOT LISTED ABOVE, PLEASE NOTIFY US IMMEDIATELY.**

### Updated Policy Information

ExpressIt Discount Added                     Billing Payment Plan Changed

For service or claims, see the Customer
Service and Claim Directory located on
the back of your cover page.                     319 - AVC - 9

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its affiliates. Warwick, RI.

**MetLife Auto & Home®**
Dayton Customer Service Center
9797 Springboro Pike, Dayton, Ohio 45448

This is to certify that the attached declarations page is a true and accurate representation
of the declarations page for the insurance policy described below:

| | |
|---|---|
| Named Insured(s): | MARGARET VEGA |
| Policy Type: | Auto |
| Policy Number: | 1352605930 |
| Issuing Insurance Company: | Metropolitan Direct Property and Casualty Insurance Company |
| As of Date: | 02/07/2020 |

Signed by: 

Notary: 

Date:  2/10/2021



PATRICIA L MASSIE
NOTARY PUBLIC · OHIO
MY COMMISSION EXPIRES 03-26-24

MetLife® Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its Affiliates, Warwick, RI

**Metropolitan Direct Property and Casualty Insurance Company**
**Automobile Insurance Declarations**

01/09/2020
ST 30

| | |
|---|---|
| **Policy Number:** 1352605930<br>**Policy Effective Date:** 02/07/2020<br>**Policy Expiration Date:** 02/07/2021<br>**At: 12:01 A.M. Standard Time** | **Page 1 of 2**<br>**Change 01**<br><br>**Policy Change Effective Date: 02/07/2020** |
| **Named Insured:**<br>MARGARET VEGA<br>633 ADAMS ST NE UNIT C<br>ALBUQUERQUE NM 87110 | You Have Selected ExpressIT. Your premium payments will be reflected in the monthly statement from your bank. |

### Insured Vehicle(s)

| Veh | Year | Make | Model | Body Type | Vehicle ID Number | Com/Col Sym | Terr |
|---|---|---|---|---|---|---|---|
| 1 | 2018 | FORD | ECOSPOR | SUV | MAJ3P1VE5JC203376 | 14/14 | 15 |

| Coverage Description | Applicable Limits | | Annual Premiums |
|---|---|---|---|
| | | **2018 FORD** | |
| **Liability** | | | |
| Bodily Injury | $ 25,000 Each Person/ | | |
| | $ 50,000 Each Accident | 262 | |
| Property Damage | $ 25,000 Each Accident | 270 | |
| **Physical Damage** | | **2018 FORD** | |
| Actual Cash Value (ACV) or Limit | ACV | | |
| Collision Less Deductible | $ 300 | 636 | |
| Comprehensive Less Deductible | $ 250 | 280 | |
| Towing and Labor Limit | $ 50 | Incl | |
| **Optional Coverages** | | | |
| Substitute Transportation | $ 25 Day/$ 750 Accident | 70 | |
| Glass Deductible Buyback | | Incl | |
| | **Vehicle Totals:** | 1518 | |
| | **Total For All Vehicles:** | | 1,518 |
| **Uninsured/Underinsured Motorists** | | | |
| Bodily Injury | $ 25,000 Each Person/ | | |
| | $ 50,000 Each Accident | 86 | |
| Property Damage | $ 15,000 Each Accident | 54 | |
| | **Total Annual Premium:** | | 1,658 |

Prior Annual Premium: $ 2,074.00
Change in premium from 02/07/2020 through 02/07/2021: $ 416-
This change to your policy is effective back to 01/02/2020
Change in premium from 01/02/2020 through 02/07/2020: $ 40-

This Declarations does not supersede any cancellation notices.

---

**Deductible Savings Benefit (DSB) $ 0**

Deductible Savings reduces Collision or Comprehensive deductibles, excluding towing and glass claims, effective 01/09/2020 for claims occurring after this date. Your next anniversary date is 02/07/2021.

---

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its affiliates, Warwick, RI.

MPL 1380-000

Printed in U.S.A. 0298

| | |
|---|---|
| **Policy Number: 1352605930**<br>**Policy Effective Date: 02/07/2020**<br>**Policy Expiration Date: 02/07/2021**<br>   **At: 12:01 A.M. Standard Time** | **Page 2 of 2**<br>**Change 01**<br><br>**Policy Change Effective Date: 02/07/2020** |

**Forms and Endorsements:**        AP6000 0513      AP6100 0513    AE70NM 1119    AE9110 0513
   AE9200 0513      AE40NM 0914      AE5300 0513

-------------------------------------------------------------------------------

## Discounts

The following have been included in the total annual premium:

   MetRewards Discount
   Anti-lock Brake Discount applies to 2018 FORD
   ExpressIT Discount
   Auto Policy Plus, including
         Homeowners
            Individual Life / Annuity
   A Special Group Rate applies

-------------------------------------------------------------------------------

## Rating Information

**Household Drivers:**

12/08/1973   MARGARET  VEGA                    Married
            Licensed 29 Years

**IF YOU HAVE A DRIVER IN YOUR HOUSEHOLD WHO IS NOT LISTED ABOVE, PLEASE NOTIFY US IMMEDIATELY.**

-------------------------------------------------------------------------------

## Interested Parties

2018 FORD        Lien/Loss Payee:      WESTLAKE FINANCIAL SE
                                       PO BOX 997952              SACRAMENTO        CA 95899

-------------------------------------------------------------------------------

## Updated Policy Information

Driver Removed From Policy

-------------------------------------------------------------------------------

For service or claims, see the Customer
Service and Claim Directory located on
the back of your cover page.                    319 - AVC - 9

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its affiliates, Warwick, RI.

# Exhibit 4



November 30, 2020

Law Office Of Adam Oakley
P.O. Box 70483
Albuquerque, NM 87197

| | |
|---|---|
| Our Customer: | Margaret Vega |
| Our Claim Number: | SLN12024 D2 |
| Policy Number: | 0593 |
| Date of Loss: | August 25, 2019 |
| Your Client: | Margaret Vega |

Dear Maier:

We received your emailed dated 11/30/2020 and based upon our investigation and information that has been provided to us at this time, there appears to be no evidence to support an uninsured or underinsured motorist claim due to offsetting limits of $25,000. Per your email, GEICO their liability limits of $25,0000 and our insured's UM/UIM limits are $25,000; therefore, after the reduction/offset of the tort carrier's limits there isn't any UIM potential.

If you have additional evidence or other supporting documentation to suggest otherwise please send to our office immediately and we will be happy to review.

At this time, we are closing our claim and will take no further action. Please do not hesitate to contact us with any additional supports or information for further consideration.

Sincerely,

Jacob Martinez
Metropolitan Direct Property and Casualty Insurance Company
Senior Claim Adjuster
(800) 854-6011 Ext. 5520
Fax: (866) 947-0184
Email: Metlifeimaging@metlife.com

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its Affiliates, Warwick, RI

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.



# EXHIBIT B-3

**FILED**
**2ND JUDICIAL DISTRICT COURT**
**Bernalillo County**
**2/13/2021 2:51 PM**
**CLERK OF THE COURT**
**Catherine Chavez**

**STATE OF NEW MEXICO**
**COUNTY OF BERNALILLO**
**SECOND JUDICIAL DISTRICT COURT**

MARGARET VEGA, individually and on behalf
of other similarly situated individuals,

     Plaintiff,

         v.

**METROPOLITAN DIRECT PROPERTY**
**AND CASUALTY INSURANCE**
**COMPANY,**

     Defendant.

No.   D-202-CV-2021-01096

## PLAINTIFF'S CERTIFICATION
## REGARDING ARBITRATION UNDER LOCAL RULE 2-603

We, Kedar Bhasker and Corbin Hildebrandt, attorneys for Plaintiff, certify that:

_____      This case **is** subject to referral to arbitration under Local Rule 2-603. No party

seeks relief other than a money judgment and no party seeks an award in excess of $25,000

inclusive of punitive damages and exclusive of interest, costs and attorneys' fees.

_X_      This case **is not** subject to referral to arbitration under Local Rule 2-603 because

at least one party seeks relief other than a money judgment and/or at least one party seeks an

award in excess of $25,000 inclusive of punitive damages and exclusive of interest, costs and

attorneys' fees.

                Electronically filed,

                _/s/ Kedar Bhasker_
                Kedar Bhasker
                BHASKER LAW
                1400 Central Ave. SE, Suite 2000
                Albuquerque, NM 87106
                Phone: 505 720-2113

Fax: 505 998-6628
Kedar@bhaskerlaw.com

and

Corbin Hildebrandt
CORBIN HILDEBRANDT P.C.
Attorney for Plaintiff
1400 Central Ave. SE, Suite 2000
Albuquerque, NM 87106
Phone: 505 998-6626
Fax: 505 998-6628
corbin@hildebrandtlawnm.com

*Counsel for the Plaintiffs*

# EXHIBIT B-4

**STATE OF NEW MEXICO**
**BERNALILLO COUNTY**
**SECOND JUDICIAL DISTRICT COURT**

**FILED**
**2ND JUDICIAL DISTRICT COURT**
**Bernalillo County**
**12/28/2021 10:03 AM**
**CLERK OF THE COURT**
**Andrea I Gutierrez**

Margaret Vega v. Metropolitan Direct Property and Casualty
Insurance Company

No. D-202-CV-2021-01096

## DISPOSITION ORDER FOR LACK OF PROSECUTION

THIS MATTER having come before the Court on its own motion, it appearing that no significant action has been taken in 180 or more days in connection with any and all pending claims,

IT IS THEREFORE ORDERED that all pending claims are dismissed without prejudice. Within thirty (30) days after service of this order, any party may move for reinstatement. If other parties have filed an appearance, movant shall comply with Rule 1-007.1 NMRA. Failure to comply with these requirements will result in the denial of the motion without hearing.

IT IS FURTHER ORDERED that all writs, judgments, final orders, or stipulations previously filed herein shall remain in full force and effect unless otherwise ordered.

THE HONORABLE BENJAMIN CHAVEZ
DISTRICT JUDGE

## CERTIFICATE OF SERVICE

I, the undersigned Employee of the District Court of Bernalillo County, New Mexico, do hereby certify that I mailed and/or e-filed this document to all parties listed below and on the service contact list on date of filing.

Kedar Bhasker

Law Office of Kedar Bhasker, 1400 Central Avenue, S.E., Suite 2000
Albuquerque, NM, 87106

Margaret Christine

633 Adams St. NE Unit C
Albuquerque, NM 87110

**DOROTHY REYES**

By: _____
   Dorothy Reyes
   Bailiff

# EXHIBIT B-5

FILED
2ND JUDICIAL DISTRICT COURT
Bernalillo County
1/20/2022 3:11 PM
CLERK OF THE COURT
Patsy Baca

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT COURT

No. D-202-CV-2021-01096

MARGARET VEGA, individually and on behalf of
other similarly situated individuals,

     Plaintiff,

v.

METROPOLITAN DIRECT PROPERTY AND
CASUALTY INSURANCE COMPANY,

     Defendant.

## PLAINTIFF'S MOTION TO REINSTATE CASE

COMES NOW, Plaintiffs, by and through their counsel of record, Law Office of Kedar

Bhasker, LLC (Kedar Bhasker, Esq.) and and Corbin Hildebrandt, P.C. (Corbin Hildebrandt) for

their Motion to Reinstate Case, states as follows:

1.     Plaintiff requests the Court to reinstate this case because the New Mexico

Supreme Court recently issued an opinion on October 4, 2021 in a similar class action where

Judge Herrera certified a question of law. *See* S-1-SC-37478 *Crutcher v. Liberty Mutual*

*Insurance Company et. al. and* 1:18-cv-00412-JCH-LF *Crutcher v. Liberty Mutual Insurance*

*Company et al.*.

2.     Defendants have not been served in this matter.

3.     Therefore, Plaintiff requests this matter remain open so that Plaintiff may proceed

with her claims against Defendants now that there has been an answer to the certified question in

*Crutcher*.

WHEREFORE, Plaintiff respectfully request the Court Order this matter reinstated.

Respectfully submitted,

<u>/s/ *Kedar Bhasker*</u>
KEDAR BHASKER
*Attorney for Plaintiffs*
1400 Central Ave. SE, Suite 2000
Albuquerque, NM 87106
Phone: 505 720-2113
Kedar@bhaskerlaw.com

# EXHIBIT B-6

**FILED**
**2ND JUDICIAL DISTRICT COURT**
**Bernalillo County**
**7/15/2022 12:13 PM**
**CLERK OF THE COURT**
**Andrea I Gutierrez**

**STATE OF NEW MEXICO**
**COUNTY OF BERNALILLO**
**SECOND JUDICIAL DISTRICT COURT**

MARGARET VEGA individually and on behalf of
other similarly situated individuals,

      Plaintiff,

v.

METROPOLITAN DIRECT PROPERTY AND CASUALTY
INSURANCE COMPANY,

      Defendant.

No. D-202-CV-2021-01096

## FIRST AMENDED CLASS ACTION COMPLAINT

1.     Plaintiff Margaret Vega, for herself and on behalf of the Class and Subclass defined herein, brings this First Amended Class Action Complaint under Rule 1-023 NMRA to recover damages from Metropolitan Direct Property and Casualty Insurance Company ("MetLife"), and states as follows:

### JURISDICTION AND VENUE

2.     This Court has jurisdiction under Article VI, Section 13 of the New Mexico Constitution.

3.     Venue is proper under NMSA 1978, § 38-3-1(B).

### PARTIES

4.     Plaintiff Margaret Vega is, and was at all material times, a resident of Bernalillo County, New Mexico.

5.     Defendant MetLife is a foreign for-profit corporation conducting business, including the sales and solicitations for the sales of insurance policies, throughout the State of

New Mexico. Process is properly served on it via its registered agent, the Office of Superintendent of Insurance.

## FACTUAL ALLEGATIONS

**Vega purchased an underinsured motorist policy from MetLife.**

6. On March 27, 2018 MetLife issued Vega a motor vehicle insurance policy, which she had applied for and purchased. *See* **Exhibit 1**, Vega UM/UIM selection/rejection form.

7. MetLife issued the insurance policy and provided her with a declarations page. See **Exhibit 2**, Vega Declaration pages.

8. The policy that MetLife issued and which was in effect at the time of Vega's loss was Policy No. 1352605930, effective from February 7, 2018 to February 7, 2019 ("Vega Policy"). *Id.*

9. The Vega Policy provided liability coverage on one vehicle in the amount of $25,000 per person/$50,000 per occurrence. *Id.*

10. The Vega Policy also purportedly provided uninsured and underinsured motorist coverage in the amount of up to $25,000.00 per person/$50,000.00 per occurrence. *Id.*

11. MetLife collected a premium of $136 for the uninsured and underinsured motorist coverage that MetLife purportedly offered for the twelve months from February 7, 2018 to February 7, 2019. *Id.*

12. MetLife collected from Vega premiums for uninsured and underinsured motorist coverage that it purportedly sold her since 2018.

**MetLife's systematic application process, declarations, UM/UIM information and selection forms, and policy are ambiguous and misrepresented the true value of underinsured motorist coverage and failed to properly and adequately disclose to Vega that the underinsured motorist coverage for which Defendant collected a premium was illusory and misleading.**

13.     Defendants' boilerplate forms which should allow insureds to select or reject Uninsured and Underinsured Motorists Coverage do not adequately disclose "Underinsured Motorist". See **Exhibit 1 and 2.**

14.     Defendants' boilerplate forms which allow insureds to select or reject Uninsured and Underinsured Motorists Coverage are ambiguous and do not in any manner refer to the New Mexico statute, NMSA § 66-5-301(B). Id.

15.     Defendant's application, pursuant to NMSA § 66-5-301(C), should provide adequate disclosures so that a meaningful offer is made and an insured is able to make a knowing and intelligent choice of UM/UIM coverage. Defendants have not provided the application that was used.

16.     Defendant's boilerplate forms and ambiguous policy definitions failed to properly inform Ms. Vega about the offset described in *Schmick v. State Farm Mutual Automobile Insurance Company*, 704 P.2d 1092 (1985) ("the *Schmick* offset") and did not meet him reasonable expectations of being properly insured in the event he sustained significant injuries. See *Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, ¶ 2, 501 P.3d 433, 434. "We conclude that this type of policy is illusory in that it may mislead minimum UM/UIM policyholders to believe that they will receive underinsured motorist benefits, when in reality they may never receive such a benefit." See **Exhibit 3**, Auto Insurance Policy.

17.     Nothing in Defendant's boilerplate forms advise an insured that they will never

receive the full amount of underinsured motorist coverage for which they have contracted. Id.

18. When Ms. Vega purchased automobile coverage, Defendant did not properly inform her of how underinsured motorist coverage is illusory in the event of a covered occurrence involving an underinsured driver.

19. Defendant failed to properly inform Ms. Vega that she and her insured beneficiaries would most likely not be afforded the full UIM benefits from paying a premium for underinsured motorist coverage because, pursuant to the *Schmick* offset, Ms. Vega's and insured beneficiaries' recovery of underinsured motorist benefits would be offset by the amount of the tortfeasor's liability coverage. See *Id.*, ¶ 26. "We refuse to impose on the insured the obligation to be aware of and understand the consequences of New Mexico's UM/UIM statutory provisions, much less the offset rule derived by its technical language."

20. When Ms. Vega purchased automobile coverage, Defendant did not properly inform her of how underinsured motorist coverage is illusory and/or misleading in the event of a covered occurrence involving an underinsured driver.

21. Defendant's forms did not contain clear, unambiguous language regarding the effects of the *Schmick* offset.

22. Defendant's systematic processes forms did not alert Ms. Vega, nor make clear to ordinarily and similarly situated insureds, the fact that the *Schmick* offset drastically and materially diminished payment of benefits arising from a covered occurrence under the policy for crashes involving underinsured motorists. See *Id.*

23. Defendant's systematic processes and forms misrepresented the true value of the illusory underinsured motorist coverage that it advertised and sold to Ms, Vega and for which Defendants collected premiums. See *Id*, ¶ 26. "First, we find no merit in Defendant's argument

4

that the language of the statute provides immunity from claims that it misrepresented the coverage available to consumers like Mr. Crutcher. Certainly, while the Legislature authorized the selling of premiums together, its intent was not to sanction the deception of those consumers in their selection of policies and coverage levels. The Court in *Weed Warrior* concluded that it was the obligation of the insurance company to clearly provide its policyholders the opportunity to match their UM/UIM policy with their liability coverage. *Id.* ¶ 15. In this case [*Crutcher*], we are simply identifying the same consequence previously illuminated in *Weed Warrior. Id.* ¶ 10.) and *Id,* ¶ 27. If a person pays for something called "underinsured motorist" insurance, we think it reasonable for the person to be under the impression that he or he is, in fact, eligible to receive UIM coverage if involved in an accident with someone who does not have enough insurance to cover the costs of the insured's injuries." *Id.*

**Vega was injured in a collision with an underinsured motorist.**

24.      On August 25, 2019, Vega sustained serious bodily injuries and other damages arising from an automobile crash that occurred on San Mateo Boulevard, SE in Albuquerque, New Mexico, at the intersection with Zuni Road when an underinsured motorist ran a red light entering San Mateo and Zuni and caused a heavy impact with Vega's vehicle.

25.      Vega was not at fault for the crash and was wearing her seatbelt at the time.

26.      As a result of the collision, Vega suffered serious bodily injuries and other damages.

27.      Vega suffered total damages well in excess of $50,000.00.

28.      At the time of the collision, Vega was insured by the Vega Policy, which provided her with uninsured and underinsured motorist insurance coverage in the amount of up to $25,000.00 per person/$50,000.00 per accident.

29. After the collision, Vega made a claim with the tortfeasor's insurer and received $25,000, the full extent of liability coverage from the tortfeasor's insurer.

30. Like Vega, the tortfeasor also carried the minimum required liability insurance with limits of $25,000.00 per person, $50,000.00 per accident.

**Vega makes a claim that MetLife denies.**

31. Before the collision at issue, MetLife collected a premium for automobile coverage pursuant to the Vega Policy, under which Vega had a reasonable expectation that she carried underinsured motorist coverage of $25,000.00 per person, $50,000.00 per occurrence.

32. At the time of the collision, Vega was under the belief and had a reasonable expectation that she was entitled to underinsured motorist benefits pursuant to the application she had made and the insurance policy that MetLife had issued her.

33. After the collision, Vega reported the collision to MetLife and, through counsel, made a claim on the underinsured motorist coverage for which she had paid a premium.

34. MetLife, under a standardized business practice, opened a claim, assigned claim number 058014483 0101 023, and randomly assigned the adjustment of the matter to one of its adjusters. See **Exhibit 4**, MetLife's Denial of Vega's Claim.

35. Vega, through counsel, requested that MetLife provide her with the underinsured motorist benefits that MetLife contracted with Vega to provide and for which she had paid a premium.

36. MetLife denied Vegas's underinsured motorist coverage claim in its entirety.

37. MetLife denied Vega's claim because (i) MetLife deducted from the coverage it owed Vega any sums paid by the tortfeasor's insurer and (ii) the tortfeasor's liability

coverage limits equaled Vega's underinsured motorist coverage limits. *See id.*

38.     Vega received nothing from MetLife, her underinsured motorist policy

carrier. .

39.     Vega had a reasonable expectation that she would benefit from the insurance

premiums MetLife collected from her. In fact, however, under her policy there were virtually

no underinsured motorist benefits.

## CLASS ACTION ALLEGATIONS

40.     This action is properly maintainable as a class action pursuant to Rule 1-023

NMRA. The Class is defined as follows:

> "All persons (and their heirs, executors, administrators, successors, and
> assigns) from whom MetLife collected a premium for an underinsured motorist
> coverage on a policy that was issued or renewed in New Mexico by MetLife
> and that purported to provide underinsured motorist coverage, but which
> effectively provides no underinsured motorists coverage and/or misleading
> underinsured motorist coverage, because of the statutory offset recognized in
> *Schmick v. State Farm Mutual Automobile Insurance Company*, 704 P.2d 1092
> (1985)."

41.     Excluded from the Class are all of Defendants' present and former officers and

directors, "Referees" serving the Evaluation Appeal process proposed below, Class counsel

and their resident relatives, and Defendant's counsel of record and their resident relatives.

42.     Pursuant to Rule 1-023(C) (4)(b), the Class properly includes a Subclass:

> "All Class Members (and their heirs, executors, administrators, successors, and
> assigns from whom MetLife collected a premium for an underinsured motorist
> coverage on a policy that was issued or renewed in New Mexico by MetLife
> and that purported to provide the underinsured motorist coverage on the face
> of its application and declaration pages, but which in fact provides no
> underinsured motorists coverage and/or misleading underinsured motorist
> coverage, because of the statutory offset recognized in *Schmick v. State Farm
> Mutual Automobile Insurance Company*, 704 P.2d 1092   (1985), and who
> sustained damages in excess of an insured tortfeasor's policy limits, received

the extent of all bodily injury liability limits available and would be denied those benefits by MetLife due to the *Schmick* offset."

43. The proposed class and subclass definitions are precise, objective, and presently ascertainable, and it is administratively feasible for the Court to ascertain whether a particular individual is a member of the Class.

44. The members of the Class are so numerous that joinder of all members of the Class is impracticable.

45. Vega's claims are typical of the claims of members of the Class and Subclass.

46. Certification of the Class and Subclass is desirable and proper, because there are questions of law and fact in this case common to all members of the Class. Such common questions of law and fact include, but are not limited to:

a. Whether MetLife breached contractual obligations owed to their New Mexico policyholders;

b. Whether MetLife breached duties owed to New Mexican insureds under the implied covenant of good faith and fair dealing;

c. Whether MetLife violated NMSA 1978, §§ 59A-16-1 to -30;

d. Whether MetLife failed to disclose one or more material facts in connection with the marketing or sale of the insurance policies at issue;

e. Whether MetLife misled or deceived their policyholders in connection with the marketing or sale of the policies at issue;

f. How properly to construe MetLife's standard application forms and other standard form documents relative to the *Schmick* offset;

g. What remedies are available to Vega and Class Members in light of the answers to the foregoing questions; and

h.   Whether and to what extent there may be merit in any affirmative defenses that MetLife might claim.

47.   These common questions of law or fact common to members of the Class predominate over any questions affecting only individual members, and a class action is superior to all other available methods for the fair and efficient adjudication of the controversy. In this action:

48.   Common or generalized proof will predominate with respect to the essential elements of the nine claims at issue.

49.   The common questions of law or fact that pertain to the Class predominate over any individual questions and any individual issues do not overwhelm the common ones.

50.   If any member or members of the Class has an individually controlling interest to prosecute a separate action, they may exclude themselves from the Class upon receipt of notice under Rule 1-023(C)(2).

51.   The determination of the claims of all members of the Class in a single forum and in a single proceeding would be a fair, efficient and superior means of resolving the issues raised in this litigation.

52.   Any difficulty encountered in the management of the proposed Class is reasonably manageable, especially when weighed against the impossibility of affording adequate relief to the members of the Class through numerous independent actions.

53.   The need for proof of Vega's and Class members' damages will not cause individual issues to predominate over common questions. The amounts of losses can be efficiently demonstrated either at trial or as part of routine claims administration through accepted and court-approved methodologies with the assistance of court-appointed personnel,

including Special Masters. Certain types or elements of damage are subject to proof using aggregate damage methodologies or simply rote calculation and summation.

54.     The particular common issues of liability and the quantum of punitive damages or ratio of punitive damages to actual harm, are common to Class Members no matter what type of harm or injury was suffered by each Class Member.

55.     MetLife has acted or refused to act on grounds generally applicable to Class Members, thereby making appropriate injunctive relief and corresponding declaratory relief with respect to Class Members. Vega seeks to establish the rights and obligations of the parties with respect to the claims at issue in this case and to enjoin MetLife from continuing to engage in those practices that violate the duties, contractual, and legal obligations owed to Vega and Class Members under New Mexico statutory and common law.

56.     A class action is superior to maintenance of these claims on a claim-by-claim basis when all actions arise out of the same circumstances and course of conduct. A class action allows the Court to process all rightful claims in one proceeding. Class litigation is manageable considering the opportunity to afford reasonable notice of significant phases of the litigation to Class Members and permit distribution of any recovery. The prosecution of separate actions by individual Class Members, or the individual joinder of all Class Members in this action, is impracticable and would create a massive and unnecessary burden on the resources of the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of each Class Members, should that be determined to be appropriate.

57.     The conduct of this action as a class action conserves the resources of the parties and the court system, protects the rights of each member of the class, and meets all due

process requirements.

58.     Certification of the Class with respect to particular common factual and legal issues concerning liability, as well as the necessary and appropriate quantum of punitive damages, or ratio of punitive damages to actual harm, is appropriate under Rule 1-023.

59.     Certification of the Class is desirable and proper, because Vega will fairly and adequately protect the interests of the Class that they seek to represent. There are no conflicts of interest between Vega's claims and those other members of the Class. Vega is cognizant of their duties and responsibilities to the Class. Vega's attorneys are qualified, experienced, and able to conduct the proposed class action.

## CLAIM 1
## VIOLATIONS OF THE NEW MEXICO UNFAIR TRADE PRACTICES ACT

60.     Vega and Class Members incorporate by reference the preceding paragraphs as if they were fully stated herein.

61.     There was in effect, at all times material, a New Mexico statute commonly known as the New Mexico Unfair Trade Practices Act, N.M.S.A.1978, § 57-12-2 to 58-12-10 ("UPA"), including but not limited to Sections 57-12-2(D)(7), (D)(14), (D)(15), (D)(17) and Section 57-12- 2(E), which prohibits a person selling insurance from engaging in unfair or deceptive trade practices:

> D. "unfair or deceptive trade practice" means an act specifically declared unlawful pursuant to the Unfair Trade Practices Act [Chapter 57, Article 12 NMSA 1978], a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services or in the extension of credit or in the collection of debts by a person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead and includes but is not limited to:

> (7) representing that the goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another;

(14) using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact if doing so deceives or tends to deceive;

(15) stating that a transaction involves rights, remedies or obligations that it does not involve;

(17) failure to deliver the quality or quantity of goods or services contracted for;

F. "unconscionable trade practice" means an act or practice in connection with the sale, lease, rental or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services, including services provided by licensed professionals, or in the extension of credit or in the collection of debts which to a person's detriment: takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or results in a gross disparity between the value received by a person and the price paid.

62. MetLife failed to deliver the quality or quantity of services applied for and purchased and paid for by Vega and other insureds by failing to provide insurance applications and policies containing sufficient information to properly inform a reasonably prudent person purchasing underinsured insurance, for which Vega and others similarly situated were under the reasonable belief that such coverage existed, and to pay claims for insurance benefits sold and solicited by MetLife.

63. In the regular course of its business, MetLife or its agents knowingly made oral and written statements that were false and misleading in connection with the sale of underinsured motorist insurance in New Mexico.

64. These false and misleading representations may, tend to, and do deceive or mislead persons into believing that minimal-limits underinsured motorist coverage has a value that it does not have and into contracting for and paying premiums for underinsured motorist policies that are illusory and/or misleading and do not provide the underinsured motorist coverage and benefits that MetLife's customers reasonably expected to receive.

65.     In the regular course of its business, MetLife or its agents took advantage of its customers' lack of knowledge, ability, experience or capacity to a grossly unfair degree by marketing, advertising, selling, and receiving premium payments for illusory and/or misleading underinsured motorist coverage.

66.     Since the New Mexico Supreme Court's opinion in *Progressive Northwest Insurance Co. v. Weed Warrior Services*, 2010-NMSC-050, 149 N.M. 157, 245 P.3d 1209, MetLife has been on notice that underinsured motorist policies provide essentially no coverage at minimal limits and misleading coverage at higher limits, yet MetLife markets, advertises, sells, and received premiums for minimal limits and above-minimal limits underinsured motorist policies to and from customers, such as Vega and Class Members, who do not know and do not understand that, if they purchase minimal limits underinsured motorist coverage, they are vanishingly unlikely to receive any underinsured motorist coverage or that if they purchase above-minimal limits and suffer damages in excess of the tortfeasor's liability coverage, they would only be able to receive limited underinsured motorist coverage in excess of the amounts received from the tortfeasor, losing the full benefit of their above-minimal limits coverage because of the Schmick offset.

67.     MetLife's actions resulted in a gross disparity between the value of the illusory underinsured motorist coverage received by Vega and Class Members and the price of the premiums that Vega and Class Members paid for illusory and/or misleading underinsured motorist coverage.

68.     MetLife, acting through its agents, adjusters, and employees, as set forth above, knowingly and willfully engaged in unfair trade practices in violation of Section 57-12-3, including but not limited to Sections 57-12-2(D)(7), (D)(14), (D)(15), (D)(17) and Section 57-

12- 2(E).

## CLAIM 2
## VIOLATIONS OF THE NEW MEXICO UNFAIR INSURANCE PRACTICES ACT

69.     Vega and Class Members incorporate by reference the preceding paragraphs as if they were fully stated herein.

70.     There was in effect at all times material a New Mexico statute commonly known as the Insurance Code New Mexico Unfair Insurance Practices Act, NMSA 1978, §§ 59A-16-1 to 59A-16-30 ("UIPA").

71.     The UIPA provides a private right of action to any person covered by the UIPA who has suffered damages as a result of a violation of that statute by an insurer or agent is granted a right to bring an action in district court to recover actual damages.

72.     Vega and Class Members were insured under the policy issued and adjusted by the MetLife.

73.     MetLife owed Vega and Class Members the duties of good faith, fair dealing, and the accompanying fiduciary obligations.

74.     In the sale and provision of insurance, and in the handling of the underinsured motorist claim, MetLife failed to exercise good faith, unreasonably delayed payment, and failed to give the interests of Vega and of Class Members the same consideration it gave their own interests.

75.     MetLife's failure to pay anything on Vega's and Class Members' first $25,000.00 level of underinsured motorist claims was unfounded, unreasonable, and in bad faith.

76.     MetLife misrepresented the terms of the policy sold and provided to Vega and Class Members, and/or failed to disclose material facts reasonably necessary to prevent other

14

statements from being misleading and failed to implement and follow reasonable standards in the sale and provision of insurance.

77.    MetLife's acts and failures to act were in reckless disregard of Vega's and Class Members' rights as an insured under the subject policy.

78.    MetLife's acts and practices took advantage of the lack of knowledge and experience of Vega and Class Members to a grossly unfair degree.

79.    MetLife's failed to abide by its statutory duties under the UIPA, and such violations constitute negligence per se.

80.    MetLife misrepresented to Vega and Class Members pertinent facts or policy provisions relating to coverages at issue, in violation of NMSA 1978, § 59A-16- 20(A).

81.    MetLife compelled Vega and Class Members to institute litigation to recover amounts due under the policies by offering substantially less (i.e., nothing on the first level of $25,000.00 of UIM coverage withheld based on the *Schmick* offset) than the amounts claimed by Vega and Class Members that will ultimately be recovered in actions brought by Vega, in violation of NMSA 1978, § 59A-16-20(G).

82.    MetLife's failure to act in good faith and MetLife's violations of the Insurance Code and Unfair Practices Act are proximate causes of damages sustained by Vega and Class Members.

83.    MetLife's conduct was in bad faith, malicious, willful, wanton, fraudulent and/or in reckless disregard of Vega's and Class Members' rights.

84.    Vega and Class Members are entitled to attorneys' fees and costs pursuant to NMSA 1978, §§ 59A-16-30 and 39-2-1. As a direct and proximate result of Defendants' acts, omissions policies, and conduct in violating UIPA, as set forth above, Vega and Class

Members have sustained damages, in addition to the damages common to all counts of this complaint, including but not limited to the actual damages incurred, the cost of prosecution of this lawsuit, attorneys' fees, and interest on the sums owed under the policy. These injuries and damages are ongoing, permanent, and are expected to continue in the future.

## CLAIM 3
## REFORMATION OF INSURANCE POLICY

85.     Vega and Class Members incorporate by reference the preceding paragraphs as though they were stated fully herein.

86.     Vega and similarly situated Class Members mistakenly believed that, by paying a premium for underinsured motorist coverage, they would receive underinsured motorist coverage at those same specific dollar amounts and limits.

87.     MetLife and its agents knew that, because of the operation of the offset described in *Schmick*, Vega and similarly-situated Class Members were vanishingly unlikely to receive the underinsured motorist benefits that they contracted for and for which MetLife collected premiums.

88.     At the time of contract formation, MetLife and its agents inequitably misrepresented the value of underinsured motorist coverage and failed to inform Vega and similarly-situated Class Members that, because of the operation of the offset described in *Schmick*, they were vanishingly unlikely to receive the underinsured motorist benefits that they contracted for and for which MetLife collected premiums.

89.     The inequitable failure of MetLife and its agents to inform Vega and similarly-situated Class Members that they were vanishingly unlikely to receive the underinsured motorist coverage caused Vega and similarly-situated Class Members to believe that, by paying a premium for underinsured motorist coverage, they would receive underinsured

motorist coverage reflected on their declaration pages.

90. The insurance contracts respectively entered between MetLife and its agents, on the one hand, and Vega and Class Members, on the other hand, do not express the intentions and reasonable beliefs of Vega and Class Members that they would receive the underinsured motorist coverage that they contracted for and for which MetLife collected premiums.

91. The court should reform the insurance contracts respectively entered between MetLife and its agents, on the one hand, and Vega and Class Members, on the other hand, to conform to the intentions and reasonable beliefs of Vega and Class Members that they would receive the underinsured motorist coverage that they contracted for and for which MetLife collected premiums.

## CLAIM 4
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

92. Vega and Class Members incorporate by reference the preceding paragraphs as though they were stated fully herein.

93. A special relationship exists between MetLife, on the one hand, and Vega and Class Members, respectively, on the other hand, sufficient to impose a duty of good faith and fair dealing on MetLife owed to Vega and Class Members.

94. Implicit in the contract of insurance between Vega and Class Members, on the one hand, and MetLife on the other was the covenant that Defendants would, at all times, act in good faith and deal honestly and fairly with Vega and Class Members.

95. MetLife breached the implied covenant of good faith and fair dealing, in one or more of the following ways, including but not limited to:

a. Failing to properly inform Vega and Class Members of the illusory and/or misleading coverage it solicited and sold;

17

b.  Charging a premium for coverage that was not provided;

c.  Failing and refusing to disclose, admit and acknowledge some amount of underinsured motorist coverage;

d.  Failing and refusing to fairly investigate, process, determine and decide Vega's and Class Members' claims under the policies referenced above; and

e.  Failing and refusing to mediate, resolve, and settle Vega's and Class Members' underinsured motorist claims.

96.  As a direct and proximate result of MetLife's acts and omissions alleged herein, Vega and Class Members have suffered damages in an amount to be proven at trial.

97.  MetLife's acts and omissions alleged herein and breach of the implied covenant of good faith and fair dealing were done intentionally, willfully, wantonly, grossly and/or with reckless disregard for the rights of Vega and Class Members.

98.  Accordingly, Vega and Class Members are entitled to recover punitive damages in an amount to be determined by the jury and sufficient to punish MetLife for its misconduct and to deter others from similar conduct in the future.

## CLAIM 5
## NEGLIGENCE

99.  Vega and Class Members incorporate by reference the preceding paragraphs as if they were fully stated herein.

100.  MetLife had a duty to ensure Vega and Class Members would be offered and obtain the maximum benefit of underinsured coverage and would not be sold illusory and/or misleading underinsured coverage.

101.  MetLife had a duty to provide Vega and Class Members coverage for which a premium was charged and collected.

102. It was reasonably foreseeable that the minimal limits underinsured coverage sold to Vega and Class Members was, in large part, illusory and/or misleading and that MetLife materially misrepresented the terms of underinsured coverage, and charged a premium for such illusory coverage.

103. A reasonably prudent insurance company exercising ordinary care would offer and sell underinsured coverage that was not illusory and/or misleading and would not materially misrepresent the terms of underinsured coverage by properly informing its insured of the coverage they were purchasing and obtaining a written waiver acknowledging its insured consent to the purchase of illusory and/or misleading underinsured motorist coverage.

104. A reasonably prudent insurer would not charge a premium for coverage it intended to deny or did not provide.

105. MetLife's actions and inactions, through its agents, employees, or others on its behalf, were negligent in that they breached the standard of care required of an insurance company issuing auto policies in New Mexico.

106. As a result of MetLife's negligence, Vega and Class Members sustained actual damages for which MetLife is liable. Vega and Class Members are entitled to punitive damages for actions of MetLife that were willful, reckless and wanton, and in bad faith and based on dishonest business judgment.

## CLAIM 6
## UNJUST ENRICHMENT

107. Vega and Class Members incorporate by reference the preceding paragraphs as though they were stated fully herein.

108. MetLife has applied the *Schmick* offset to its insureds' claims and denied the first level of underinsured motorist coverage in New Mexico since 1985. MetLife misled,

deceived, and acted in an unfair manner for decades and retained benefits (*i.e.*, the payment of proper claims, and retained premium charges which were unearned) from thousands of New Mexico insureds for years, including Vega and Class Members. The benefits MetLife denied their insureds allowed them to invest and enjoy the benefits of their deceptive and intentional conduct.

109. Vega and Class Members are entitled to the value of the underinsured motorist benefits and out-of-pocket expenses under the equitable theory of unjust enrichment.

110. MetLife should be ordered to disgorge of the value of the underinsured motorist benefits it retained, the UIM premiums it received, and the unjust profit that it derived therefrom.

## CLAIM 7
## NEGLIGENT MISREPRESENTATION

111. Vega and Class Members incorporate by reference the preceding paragraphs as though they were stated fully herein.

112. A special relationship exists between MetLife, on the one hand, and Vega and Class Members, respectively, on the other hand, sufficient to impose a duty on MetLife to disclose accurate information to Vega and Class Members.

113. As early as 1985, when the New Mexico Supreme Court published its decision in *Schmick v. State Farm*, MetLife knew that underinsured motorist coverage would be illusory and/or misleading under circumstances similar to those experienced by Vega and Class Members.

114. MetLife, however, withheld this information from Vega and Class Members and hid from them the fact that the underinsured motorist coverage as impacted by the *Schmick* offset is illusory and/or misleading.

115. From 1985 through the present, MetLife failed to disclose material facts and made material misrepresentations to Vega and Class Members regarding illusory and/or misleading underinsured motorist coverage.

116. MetLife, by their failures and omissions, misrepresented underinsured motorist coverages through their standard and uniform applications and policies used by Vega and Class Members, which MetLife knew or should have known, were misleading and contained material misrepresentations.

117. MetLife's material omissions and misrepresentations were made to induce Vega and Class Members to purchase underinsured motorist coverage that MetLife knew was illusory and/or misleading.

118. Vega and Class Members relied on MetLife's material omissions and misrepresentations when deciding to purchase underinsured motorist coverage at the level of coverage they respectively purchased.

119. As a result of MetLife's misrepresentations and omissions, MetLife is liable to Vega and Class Members for their damages flowing from those misrepresentations and omissions.

120. As a direct and proximate result of MetLife's negligent misrepresentations, Vega and Class Members suffered economic loss, including the lost benefits of underinsured motorist coverage and out-of-pocket expenses. Vega and Class Members seek the full measure of damages allowed under applicable law.

## CLAIM 8
## DECLARATORY JUDGMENT

121. Vega and Class members incorporate by reference the preceding paragraphs as though they were stated fully herein.

122. An actual controversy exists between the parties thereby rendering declaratory relief proper under the New Mexico Declaratory Judgment Act, NMSA 1978, Sections 44-6-1 through 44-6-15.

123. The Court should reform the insurance contracts respectively entered between Defendant and their agents, and Ms. Vega and Class Members to conform to the intentions and reasonable beliefs of Ms. Vega and Class Members that they would receive the underinsured motorist coverage that they contracted for and for which Defendant collected premiums

124. Vega and Class Members are entitled to a declaratory judgment establishing their respective rights and obligations of the parties with respect to the claims set forth herein.

## INJUNCTIVE RELIEF

125. Vega and Class Members incorporate by reference the preceding paragraphs as though they were stated fully herein.

126. Vega and Class Members are entitled to injunctive relief under the claims they have pled because Vega and Class Members would suffer an irreparable injury that monetary damages at a later time would not adequately compensate them for the injury of paying a premium for illusory and/or misleading coverage.

127. MetLife should be enjoined from continuing practices that violate the duties, and contractual legal obligations owed to Vega and Class Members.

128. MetLife must be compelled to stop their practice of collecting premiums for the sale of illusory and/or misleading underinsured motorist coverage and failing to provide underinsured motorist coverage benefits equal to the limits of liability coverage where they failed to properly inform Vega and Class Members throughout the application and policy underwriting process.

## REQUEST FOR RELIEF

Vega and Class Members request a jury trial and the following relief:

i.    An order certifying this action to proceed as a class action, authorizing Vega to represent the interests of the Class Members as appropriated and appointing undersigned counsel to represent the class.

ii.   Awarding compensatory damages to Vega and Class Members for the damages done to them by MetLife in an amount to be proven at trial;

iii.  Awarding Vega and Class Members damages from MetLife as a result of its violations of the UIPA, in an amount to be determined at trial for attorneys' fees and costs;

iv.   Awarding disgorgement of the value of the underinsured motorist benefits retained by MetLife, the UIM premiums received by MetLife, the unjust profit that MetLife derived therefrom, and any other amounts to which Vega and Class Members are equitably entitled under the theory of unjust enrichment;

v.    Awarding treble damages in accordance with NMSA 1978, Sections 57-12-10(B) and any and all damages pursuant to NMSA 1978, Sections 57-12-1 through -26, which will deter MetLife and others from such unfair trade practices and wrongful conduct in the future and will punish them for the conduct set forth herein;

vi.   Granting declaratory relief that establishes the rights and obligations of the parties with respect the claims set forth herein;

vii.  Granting injunctive relief requiring MetLife to properly inform Vega and Class Members throughout the application and policy underwriting process

of the true value of the underinsured motorist benefits that are being advertised and sold;

viii.     Awarding Vega and Class Members their costs and expenses incurred in these actions, including reasonable attorney's fees, experts' fees, and costs; and

ix.     Granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Kedar Bhasker*
Kedar Bhasker
BHASKER LAW
2741 Indian School Rd. NE
Albuquerque, NM 87106
505-407-2088
Kedar@bhaskerlaw.com

and

Corbin Hildebrandt
CORBIN HILDEBRANDT P.C.
2741 Indian School Rd. NE
Albuquerque, NM 87106
Phone: 505 998-6626
corbin@hildebrandtlawnm.com

and

Geoffrey Romero
LAW OFFICES OF GEOFFREY R. ROMERO
4801 All Saints Rd. NW Ste. A
Albuquerque, NM 87120
(505) 247-3338
geoff@geoffromerolaw.com

*Counsel for the Plaintiff*

# Exhibit 1

*Margaret Christine*

## PLEASE SIGN AND RETURN TO US

Named Insured (print)

A 135260593 0 ✓

Policy Number

## NEW MEXICO
## UNINSURED / UNDERINSURED MOTORISTS COVERAGE
### ELECTION / REJECTION FORM

This form is used to select the limits for the Uninsured / Underinsured Motorists Bodily Injury and Property Damage coverages that are best suited to your needs. Please read it carefully. The form must be completed, signed, and mailed to the address below when you are selecting, rejecting, or changing your Uninsured / Underinsured Motorists Bodily Injury (UMBI/UIMBI) coverage limits or your Uninsured Motorists Property Damage (UMPD) coverage limits. If you have any questions, please see the "How To Reach Us" section in the front of your policy package for your choice of contact options.

Uninsured Motorists Bodily Injury (UMBI) coverage will pay for loss resulting from bodily injury or death which you, or any other person occupying your covered automobile, are legally entitled to collect from the owner or driver of any uninsured motor vehicle or a hit-and-run motor vehicle.

Underinsured Motorists Bodily Injury (UIMBI) coverage will pay for loss resulting from bodily injury or death which you are legally entitled to collect from the owner or driver of a motor vehicle insured for amounts insufficient to pay for your loss.

Uninsured Motorists Property Damage (UMPD) coverage provides coverage for property damage you sustain as a result of an accident with an uninsured motor vehicle. UMPD coverage is subject to a $250 deductible.

You may select UMBI / UIMBI and UMPD coverage at the minimum limits required by law, or, for relatively modest increases in premium, in any amount up to the Bodily Injury and Property Damage Liability limits of your policy. You may also reject these coverages. Please indicate your selection below by checking the option you desire:

Your Bodily Injury limit on the policy: $ 25,000 / $ 50,000

I understand that if I select a coverage limit for Uninsured / Underinsured Motorists coverage that is lower than the limit on my policy for Bodily Injury Liability coverage, that I am rejecting Uninsured / Underinsured Motorists coverage limits equal to my Bodily Injury Liability coverage.

**I SELECT THE UNINSURED / UNDERINSURED MOTORISTS BODILY INJURY LIMITS INDICATED BELOW:**

| | |
|---|---|
| ☑ $25,000 per person / $50,000 per accident | $ 122 |
| ___ $30,000 per person / $60,000 per accident | $ 156 |
| ___ $50,000 per person / $100,000 per accident | $ 160 |
| ___ $60,000 per person / $120,000 per accident | $ 188 |
| ___ $100,000 per person / $300,000 per accident | $ 206 |
| ___ $150,000 per person / $350,000 per accident | $ 222 |
| ___ $250,000 per person / $500,000 per accident | $ 238 |
| ___ $300,000 per person / $600,000 per accident | $ 244 |

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its affiliates. Warwick, RI

**I SELECT THE UNINSURED MOTORISTS PROPERTY DAMAGE LIMITS INDICATED BELOW:**

| | | |
|---|---|---|
| ___ | $10,000 per accident | $ 58 |
| _MC_ | $15,000 per accident | $ 72 |
| ___ | $20,000 per accident | $ 82 |
| ___ | $25,000 per accident | $ 100 |
| ___ | $50,000 per accident | $ 114 |
| ___ | $100,000 per accident | $ 140 |

___ I reject the Uninsured / Underinsured Motorists coverage, as well as Uninsured Motorists Property Damage in their entirety. I understand that I may add these coverages at any future date.

**NEW MEXICO STACKING OF UNINSURED MOTORISTS COVERAGE**

If you have elected to purchase Uninsured Motorists coverage, you have the option to reject intra-policy Stacked Uninsured Motorists coverage and, instead, purchase Non-Stacked Uninsured Motorists coverage. Subject to the provisions of the policy, intra-policy stacking refers to aggregating the Uninsured Motorists coverage limits, for you and members of your household, for each vehicle specifically insured under the policy

Please indicate your choice of stacking Uninsured Motorists coverage below.

___ I SELECT the Stacking of Uninsured Motorists coverage    $ 166

_MC_ I REJECT the Stacking of Uninsured Motorists coverage    $ 122

Signature _Margaret Christus_    Date _3/27/18_

Mail to:
Attention: Services
MetLife Auto & Home
P.O. Box 6060
Scranton, PA 18505-6060

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its affiliates Warwick, RI

BEFORE SEALING, PLEASE BE SURE THE MAILING ADDRESS APPEARS IN THE WINDOW.

www.eservice.metlife.com

MPL 0395 000  Printed in U S A  0312

*E1601801621*

From:
Marana Christine
1733 Adams St NE Unit G
ABQ, NM 87110

U S POSTAGE
$.50
87110
Pharos.com
2500  5538 0812
SSK
03/05/18
2500  06
08836963

# Exhibit 2

This is to certify that the attached declarations page is a true and accurate representation of the declarations page for the insurance policy described below:

Named Insured(s):     MARGARET CHRISTINE
Policy Type:     Auto
Policy Number:     1352605930
Issuing Insurance Company:     Metropolitan Direct Property and Casualty Insurance Company
As of Date:     02/07/2018

Signed by: _Dave Walker_

Notary: _Patricia L Massie_

Date: 2/10/2021



PATRICIA L MASSIE
NOTARY PUBLIC OHIO
MY COMMISSION EXPIRES 03-25-24

| | |
|---|---|
| **Policy Number: 1352605930**<br>**Policy Effective Date: 02/07/2018**<br>**Policy Expiration Date: 02/07/2019**<br>**At: 12:01 A.M. Standard Time** | **Page 1 of 2**<br><br>**New Policy Effective Date: 02/07/2018** |
| **Named Insured:**<br>MARGARET CHRISTINE<br>633 ADAMS ST NE UNIT C<br>ALBUQUERQUE NM 87110 | You have selected our Payroll Deduction Plan. Your premium includes the Payroll Deduction Discount. |

**Insured Vehicle(s)**

| Veh | Year | Make | Model | Body Type | Vehicle ID Number | Com/Col Sym | Terr |
|---|---|---|---|---|---|---|---|
| 1 | 2006 | CHEVROLET | MALIBU | SEDAN | 1G1ZU53806F209036 | 21/25 | 15 |

| Coverage Description | Applicable Limits | | Annual Premiums |
|---|---|---|---|
| | | **2006**<br>**CHEVR** | |
| **Liability** | | | |
| Bodily Injury | $ 25,000 | Each Person/ | |
| | $ 50,000 | Each Accident | 346 |
| Property Damage | $ 25,000 | Each Accident | 248 |
| **Physical Damage** | **2006**<br>**CHEVR** | | |
| Actual Cash Value (ACV) or Limit | ACV | | |
| Collision Less Deductible | $ 300 | | 498 |
| Comprehensive Less Deductible | $ 250 | | 232 |
| Towing and Labor Limit | $ 50 | | Incl |
| **Optional Coverages** | | | |
| Substitute Transportation | $ 25 Day/$ 750 Accident | | 70 |
| Glass Deductible Buyback | | | Incl |
| | **Vehicle Totals:** | **1394** | |
| | **Total For All Vehicles:** | | 1,394 |
| **Uninsured/Underinsured Motorists** | | | |
| Bodily Injury | $ 25,000 | Each Person/ | |
| | $ 50,000 | Each Accident | 80 |
| Property Damage | $ 20,000 | Each Accident | 56 |
| | **Total Annual Premium:** | | 1,530 |

---

**Forms and Endorsements:** AP6000 0513    AP6100 0513    AE70NM 0914    AE9110 0513
AE9200 0513    AE40NM 0914    AE5300 0513

---

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its affiliates, Warwick, RI.

MPL 1380-000

Printed in U.S.A. 0298

| Policy Number: 1352605930 | |
| --- | --- |
| Policy Effective Date: 02/07/2018 | |
| Policy Expiration Date: 02/07/2019 | |
| At: 12:01 A.M. Standard Time | New Policy Effective Date: 02/07/2018 |

## Discounts

The following have been included in the total annual premium:

MetRewards Discount
Anti-lock Brake Discount applies to 2006 CHEVR
Payroll Discount
Auto Policy Plus, including
        Homeowners
        Individual Life / Annuity
A Special Group Rate applies
Welcome Discount

---

## Rating Information

### Household Drivers:

| | | |
| --- | --- | --- |
| 12/08/1973 | MARGARET CHRISTINE | Divorced |
| | Licensed 27 Years | |

**IF YOU HAVE A DRIVER IN YOUR HOUSEHOLD WHO IS NOT LISTED ABOVE, PLEASE NOTIFY US IMMEDIATELY.**

---

## Interested Parties

| 2006 CHEVROLET | Lien/Loss Payee: | JD BYRIDER | | |
| --- | --- | --- | --- | --- |
| | | 6008 CENTRAL AVE SE | ALBUQUERQUE | NM87108 |

---

For service or claims, see the Customer
Service and Claim Directory located on
the back of your cover page.

319 - AVC - 1

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its affiliates, Warwick, RI.

This is to certify that the attached declarations page is a true and accurate representation of the declarations page for the insurance policy described below:

Named Insured(s):     MARGARET CHRISTINE
Policy Type:           Auto
Policy Number:         1352605930
Issuing Insurance Company:   Metropolitan Direct Property and Casualty Insurance Company
As of Date:            02/07/2019

Signed by:        _Dave Walker_

Notary:        _Patricia L Massie_

Date:  2/10/2021



PATRICIA L MASSIE
NOTARY PUBLIC   OHIO
MY COMMISSION EXPIRES 03-25-24

## Automobile Insurance Declarations

| | |
|---|---|
| **Policy Number: 1352605930**<br>**Policy Effective Date: 02/07/2019**<br>**Policy Expiration Date: 02/07/2020**<br>**At: 12:01 A.M. Standard Time** | **Page 1 of 2**<br><br>**Renewal Effective Date: 02/07/2019** |
| **Named Insured:**<br>MARGARET CHRISTINE<br>633 ADAMS ST NE UNIT C<br>ALBUQUERQUE NM 87110 | You Have Selected ExpressIT. Your premium payments will be reflected in the monthly statement from your bank. |

### Insured Vehicle(s)

| Veh | Year | Make | Model | Body Type | Vehicle ID Number | Com/Col Sym | Terr |
|---|---|---|---|---|---|---|---|
| 1 | 2018 | HYUNDAI | ELANTRA | SEDAN | 5NPD84LF1JH311216 | 25/15 | 15 |

| Coverage Description | Applicable Limits | | Annual Premiums |
|---|---|---|---|
| | | **2018 HYUND** | |
| **Liability** | | | |
| Bodily Injury | $ 25,000 Each Person/ | | |
| | $ 50,000 Each Accident | 402 | |
| Property Damage | $ 25,000 Each Accident | 330 | |
| **Physical Damage** | | **2018 HYUND** | |
| Actual Cash Value (ACV) or Limit | ACV | | |
| Collision Less Deductible | $ 300 | 848 | |
| Comprehensive Less Deductible | $ 250 | 554 | |
| Towing and Labor Limit | $ 50 | Incl | |
| **Optional Coverages** | | | |
| Substitute Transportation | $ 25 Day/$ 750 Accident | 70 | |
| Glass Deductible Buyback | | Incl | |
| | **Vehicle Totals:** | **2204** | |
| | **Total For All Vehicles:** | | **2,204** |
| **Uninsured/Underinsured Motorists** | | | |
| Bodily Injury | $ 25,000 Each Person/ | | |
| | $ 50,000 Each Accident | 104 | |
| Property Damage | $ 15,000 Each Accident | 64 | |
| | **Total Annual Premium:** | | **2,372** |

---

**Deductible Savings Benefit (DSB) $   0**

Deductible Savings reduces Collision or Comprehensive deductibles, excluding towing and glass claims, effective 02/07/2019 for claims occurring after this date. Your next anniversary date is 02/07/2020.

---

**Forms and Endorsements:**    AP6000 0513    AP6100 0513    AE70NM 0914    AE9110 0513
AE9200 0513    AE40NM 0914    AE5300 0513

---

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its affiliates, Warwick, RI.

| Policy Number: 1352605930 | |
|---|---|
| Policy Effective Date: 02/07/2019 | Page 2 of 2 |
| Policy Expiration Date: 02/07/2020 | |
| At: 12:01 A.M. Standard Time | Renewal Effective Date: 02/07/2019 |

## Discounts

The following have been included in the total annual premium:

    MetRewards Discount
    Anti-lock Brake Discount applies to 2018 HYUND
    ExpressIT Discount
    Auto Policy Plus, including
            Homeowners
            Individual Life / Annuity
    A Special Group Rate applies
    Welcome Discount

----------------------------------------------------------------------------------------------------

## Rating Information

**Household Drivers:**

12/08/1973    MARGARET  CHRISTINE                    Divorced
              Licensed 28 Years

**IF YOU HAVE A DRIVER IN YOUR HOUSEHOLD WHO IS NOT LISTED ABOVE, PLEASE NOTIFY US IMMEDIATELY.**

----------------------------------------------------------------------------------------------------

For service or claims, see the Customer
Service and Claim Directory located on
the back of your cover page.

                                        319 - AVC - 9

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its affiliates, Warwick, RI.

| | |
|---|---|
| **Policy Number:** 1352605930<br>**Policy Effective Date:** 02/07/2019<br>**Policy Expiration Date:** 02/07/2020<br>    **At: 12:01 A.M. Standard Time** | **Page 2 of 2**<br>**Change 03**<br>**Policy Change Effective Date:** 04/29/2019 |

**Discounts**

The following have been included in the total annual premium:

MetRewards Discount
Anti-lock Brake Discount applies to 2018 HYUND
ExpressIT Discount
Auto Policy Plus, including
    Homeowners
        Individual Life / Annuity.
A Special Group Rate applies
Welcome Discount

**Rating Information**

**Household Drivers:**

12/08/1973   MARGARET VEGA                          Married
             Licensed 28 Years

**IF YOU HAVE A DRIVER IN YOUR HOUSEHOLD WHO IS NOT LISTED ABOVE, PLEASE NOTIFY US IMMEDIATELY.**

**Updated Policy Information**

ExpressIt Discount Added                    Billing Payment Plan Changed

For service or claims, see the Customer
Service and Claim Directory located on
the back of your cover page.

319 - AVC - 9

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its affiliates, Warwick, RI.

This is to certify that the attached declarations page is a true and accurate representation of the declarations page for the insurance policy described below:

Named Insured(s):    MARGARET VEGA
Policy Type:    Auto
Policy Number:    1352605930
Issuing Insurance Company:    Metropolitan Direct Property and Casualty Insurance Company
As of Date:    02/07/2020

Signed by: _Dave Walter_

Notary: _Patricia L Massie_

Date:  2/10/2021



PATRICIA L MASSIE
NOTARY PUBLIC   OHIO
MY COMMISSION EXPIRES 03-25-24

| Policy Number: 1352605930<br>Policy Effective Date: 02/07/2020<br>Policy Expiration Date: 02/07/2021<br>At: 12:01 A.M. Standard Time | Page **1** of 2<br>Change 01<br><br>**Policy Change Effective Date: 02/07/2020** |
|---|---|
| **Named Insured:**<br>MARGARET VEGA<br>633 ADAMS ST NE UNIT C<br>ALBUQUERQUE NM 87110 | You Have Selected ExpressIT. Your premium payments will be reflected in the monthly statement from your bank. |

## Insured Vehicle(s)

| Veh | Year | Make | Model | Body Type | Vehicle ID Number | Com/Col Sym | Terr |
|---|---|---|---|---|---|---|---|
| 1 | 2018 | FORD | ECOSPOR | SUV | MAJ3P1VE5JC203376 | 14/14 | 15 |

| Coverage Description | Applicable Limits | | Annual Premiums |
|---|---|---|---|
| | | | **2018**<br>**FORD** |
| **Liability** | | | |
| Bodily Injury | $ | 25,000 Each Person/ | |
| | $ | 50,000 Each Accident | 262 |
| Property Damage | $ | 25,000 Each Accident | 270 |
| **Physical Damage** | | | **2018**<br>**FORD** |
| Actual Cash Value (ACV) or Limit | ACV | | |
| Collision Less Deductible | $ 300 | | 636 |
| Comprehensive Less Deductible | $ 250 | | 280 |
| Towing and Labor Limit | $ 50 | | Incl |
| **Optional Coverages** | | | |
| Substitute Transportation | $ 25 Day/$ 750 Accident | | 70 |
| Glass Deductible Buyback | | | Incl |
| | **Vehicle Totals:** | | 1518 |
| | **Total For All Vehicles:** | | 1,518 |
| **Uninsured/Underinsured Motorists** | | | |
| Bodily Injury | $ | 25,000 Each Person/ | |
| | $ | 50,000 Each Accident | 86 |
| Property Damage | $ | 15,000 Each Accident | 54 |
| | **Total Annual Premium:** | | 1,658 |

Prior Annual Premium: $ 2,074.00
Change in premium from 02/07/2020 through 02/07/2021: $ 416-
This change to your policy is effective back to 01/02/2020
Change in premium from 01/02/2020 through 02/07/2020: $ 40-

This Declarations does not supersede any cancellation notices.

---

**Deductible Savings Benefit (DSB) $ 0**

Deductible Savings reduces Collision or Comprehensive deductibles, excluding towing and glass claims, effective 01/09/2020 for claims occurring after this date. Your next anniversary date is 02/07/2021.

---

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its affiliates, Warwick, RI.

MPL 1380-000                                    Printed in U.S.A. 0298

| | |
|---|---|
| **Policy Number: 1352605930**<br>**Policy Effective Date: 02/07/2020**<br>**Policy Expiration Date: 02/07/2021**<br>**At: 12:01 A.M. Standard Time** | **Page 2 of 2**<br>**Change 01**<br><br>**Policy Change Effective Date: 02/07/2020** |

**Forms and Endorsements:**     AP6000 0513     AP6100 0513     AE70NM 1119     AE9110 0513
   AE9200 0513     AE40NM 0914     AE5300 0513

---

### Discounts

The following have been included in the total annual premium:

MetRewards Discount
Anti-lock Brake Discount applies to 2018 FORD
ExpressIT Discount
Auto Policy Plus, including
      Homeowners
      Individual Life / Annuity
A Special Group Rate applies

---

### Rating Information

**Household Drivers:**

12/08/1973   MARGARET  VEGA                    Married
             Licensed 29 Years

**IF YOU HAVE A DRIVER IN YOUR HOUSEHOLD WHO IS NOT LISTED ABOVE, PLEASE NOTIFY US IMMEDIATELY.**

---

### Interested Parties

2018  FORD        Lien/Loss Payee:        WESTLAKE FINANCIAL SE
                                          PO BOX 997952                SACRAMENTO        CA 95899

---

### Updated Policy Information

Driver Removed From Policy

---

For service or claims, see the Customer
Service and Claim Directory located on
the back of your cover page.

319 - AVC - 9

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its affiliates, Warwick, RI.

# Exhibit 3

## MetLife Auto & Home®

## Auto

## Insurance Policy

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its affiliates, Warwick, RI.

THE COMPANY NAMED IN THE DECLARATIONS
Administrative Offices:
700 Quaker Lane, Warwick, Rhode Island 02886

## AUTO INSURANCE POLICY

### TABLE OF CONTENTS

| | PAGE |
|---|---|
| **INSURANCE AGREEMENT AND DECLARATIONS** | 1 |
| **GENERAL DEFINITIONS** | 1 |
| Actual Cash Value | 1 |
| Auto | 1 |
| Auto Business | 1 |
| Bodily Injury (BI) | 1 |
| Collision | 1 |
| Covered Auto | 1 |
| Deductible | 2 |
| Fungus and Mold | 2 |
| Insured | 2 |
| Loss | 2 |
| Medical Services | 2 |
| Medical Expense | 2 |
| Motorcycle | 2 |
| Motor Vehicle | 2 |
| Non-Owned Auto | 3 |
| Nuclear Action | 3 |
| Occupying | 3 |
| Property Damage (PD) | 3 |
| Racing | 3 |
| Reasonable Expenses | 3 |
| Relative | 3 |
| Substitute Auto | 3 |
| Total Loss | 4 |
| Trailer | 4 |
| War | 4 |
| We, Us, Our, Company | 4 |
| You, Your | 4 |
| **LIABILITY COVERAGE** | 4 |
| Insuring Agreement | 4 |
| Supplemental Payments | 4 |
| Exclusions | 5 |
| Limit Of Liability | 5 |
| Duplication Of Payments | 6 |
| Financial Responsibility | 6 |
| Out Of State Insurance | 6 |
| Other Insurance | 6 |
| **MEDICAL EXPENSE COVERAGE** | 6 |
| Insuring Agreement | 7 |
| Exclusions | 7 |
| Limit Of Liability | 7 |
| Duplicate Payments | 8 |
| Other Insurance | 8 |

**PHYSICAL DAMAGE COVERAGE**      8
     Insuring Agreements      8
         Comprehensive Coverage      8
         Collision Coverage      8
         Towing And Labor Coverage      8
         Substitute Transportation Coverage      9
     Supplemental Payments      9
     Exclusions      9
     Limit Of Liability      11
         Replacement Cost Settlement      11
         Actual Cash Value Settlement      11
         Replacement Cost for Special Parts      11
     Deductible      12
     No Benefit To Bailee      12
     Appraisal      12
     Payment Of Loss      12
     Other Insurance      12

**GENERAL POLICY CONDITIONS**      13
     Territory And Policy Period      13
     Changes      13
     Fraud And Misrepresentation      13
     Duties After A Loss      13
     Medical Reports; Proof And Payment Of Claim      14
     Legal Action Against Us      15
     Our Recovery Right      15
     Assignment      15
     Conformity To Law      16
     Loss Payable Clause      16
     Additional Insured      16
     Termination      See State Provisions Endorsement

**PERSONAL INJURY PROTECTION COVERAGE**
     If shown in the Declarations, see Personal Injury Protection Coverage Endorsement

**UNINSURED AND UNDERINSURED MOTORISTS COVERAGE**
     If shown in the Declarations, see Uninsured/Underinsured Coverage Endorsement(s)

# AUTO INSURANCE POLICY

## INSURANCE AGREEMENT AND DECLARATIONS

In return for the payment of premium, **we** agree to insure **you** for the coverages and applicable limits of insurance shown in the Declarations. The coverages provided are subject to all the terms, conditions, and limitations of this policy. The policy consists of the policy contract, the Declarations, and all endorsements that apply.

When **you** accept this policy, **you** agree that the representations made by **you** or on **your** behalf for this insurance are true. **We** provide this insurance based upon those truths. This policy contains all agreements between **you** and **us**.

## GENERAL DEFINITIONS

Certain words and phrases are defined for use in this policy. These words and phrases have the same meaning whether in singular, plural, or any other form. Each coverage may define words and phrases that are used only with that coverage. Defined words and phrases appear in boldface type.

**A. ACTUAL CASH VALUE** means the amount that it would cost to repair or replace the damaged property, minus the amount for any physical deterioration and depreciation.

**B. AUTO** means a land **motor vehicle** of the private passenger, pick-up truck, low speed vehicle, or van type which is designed and intended for use mainly on public roads. Golf carts which are registered for use on public roads are **autos**.

**C. AUTO BUSINESS** means the business or occupation of:
1. selling;
2. leasing;
3. repairing;
4. servicing;
5. storing;
6. parking;
7. delivering; or
8. testing;

**motor vehicles or trailers.**

**D. BODILY INJURY** (referred to as "**BI**") means any physical injury to a person and any resulting sickness, disease or death.

**E. COLLISION** means the contact of an **auto** with another object, vehicle, or the road bed. This includes the overturning of an **auto**.

**F. COVERED AUTO** means:
1. any **auto or trailer** which is shown in the Declarations and is owned by, registered to, or leased by **you** or a **relative**;
2. any **auto or trailer** which is shown in the Declarations and which is furnished to **you** or a **relative** for **your** regular use, but is not owned by or leased to **you** or a **relative**;
3. a camper that is designed to be mounted on a pickup truck. The camper must be shown in the Declarations;
4. a substitute **auto**;
5. an **auto** which is newly acquired by **you**. **You** must ask **us** to add it to **your** policy within 30 days of acquisition and pay any additional premium due.
   If the newly acquired **auto**:
   a. replaces an **auto** shown in the Declarations then the coverages and limits applicable to the replaced **auto** shall apply to the newly acquired **auto**.

    **b.** does not replace an **auto** shown in the Declarations, then the broadest coverages and limits applicable to any **auto** shall apply to the newly acquired **auto**. If Comprehensive or Collision Coverage does not apply to any **auto** shown in the Declarations, **we** will provide Comprehensive and Collision Coverages subject to a $500 deductible for the newly acquired **auto**.

An **auto, trailer** or camper is no longer a **covered auto** on the date it is no longer owned by, leased to, or available for regular use by **you** or a **relative**.

**G. DEDUCTIBLE** means the amount of **loss** to be paid by **you**.

**H. FUNGUS AND MOLD** means inhalation, ingestion, the existence of or exposure to any fungi mold, mushrooms, bacteria, mildew, wet rot or dry rot and any mycotoxins, spores, scents, or by-products produced by any of these.

**I. INSURED** means:

    **1.** with respect to a **covered auto**:
        **a. you;**
        **b.** any **relative**; or
        **c.** any other person using it with **your** or a **relative's** permission. The use must be within the scope of the permission given by **you** or a **relative**.
    **2.** with respect to a **non-owned auto, you** or any **relative**. The use must be within the scope of the permission given to **you** or a **relative**.
    **3.** any other person or organization if liable due to the acts or omissions of any person described in **1.** or **2.** above. This provision does not apply:
        **a.** if the vehicle is a **non-owned auto** owned or hired by the person or organization.
        **b.** to the United States of America or any of its agencies.

**J. LOSS** means direct, sudden and accidental damage or total or partial theft. **Loss** does not include any actual or perceived reduction in market or resale value.

**K. MEDICAL SERVICES** means necessary medical treatments, procedures, products, services, and supplies which:

    **1.** are provided by licensed hospitals, physicians, clinics or other medical or healthcare providers, if the provider is required to be licensed by law; and
        **a.** is within the legally authorized scope of the provider's practice or service;
        **b.** are commonly and customarily recognized as the standard of care and treatment throughout the medical and dental professions and within the United States of America as appropriate for the **BI;**
        **c.** serve a medical purpose or are for a medical reason:
        **d.** are not experimental in nature; and
        **e.** are not for research or testing purposes;
    **2.** includes ambulance or medical transportation services;
    **3.** includes professional nursing services;
    **4.** includes the costs of pharmaceuticals prescribed by a licensed medical provider, eyeglasses, hearing aids, orthopedics and prosthetic devices; or
    **5.** are due to common funeral or burial services or practices.

**L. MEDICAL EXPENSE** means the reasonable expenses incurred for any **medical services**.

**M. MOTORCYCLE** means a two-wheeled or three-wheeled motorized vehicle of the motorcycle, motorbike, moped or registered motor scooter type, including, if attached, a sidecar or **trailer**.

**N. MOTOR VEHICLE** means a land motor vehicle designed for use mainly on public roads other than:

    **1.** a farm type tractor or farm equipment designed for use mainly off public roads, while not upon public roads;
    **2.** a vehicle operated on rails or crawler-treads;

3. a self-propelled steam or traction engine;
4. a compactor type engineering vehicle used for the construction of roads or foundations; or
5. a vehicle used primarily as a residence, dwelling, premises, or place of business.

O. **NON-OWNED AUTO** means:
1. an auto being used by **you** or a **relative** with the owner's permission. The **auto** must not be owned by, furnished to, or made available for regular use by **you**, or any **relative**. However, an **auto** owned by, furnished to, or made available for regular use by a **relative** shall be a **non-owned auto** when it is used by:
    a. **you;** or
    b. any other **relative**.
2. a commercially rented **auto**, or truck which has a Gross Vehicle Weight Rating of under 26,000 lbs., used by **you** or a **relative** on a temporary basis.

P. **NUCLEAR ACTION** means nuclear reaction, nuclear discharge, radiation or radioactive contamination including any cleanup, decontamination or containment activities regardless of how the reaction, discharge or contamination occurred.

Q. **OCCUPYING** means in, on, entering, or exiting.

R. **PROPERTY DAMAGE** (referred to as "**PD**") means physical damage to, destruction of, or loss of use of tangible property.

S. **RACING** means preparing, practicing, competing or driving in any organized or prearranged:
1. race;
2. speed contest;
3. high speed driving;
4. stunting;
5. demolition; or
6. other similar organized exhibition or demonstration,
on a closed course.

T. **REASONABLE EXPENSES** means the least of:
1. the reasonable, usual and customary fees charged by a majority of healthcare providers who provide similar **medical services** in the geographical area in which the fees were incurred. The fee may be established by a database, survey or any other means which identifies the amounts charged by healthcare providers within the same or a similar geographical area in which the fees were incurred;
2. the fee specified in any fee schedule which is authorized or prescribed by law to apply to medical payments coverage, no-fault coverage, or personal injury protection coverage included in an auto liability policy issued in the state where the **medical services** were provided;
3. the fees agreed to by both the healthcare provider and **us**; or
4. the fees agreed to by the healthcare provider and a third party or a network.

U. **RELATIVE** means a person, other than **you**, who is a resident of **your** household, and is related to **you** by blood, marriage, civil union, registered domestic partnership, or adoption. This includes a ward, stepchild, foster-child, and **your** children that are residents of **your** household who are living elsewhere. **We** may require reasonable proof of residency in **your** household.

V. **SUBSTITUTE AUTO** means an **auto** or **trailer** which is not owned by **you** or any **relative**, and which is used with the owner's permission to replace a **covered auto** for a short time. The **covered auto** has to be out of normal use due to:
1. breakdown;
2. destruction;
3. loss;

4. repair; or
5. servicing.

**W. TOTAL LOSS** means a loss in which the cost to repair the vehicle to its pre-loss condition plus the salvage value, equals or exceeds the **actual cash value.**

**X. TRAILER** means a trailer designed to be towed by an **auto** and which is not used as an office, store, display, or passenger trailer. A farm wagon or farm implement is a **trailer** while being towed by an **auto.**

**Y. War** means a state of conflict including:
1. war, declared or undeclared;
2. civil war;
3. insurrection;
4. rebellion;
5. revolution; or
6. warlike actions by a military force or personnel.

**Z. WE, US, OUR** and **COMPANY** mean the company named in the Declarations.

**AA.YOU** and **YOUR** mean the named insured or named insureds shown in the Declarations. If a named insured shown in the Declarations is a person, then **you** and **your** includes that person's:
1. spouse; or
2. partner in a civil union, registered domestic partnership or other similar union.
The spouse or partner must be a resident of the same household as the named insured. The marriage, civil union or domestic partnership must have been validly entered into under the laws of a state, municipality, or territory of the United States or any other country.

## LIABILITY COVERAGE

Coverage is provided when the coverage is shown as applying in the Declarations.

### INSURING AGREEMENT
**We** will pay damages for **BI** and **PD** to others for which the law holds an **insured** responsible because of a **loss** resulting from owning, maintaining, or using a **covered auto** or **non-owned auto**, including a **trailer**, mounted camper unit, attached cap, topper, or canopy which is being used with either. Damages include prejudgment interest awarded against an **insured**. The most **we** will pay for all damages shall not be more than the amount determined by the **LIMIT OF LIABILITY.**

**We** will defend an **insured**, at **our** expense against any suit or claim seeking these damages. **We** may use attorneys of **our** choice in any suit or claim. **We** may investigate, negotiate or settle any such suit or claim. **Our** duty to defend ends when **we** deposit in court or pay any amount due under this coverage. **We** have no duty to defend an **insured** for any suit or settle any claim not covered under this policy.

### SUPPLEMENTAL PAYMENTS
In addition to the limits of liability, **we** will pay the following expenses incurred by an **insured** due to a claim or suit covered under this policy:
A. Premiums on the following bonds:
1. Appeal bonds in any suit **we** defend.
2. Bonds to release attachments in any suit **we** defend. The total amount of the bonds must not exceed **our** limit of liability.
3. Up to $250 for any bail bond needed because of an accident or traffic violation(s) from owning, maintaining or using a **covered auto.**
We have no duty to furnish or apply for any bonds.

**B.** Court costs charged to an **insured**.
**C.** Costs paid by an **insured** to give first aid to others at the time of a **loss** involving a **covered auto** or **non-owned auto**.
**D.** Wages an **insured** loses while attending a hearing or trial at **our** request. The most **we** will pay to any **insured** is up to $250 per day. **We** will not pay for loss of other income.
**E.** Other reasonable expenses incurred at **our** request

## EXCLUSIONS

**A.** **We** do not cover **BI** to any employee of an **insured** from his or her employment except domestic employees who are not covered or not required to be covered under any workers' compensation law.

**B.** **We** do not cover **BI** to a fellow employee of an **insured** while on the job and in the business of his employers. This exclusion does not apply to **you** or any **relatives**.

**C.** **We** do not cover **BI** or **PD** arising out of an **auto business**. This exclusion does not apply when a **covered auto** is used by **you**, a **relative**, or by any other person in any **auto business** in which **you** have an interest as owner or partner.

**D.** **We** do not cover any **BI** or **PD** which is covered under an atomic or nuclear energy liability insurance policy, or that would have been covered had that policy not been terminated upon exhaustion of its limit of liability.

**E.** **We** do not cover any **BI** or **PD** due to a **nuclear action**.

**F.** **We** do not cover **BI** or **PD** caused by or resulting from an **auto** while it is:
    **1.** rented to any person or organization in any fashion; or
    **2.** leased to any person or organization in any fashion.
This exclusion does not apply:
    **1.** while the **auto** is rented or leased to or for **your** or a **relative's** use;
    **2.** while the **auto** is used in a shared expense car pool; or
    **3.** while the **auto** is being used for volunteer or charitable purposes for which reimbursement for normal operating expenses may be paid to **you** or a **relative**.

**G.** **We** do not cover **BI** or **PD** caused by or resulting from an **auto** while it is being used to carry persons for a charge. This exclusion does not apply while the **auto**:
    **1.** is used in a shared expense car pool; or
    **2.** is being used for volunteer or charitable purposes for which reimbursement for normal operating expenses may be paid to **you** or a **relative**.

**H.** **We** do not cover **PD** caused by any **insured** to:
    **1.** an **auto** that is owned by, rented to, operated by, or in the care of that **insured**; or
    **2.** any other property that is owned by, rented to, or in the care of any **insured**. This exclusion does not apply to a rented dwelling or private garage.

**I.** **We** do not cover any awards or judgments designated as punitive, exemplary, statutory multiple, or delay damages or awards.

**J.** **We** do not cover **BI** or **PD** from an intentional act caused by or at the direction of an **insured**. This exclusion applies even if the actual injury or damage is different than that which was intended or expected.

**K.** **We** do not cover **BI** or **PD** caused by or resulting from any **auto** while **racing**.

**L.** **We** do not cover **BI** or **PD** from the use of an **auto** for which the provisions of the Federal Tort Claims Act apply.

**M.** **We** do not cover any **BI** or **PD** directly or indirectly caused by **fungus and mold**.

**N.** **We** do not cover **BI** or **PD** from **occupying** or using an **auto** while:
    **1.** it is being used as an aircraft; or
    **2.** it is being used as a watercraft.

**O.** **We** do not cover **BI** or **PD** caused by anyone **occupying** or using an **auto** without the owner's permission or a reasonable belief that the person is entitled to occupy or use the **auto**. This exclusion does not apply to **you** or a **relative occupying** or using a **covered auto** or **non-owned auto**.

## LIMIT OF LIABILITY

The limit of liability shown for Bodily Injury in the Declarations for "each person" is the most **we** will pay for all damages, including prejudgment and post-judgment interest, due to **BI** to any one person as the result of any one accident. This includes all damages sustained by any other person as a result of that **BI**.

Subject to this limit for "each person", the Bodily Injury limit shown in the Declarations for "each accident" is the most we will pay for all damages, including prejudgment and post-judgment interest, arising out of BI sustained by two or more persons resulting from any one accident.

The limit of liability shown for Property Damage in the Declarations for "each accident" is the most we will pay for all damages, including prejudgment and post-judgment interest, to all property resulting from any one accident.

If a single limit of liability for Bodily Injury and Property Damage is shown in the Declarations, it is the most we will pay for all damages, including prejudgment and post-judgment interest, due to BI and PD as the result of any one accident

The limit of liability includes damages for care, loss of consortium, emotional distress, and loss of services or death.

This is the most we will pay regardless of the number of:
   A. insureds;
   B. claims made;
   C. vehicles shown in the Declarations;
   D. premiums shown in the Declarations; or
   E. vehicles involved in the accident.

An auto and attached trailer are considered one vehicle.

## DUPLICATION OF PAYMENTS
No person is entitled to receive duplicate payments for the same elements of loss under this section and any other coverage provided by this policy.

## FINANCIAL RESPONSIBILITY
When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

## OUT OF STATE INSURANCE
If any insured becomes subject to a financial responsibility law, motor vehicle compulsory insurance law, compulsory insurance for nonresidents, or similar law of:
   A. any state of the United States of America;
   B. a territory, possession, or Commonwealth of the United States of America;
   C. the District of Columbia; or
   D. any province or territory of Canada;
we will interpret this policy to provide the coverage required by those laws.

## OTHER INSURANCE
If two or more auto insurance policies issued to you by us apply to any loss, the most we will pay is the highest dollar limit or benefit in any one such policy.

If there is other applicable insurance, we will pay our fair share. Our fair share is the portion that our limit bears to the total of all applicable limits. Any insurance we provide with respect to non-owned autos or substitute autos will be excess over any other collectible insurance. Any insurance we provide will be excess over any payments received from workers' compensation, disability, or similar law or benefits.

## MEDICAL EXPENSE COVERAGE

Coverage is provided when the coverage is shown as applying in the Declarations.

**INSURING AGREEMENT**
We will pay medical expenses incurred because of BI to:
- **A.** you or any relative as a result of a loss involving a motor vehicle, or a trailer while being used with an auto.
- **B.** anyone, other than you or any relative, while occupying or using a covered auto with your consent.

Medical services must begin within one year and are rendered within three years from the date of loss.

**EXCLUSIONS**
- **A.** We do not cover that portion of any medical expense which is covered under or required to be covered under a workers' compensation, disability or similar law or benefits.
- **B.** We do not cover BI arising out of an auto business. This exclusion does not apply when a covered auto is used by you, a relative, or by any other person in any auto business in which you have an interest as owner or partner.
- **C.** We do not cover any BI which is covered under an atomic or nuclear energy liability insurance policy, or that would have been covered had that policy not been terminated upon exhaustion of its limit of liability.
- **D.** We do not cover any BI due to a nuclear action.
- **E.** We do not cover BI caused by, resulting from, or sustained while occupying a covered auto or non-owned auto while it is:
  - **1.** rented to any person or organization in any fashion; or
  - **2.** leased to any person or organization in any fashion.

  This exclusion does not apply:
  - **1.** while the auto is rented or leased to or for your or a relative's use;
  - **2.** while the auto is used in a shared expense car pool; or
  - **3.** while the auto is being used for volunteer or charitable purposes for which reimbursement for normal operating expenses may be paid to you or a relative.
- **F.** We do not cover BI caused by, resulting from, or sustained while occupying a covered auto or non-owned auto while it is being used to carry persons for a charge. This exclusion does not apply while the auto:
  - **1.** is used in a shared expense car pool; or
  - **2.** is being used for volunteer or charitable purposes for which reimbursement for normal operating expenses may be paid to you or a relative.
- **G.** We do not cover BI from an intentional act caused by or at the direction of an insured. This exclusion applies even if the actual injury or damage is different than that which was intended or expected.
- **H.** We do not cover BI sustained while occupying any motor vehicle while racing.
- **I.** We do not cover any BI directly or indirectly caused by fungus and mold.
- **J.** We do not cover any BI caused directly or indirectly by war.
- **K.** We do not cover BI sustained while occupying a motor vehicle while:
  - **1.** it is located for use as a residence or premises;
  - **2.** it is being used as an aircraft; or
  - **3.** it is being used as a watercraft.
- **L.** We do not cover BI sustained while occupying any motor vehicle or being struck as a pedestrian by any motor vehicle, which is owned by you or a relative or available for your or a relative's regular use. This exclusion does not apply to a covered auto or to a non-owned auto.
- **M.** We do not cover BI sustained while occupying a motorcycle.
- **N.** We do not cover BI sustained by anyone while occupying a motor vehicle without the owner's permission or a reasonable belief that the person is entitled to occupy the motor vehicle. This exclusion does not apply to you or a relative occupying a covered auto or non-owned auto.

**LIMIT OF LIABILITY**
The limit shown in the Declarations for "each person" is the most we will pay for any one person as a result of any one accident. This is the most we will pay regardless of the number of:
- **A.** insureds;
- **B.** claims made;

C. vehicles shown in the Declarations;
D. premiums shown in the Declarations; or
E. vehicles involved in the accident.

The total amount **we** will pay includes funeral and burial expenses, not to exceed the lesser of $3,000 or the limit of liability for each person.

## DUPLICATE PAYMENTS

No one will be entitled to receive duplicate payments for the same **medical services** or funeral and burial expenses under this coverage and:

A. any other coverage provided by this policy; or
B. any amount paid by or on behalf of a party who is legally liable for the **BI**.

## OTHER INSURANCE

If two or more auto insurance policies issued to **you** by **us** apply to any **loss**, the most **we** will pay is the highest dollar limit or benefit in any one such policy.

If there is other applicable insurance, **we** will pay **our** fair share. **Our** fair share is the portion that **our** limit bears to the total of all applicable limits. Any insurance **we** provide with respect to a vehicle **you** or a **relative** do not own will be excess over any other collectible insurance. Any coverage provided shall be excess over any personal injury protection benefits paid or payable, except for a deductible under this or any other motor vehicle insurance policy, for the **medical expenses** for **BI**.

## PHYSICAL DAMAGE COVERAGE

Coverage is provided when the coverage is shown as applying in the Declarations.

## INSURING AGREEMENTS

A. **COMPREHENSIVE COVERAGE**

We will pay for **loss** to **your covered auto**, or to a **non-owned auto**, including its equipment, not caused by **collision**, minus any applicable **deductible** shown in the Declarations. Coverage is included for a **loss** caused by, but not limited to, the following:

1. falling objects or contact with a bird or animal;
2. fire, explosion, or earthquake;
3. theft or larceny;
4. windstorm, hail, water or flood;
5. malicious mischief or vandalism;
6. riot or civil commotion; and
7. breakage of glass.

B. **COLLISION COVERAGE**

We will pay for **loss** to **your covered auto** or to a **non-owned auto**, including its equipment, caused by **collision**, minus any applicable **deductible** shown in the Declarations.

C. **TOWING AND LABOR COVERAGE**

We will pay up to the limit shown in the Declarations for the cost of labor performed at the place of disablement or breakdown and costs of towing a **covered auto** or a **non-owned auto** to be repaired. The disablement or breakdown labor and towing include:

1. labor to repair the vehicle at the place of disablement or breakdown;
2. towing to the nearest repair facility;
3. delivery of fuel, liquids, batteries or tires necessary to make the vehicle drivable, excluding the actual cost of the fuel, liquids, batteries or tires;
4. labor to replace a flat tire at the scene of disablement;
5. jump-starting or boosting a battery to start the vehicle due to a drained battery;

6. winching to bring the vehicle back onto a paved road or driveway; and
7. lockout or locksmith services needed to open a door if the key is lost, stolen or locked inside the vehicle.

No deductible applies to this coverage.

**D. SUBSTITUTE TRANSPORTATION COVERAGE**
We will pay up to the limit as shown in the Declarations for the cost of substitute transportation if the **covered auto** is disabled as a result of a **loss** covered under Comprehensive or Collision Coverage. For **loss** caused by theft of the **covered auto**, this coverage is provided in place of any transportation costs paid under item **C.** of **SUPPLEMENTAL PAYMENTS**.

Payment will begin the day the **covered auto** is:
1. out of use due to the **loss**; or
2. the day **you** leave it at the repair shop.

Payment will be made for the reasonable and necessary time required to repair the **covered auto**. Payment will end:
1. the day the **covered auto** has been repaired;
2. when **we** offer settlement; or
3. when **you** reach **your** limit,
whichever occurs first.

**We** will pay up to the amount for each day, as shown in the Declarations, for rental coverage from an auto rental agency, but not more than the maximum amount for each disablement for any one **loss**.

However, if **you** do not rent from an auto rental agency, **we** will pay **you** $25 per day, but not more than the limit shown in the Declarations for each disablement for any one **loss**.

No deductible applies to this coverage.

## SUPPLEMENTAL PAYMENTS
A. If the **covered auto** is disabled as a result of **loss**, **we** will pay up to $50 for transportation to reach the intended destination or return home.
B. If the **covered auto** is in a **loss**, **we** will pay up to $300 for **loss** to clothes and luggage belonging to **you** or a **relative** which are in the **covered auto**.
C. If an **auto** is stolen, **we** will pay up to $25 for each day for transportation. Payment will end when **we** offer settlement for the theft. If **you** do not rent from an auto rental agency, **we** will pay **you** $25 for each day. However, the total amount **we** will pay will not be more than $750.
D. **We** will pay general average and salvage charges for which **you** become legally liable when the **covered auto** is being transported.
E. **We** will pay to replace a child restraint seat or car seat damaged in a **loss** covered under Comprehensive or Collision Coverage.
F. **We** will pay expenses for loss of use, diminished value, and reasonable fees and charges which **you** become legally obligated to pay as a result of direct and accidental damage to a **non-owned auto** commercially rented by **you** or a **relative** on a temporary basis.

No deductible applies to these payments.

## EXCLUSIONS
A. **We** do not cover **loss** to **non-owned auto** arising out of an **auto business**.
B. **We** do not cover any **loss** to an **auto** due to a **nuclear action**.
C. **We** do not cover **loss** to an **auto** while it is:
1. rented to any person or organization in any fashion; or

    **2.** leased to any person or organization in any fashion.

This exclusion does not apply:

    **1.** while the **auto** is rented or leased to or for **your** or a **relative's** use;

    **2.** while the **auto** is used in a shared expense car pools;

    **3.** while the **auto** is being used for volunteer or charitable purposes for which reimbursement for normal operating expenses may be paid to **you** or a **relative**.

**D.** **We** do not cover **loss** to an **auto** while it is being used to carry persons for a charge. This exclusion does not apply while the **auto:**

    **1.** is used in a shared expense car pools; or

    **2.** is being used for volunteer or charitable purposes for which reimbursement for normal operating expenses may be paid to **you** or a **relative**.

**E.** **We** do not cover **loss** to an **auto** arising out of an intentional act or theft caused by or at the direction of an **insured**. This exclusion applies even if the actual injury or damage is different than that which was intended or expected.

**F.** **We** do not cover **loss** to any **auto** while **racing**.

**G.** **We** do not cover any **loss** caused by **fungus and mold**.

**H.** **We** do not cover any **loss** caused directly or indirectly by **war**.

**I.** **We** do not cover any **loss** due to and confined to:

    **1.** wear and tear;

    **2.** freezing; or

    **3.** mechanical or electrical breakdown or failure.

This exclusion does not apply if the **loss** results from the total theft of an **auto**.

**J.** **We** do not cover **loss** or road damage to tires used with an **auto**. This exclusion does not apply if the **loss** is caused by:

    **1.** falling objects or contact with a bird or animal;

    **2.** fire, explosion or earthquake;

    **3.** theft or larceny;

    **4.** windstorm, hail, water or flood;

    **5.** malicious mischief or vandalism;

    **6.** riot or civil commotion; or

    **7.** a **collision** involving another part of the auto which causes a **loss** to the tires.

**K.** **We** do not cover **loss** to any device used to detect or interfere with speed measuring devices which are used with or located in an **auto**.

**L.** **We** do not cover **loss** to an **auto** or **trailer** due to destruction or confiscation by governmental or civil authorities.

**M.** **We** do not cover **loss** to any electronic equipment that is installed or located in an **auto** and is designed to reproduce, receive or transmit audio, visual or data signals. This includes, but is not limited to:

    **1.** radios and stereos;

    **2.** tape decks;

    **3.** compact disc and digital video disc systems, players and burners;

    **4.** navigation systems;

    **5.** internet access systems;

    **6.** personal computers, including laptops, desktops, and personal digital assistants (PDA), electronic tablet, or any other handheld or portable device;

    **7.** video entertainment systems;

    **8.** telephones;

    **9.** televisions;

    **10.** two-way mobile radios;

    **11.** scanners; or

    **12.** citizens band radios.

This exclusion applies to all accessories used with the equipment or similar equipment.

This exclusion does not apply if the equipment is operated solely from the electrical system of the vehicle and is:

    **1.** permanently installed in a housing unit or location used by the **auto** manufacturer for such equipment; or

2. a component that is removable from a housing unit permanently installed in the location used by the auto manufacturer for such equipment; or

3. equipment which was provided by or through us for use in the auto.

N. We do not cover **loss** to removable products used for the storage of audio, video or other data This includes, but is not limited to, tapes, records, discs, memory cards, MP3 data, electronic books, and other media or other devices.

This exclusion applies to the removable products used for storage and all data contained on them, including any time or cost to recreate the data.

O. We do not cover **loss** to a camper, including its parts and its equipment, that is:

1. designed to be mounted on an **auto;**
2. owned by **you** or a **relative;** and
3. not a **covered auto.**

P. We do not cover any actual or perceived decrease in market value, diminished value, or resale value resulting from a **loss** to an **auto.**

Q. We do not cover any undamaged parts or accessories of an **auto,** except to the extent necessary to repair or replace damaged parts or accessories.

R. We do not cover a **loss** to an **auto** while:

1. it is being used as an aircraft; or
2. it is being used as a watercraft.

## LIMIT OF LIABILITY

A. **Replacement Cost Settlement.** If the **covered auto** is owned by **you** and sustains a **loss** within

1. one year after purchase; or
2. the vehicle's first 15,000 miles,

whichever occurs first, **we** will pay, at **our** option, the full cost of repair or replace the vehicle, less the applicable **deductible.**

**We** will not pay more than the cost to replace the damaged property with:

1. a previously untitled vehicle of the year, make, model and equipment of the damaged **auto** or, if unavailable,
2. a vehicle that is most similar in class and body type to the year, make, model and equipment of the damaged **auto.**

This applies only to a **covered auto** that has not been previously titled and was not more than one model year old when purchased by **you.** This does not apply to a **substitute auto,** a **non-owned auto** or a leased vehicle. **We** will not pay more than the **actual cash value** of the damaged part or property until the actual repair or replacement is complete. If **we** agree that the **auto** is a **total loss, you** may make claim for additional payments for the cost to replace the damaged property by submitting proof of purchasing a replacement **auto** within 91 days of the date of **loss.**

B. **Actual Cash Value Settlement.** If the **covered auto** is not covered under A. above, **our** payments will not exceed the lesser of:

1. the limit shown in the Declarations for Physical Damage for the **auto;**
2. the **actual cash value** of the property at the time of **loss;** or
3. the cost to repair or replace the property with other of like kind and quality.

If the repair or replacement results in the betterment of the property or part, **you** must pay the amount of the betterment.

C. **Replacement Cost For Special Parts. We** will not take a deduction for depreciation for **loss** to, steering and suspension components, brake parts, electrical wiring and components, batteries, and tires if repair or replacement results in a better part than was damaged. This does not apply

to the theft of tires or batteries.  This does not apply when an **auto** sustains a **total loss.**

If the **loss** is only to a part of the property, **our** responsibility extends to that part only.

The most **we** will pay for **loss** to a **trailer you** do not own or did not commercially rent is $1,500.

The cost necessary to repair or replace damaged property with other of like kind, quality, make, model, year or equipment will be the fair and reasonable prices to make the repairs or replacement locally. To the extent there is a range of fair and reasonable prices to make such repairs locally, **we** will pay a competitive price within that range determined at **our** sole discretion.  Property of like kind and quality may include new, used, recycled, and reconditioned parts. Any of these parts may be produced by or for the **auto's** manufacturer or may be from non-original equipment manufacturers.

## DEDUCTIBLE
The Comprehensive Coverage and Collision Coverage **deductible** applicable to each **covered auto** is shown in the Declarations.  **We** will waive the **deductible** if the **loss** is the result of **collision** with another vehicle insured by **us.**  If the **loss** is to a **non-owned auto**, the Comprehensive Coverage or Collision Coverage **deductible** applicable to the **loss** shall be the lowest **deductible** displayed in the Declarations for the applicable coverage for a **covered auto** which is not a **trailer.**

If a Deductible Savings Benefit (DSB) is shown in the Declarations, the amount shown is available to reduce the Comprehensive or Collision **deductible** applicable to a **loss.**  The Deductible Savings Benefit is not applicable to **losses** involving only the repair or replacement of glass

## NO BENEFIT TO BAILEE
This coverage shall not directly or indirectly benefit any carrier or bailee for hire for **loss** to the **covered auto.**

## APPRAISAL
If within 60 days after proof of **loss** is filed there is a disagreement as to the amount of **loss, you** or **we** may demand an appraisal.  Each party will select a competent appraiser.  Each appraiser will state separately the **actual cash value** and the amount of **loss**. If they fail to agree, they must select and submit their differences to a competent and disinterested umpire.  Agreement by any two will determine the amount of **loss.**  Each party will pay his chosen appraiser and will equally share the expenses of the appraisal process and umpire.  Disagreements over any coverage provided by this policy are not subject to appraisal.

## PAYMENT OF LOSS
If property is stolen, **we** may, at any time before the **loss** is paid or the property replaced, return at **our** own expense any stolen property.  **We** will return the property to **you** or, at **our** option, to the address shown in the Declarations.  If **we** return stolen property **we** will pay for any damage resulting from the theft.  **We** may take all or part of the damaged property at the agreed or appraised value, but **you** cannot abandon the property to **us.**
**We** may, at **our** option, make payment for a **loss** to one or more of the following:
   A. **You.**
   B. The owner of the **auto.**
   C. The repairer.
   D. Any other party who has an interest, title, or lien on the property.

## OTHER INSURANCE
If two or more auto insurance policies issued to **you** by **us** apply to any **loss**, the most **we** will pay is the highest dollar limit or benefit in any one such policy.

If there is other applicable insurance, **we** will pay **our** fair share. **Our** fair share is the portion that **our** limit bears to the total of all applicable limits.  Any insurance **we** provide with respect to **non-owned autos** or **substitute autos** will be excess over any other collectible insurance.

## GENERAL POLICY CONDITIONS

### A. TERRITORY AND POLICY PERIOD

This policy applies to accidents and **losses** which happen during the policy period shown by the effective date and expiration date in the Declarations, and within:

1. the United States, its territories, its possessions, and its Commonwealths;
2. the District of Columbia;
3. Canada; and
4. while the **covered auto or non-owned auto** is being shipped between the ports of the United States, its territories, its possessions, its Commonwealths, and Canada:

### B. CHANGES

1. This policy contains all the agreements between **you** and **us**. Its terms may not be changed or waived except by endorsement issued by **us**.
2. The premiums for this policy are computed using the rules, rates, rating plans, premiums and minimum premiums for the coverages provided. The premiums **we** charge are based on information **we** received from **you** and from other sources. **You** agree to assist **us** in determining that this information is complete and correct. **You** must inform **us** if any of the information is incorrect or incomplete, or changes during the policy period. If any of the information used to determine the premium is incorrect, incomplete, changes or if **you** do not provide it to **us** when **we** ask, **we** may increase or decrease the premium during the policy period.

   Changes during the policy period that may result in a premium increase or decrease include, but are not limited to, changes in:
   a. the number, type, or use of the **covered autos**.
   b. drivers using the **covered autos**, including **you**, **relatives** and all licensed drivers in **your** household.
   c. the principal garaging location of the **covered autos**.
   d. coverage, deductible or limits of the policy.

   If a change requires a premium increase or decrease, **we** will increase or decrease the premium following **our** rules and rates. If the premium is increased, **you** must pay the amount of increase on the date set by **us**.
3. **We** will automatically give **you** the benefits of any extension or broadening of coverage if a policy change does not require additional premiums. The change will automatically apply to **your** policy as of the date **we** implement the change in **your** state. This will not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:
   a. a future edition of **your** policy; or
   b. an endorsement changing the policy.
4. If **we** offer to renew this policy, the renewal premium will be based upon the rates in effect at the time of the renewal.

### C. FRAUD AND MISREPRESENTATION

**You** will have no coverage, and **your** policy will be void, if before or after a **loss**, **you** or any person:

1. conceals or misrepresents any material fact or circumstance;
2. makes a fraudulent statement; or
3. takes part in or attempts any fraudulent conduct;

relating to this policy or any **loss** for which coverage is sought.

### D. DUTIES AFTER A LOSS

**We** have no duty to provide coverage under this policy if the failure to comply with any of the following duties is prejudicial to **us** or results in additional **loss** or damage.

1. **You** or someone on **your** behalf must notify **us** as soon as possible of any **loss**. **We** may

require notification in writing. The notification should include as many details as possible, including:

    a. the names and addresses of drivers, injured persons and witnesses;

    b. the time and place of the loss; and

    c. all details and circumstances of the loss.

2. You must protect the auto from further loss. We will pay you for reasonable expenses incurred for this protection. We will not cover any loss which results from your failure to protect the auto from further loss.

3. In the event of a theft, you must promptly report the loss to the police.

4. You or a relative seeking coverage under Physical Damage Coverage must file with us a proof of loss within 91 days, or within the number of days required by law, of the loss.

5. You, a relative, and anyone seeking any coverage must:

    a. cooperate with us in the investigation, settlement or defense of any claim or suit;

    b. assist in securing and making evidence available to us. This includes, but is not limited to, allowing us to inspect damage to a covered auto or a non-owned auto before it is repaired;

    c. promptly send us copies of any notices, complaints, summons or legal papers received in connection with the loss;

    d. attend hearings and trials at our request;

    e. assist in finding and having witnesses participate in the investigation and settlement of claims;

    f. submit to:

        i. physical or mental exams by physicians of our choice as often as we require;

        ii. examinations under oath as often as we require; and

        iii. interviews and recorded statements without the need for us to conduct an examination under oath.

    g. authorize us to obtain any:

        i. medical, laboratory, or treatment reports, results, or tests related to BI which may have resulted from the accident or loss; and

        ii. other pertinent records, including, but not limited to, police or traffic reports, vehicle usage, information contained in or transmitted by any device located in or on the covered auto or trailer.

6. You, a relative, and anyone seeking any coverage will not voluntarily make any payment, assume any obligation, or incur any expense at the time of the loss, except at your expense. This does not apply to any first aid you or any relative provides to others.

## E. MEDICAL REPORTS; PROOF AND PAYMENT OF CLAIM

Any person making a claim must do the following as soon as possible:

1. Give us details about the death, injury, treatment, and other information we need to determine the amount payable. We have the right to make or obtain a review of medical expenses and medical services to determine if they are reasonable and necessary for the BI sustained. Forms for providing this information may be provided by us.

2. Consent to be examined by physicians chosen and paid by us when, and as often as, we reasonably may require.

3. Sign authorizations to permit us to obtain medical reports and records. If the person is dead or unable to act, such authorizations must be signed by his or her legal representative.

4. Submit to and provide all details concerning loss information through written or recorded statements or examinations under oath as often as we reasonably may require.

In addition, any person making a claim as a result of BI, which may result in payment from Personal Injury Protection or Medical Expense Coverage, must notify us in writing. This notification should be sent to us as soon as reasonably possible after the person's first examination or treatment resulting from the BI. Another person may give us the required notice on behalf of the person making a claim.

Under Personal Injury Protection and Medical Expense Coverage, we may pay the injured person or

any person or organization rendering the services. Any such payment will reduce the total amount we will pay for the injury. Any payment made by us will not constitute admission of liability or fault.

If a loss is covered under Personal Injury Protection or Medical Expense Coverage, we will defend you or any person if a lawsuit is brought for the balance of a bill that we did not pay in full based on the charge being in excess of a usual, customary and reasonable charge. Any defense we provide will be at our expense and with attorneys of our choice.

Under Personal Injury Protection, Uninsured Motorists, and Underinsured Motorists Coverage, we may pay any amount due to one or more of the following:
1. the injured person;
2. a parent or guardian, if the injured person is a minor;
3. the surviving spouse;
4. the person authorized by law to receive such payment; or
5. the person entitled by law to recover the damages, which the payment represents.

To receive payment for any BI, we may require, where applicable by law, all medical billing, electronic or not, by the provider to be submitted to us in a standard format that meets the Federal Health Insurance Portability and Accountability Act electronic transaction regulation requirements and coded according to Current Procedural Terminology (CPT) guidelines and appropriate International Classification of Diseases diagnosis codes.

## F. LEGAL ACTION AGAINST US

Legal action may not be brought against us unless there is full compliance with all of the terms of this policy. In addition, legal action may not be brought against us regarding:
1. Liability Coverage until the amount of damages an insured is legally liable to pay has been finally determined by:
   a. judgment after an actual trial; or
   b. the written agreement of you, the claimant, and us.
   No one has the right to make us a party in a suit to determine legal liability.
2. Physical Damage Coverage:
   a. until 30 days after a proof of loss is filed with us;
   b. until the amount of loss is determined as provided in this policy; and
   c. except during the first twelve months after the loss.

Your bankruptcy or insolvency will not change or relieve us of any of our obligations under this policy.

## G. OUR RECOVERY RIGHT

In the event of any payment under this policy, we are entitled to all of the rights of recovery of the person to whom, or on whose behalf, payment was made. That person must:
1. hold in trust for us all rights of recovery;
2. sign and deliver to us any legal papers relating to the recovery;
3. help us exercise our rights; and
4. do nothing after the loss to prejudice our rights.

In the event of recovery, we must be repaid for all of the amounts paid out by us plus any related collection expenses. We will enforce this provision only in the manner and to the extent permitted under all the applicable state laws.

## H. ASSIGNMENT

Your rights and duties under this policy cannot be transferred or assigned without our consent.

If you die, this policy will continue until the end of the policy period for:
1. the surviving spouse if a resident of the same household at the time of death;

    **2.** your legal representative, but only with respect to the representative's legal responsibility to maintain or use a **covered auto**; or

    **3.** any person having proper temporary custody of a **covered auto**.

## I. CONFORMITY TO LAW

The terms of this policy that conflict with the laws of the state for which this policy has been issued are amended to conform to those laws.

## J. LOSS PAYABLE CLAUSE

If a loss payee is shown in the Declarations, **we** may, at our option, pay any Comprehensive or Collision **loss** to one or more of the following:

    **1.** **You.**

    **2.** The owner of the **auto**.

    **3.** The repairer.

    **4.** Any other party who has an interest, title, or lien on the property.

Coverage for the loss payee's interest is only provided for a **loss** that is payable to **you**.

If **we** pay the loss payee for a **loss**, **we** are entitled to the loss payee's right of recovery to the extent of **our** payment. **Our** right of recovery shall not impair the loss payee's right to recover the full amount of its claim.

If this policy is terminated, **we** will provide coverage for the loss payee's interest until **we** notify the loss payee. Any coverage provided for the loss payee's interest will only be provided for a **loss** that would have been covered except for the termination.

## K. ADDITIONAL INSURED

If an additional insured is shown in the Declarations:

    **1.** Liability Coverage will be provided for the additional insured to the extent that the additional insured is an **insured** under the definitions of this policy;

    **2.** the additional insured shall have the same rights of recovery under Liability Coverage as if they were not an additional insured; and

    **3.** **we** will notify the additional insured if the policy coverages change or are terminated.

## L. TERMINATION

See State Provisions Endorsement. ▮

IN WITNESS WHEREOF, **we** have caused this policy to be signed by its President and its Secretary at Warwick, Rhode Island. In the event that the President or Secretary who signed this contract cease to be **our** officers either before or after the contract is issued, the contract may be issued with the same effect as if they were still **our** officers.

Secretary                     President

## NEW MEXICO
## STATE PROVISIONS ENDORSEMENT

**A.** Under **GENERAL POLICY CONDITIONS**, item **L. TERMINATION** is replaced by:

**L. TERMINATION**

    **1. CANCELLATION**

        **a. How You May Cancel. You** may cancel this policy by telling **us** on what future date **you** wish to stop coverage.

        **b. How We May Cancel. We** can cancel this policy by mailing notice to **you** at **your** last known address as shown on **our** records. The notice will state the date cancellation is effective. This notice will be mailed to **you:**

            **i.** at least 10 days prior to the effective date of cancellation if:

                **1)** the premium is not paid when due; or

                **2)** this policy:

                    **a)** has been in effect less than 60 days at the time notice of cancellation is mailed; and

                    **b)** is not a renewal or continuation policy.

            **ii.** at least 30 days prior to the effective date of cancellation in all other cases.

            If this policy has been in force for 60 days, or if this is a renewal policy, **we** may cancel only:

                **1)** if premium is not paid when due;

                **2)** for fraud or material misrepresentation in obtaining or continuing the policy;

                **3)** if **your** driver's license or that of:

                    **a)** any driver who lives with **you;** or

                    **b)** any driver who customarily uses the **covered auto;** has been suspended or revoked during the 12 months before the cancellation effective date. However, **we** will not cancel this policy if it is agreed to exclude coverage for the person who has had his or her license suspended or revoked.

                **4)** for any other reason permitted by law.

        **c. Cancellation Refund.** If **you** or **we** cancel this policy, any premium refund will be computed on a pro rata basis. Any premium refund will be rounded to the nearest dollar. If **you** are entitled to a refund it will be sent to **you.** However, **our** making or offering a refund is not a condition of cancellation.

    **2. NONRENEWAL**

        If **we** decide not to renew **your** policy as permitted by law, **we** will mail a notice to **you** at the last known address as shown on **our** records. The notice will be mailed at least 30 days before the end of the policy period.

        If **we** offer to renew this policy and **you** do not accept, this policy will automatically terminate at the end of the current policy period. **Your** failure to pay the required renewal premium when it is due will mean that **you** have not accepted **our** offer.

    **3. OTHER TERMINATION PROVISIONS**

        **a.** If **you** obtain other insurance on **your covered auto,** any similar insurance provided by this policy will automatically terminate as to that **covered auto** on the effective date of the other insurance.

        **b.** If the law in effect in **your** state at the time this policy is issued, renewed or continued:

            **i.** requires a longer notice period;

            **ii.** requires a special form of or procedure for giving notice; or

            **iii.** modifies any of the stated termination reasons,

        **we** will comply with the requirement.

**c.** **We** may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

**d.** The effective date of cancellation or termination as stated in the notice shall become the end of the policy period. The notice will provide the date cancellation is effective.

All other policy terms and conditions apply.

## IDENTITY THEFT RESOLUTION

The following is added:

### MISCELLANEOUS

### IDENTITY THEFT RESOLUTION
**We** will provide, at **our** expense, a representative of **our** choice to assist **you,** and any relatives in resolving issues of unauthorized use of personal identity or credit information. The unauthorized use must be reported to us during the policy period. **Our** obligation under this provision is limited to paying for the services of a representative of **our** choice. No other limit of liability or deductible applies.

**Our** obligation terminates when the policy terminates for any reason.

All other policy terms and conditions apply.

## MEXICO COVERAGE - LIMITED

### WARNING
### READ THIS ENDORSEMENT CAREFULLY

**Auto accidents in Mexico are subject to the laws of Mexico only – NOT the laws of the United States of America. Under Mexican law an auto accident may be considered a CRIMINAL OFFENSE as well as a civil matter.**

**In some cases, the coverage under this endorsement may NOT be recognized by Mexican authorities and we may not be allowed to implement this coverage at all in Mexico. You should consider purchasing auto coverage from a licensed Mexican Insurance Company before driving into Mexico.**

**This endorsement does not apply to trips into Mexico that exceed 25 miles from the boundary of the United States of America.**

**This insurance does not cover legal liability for bodily injury or property damage caused in Mexico.**

Under **PHYSICAL DAMAGE COVERAGE**, the following are added:

A. Coverage extends to cover **losses** occurring in Mexico within 25 miles of the United States border. This extension applies only for infrequent trips into Mexico not exceeding 10 days at any one time.

B. Under **EXCLUSIONS**, the following are added:

We will not pay for loss to a **covered auto** which is not principally garaged and used in the United States.

C. **SPECIAL CONDITIONS**

1. **Other Insurance**
The insurance provided by this endorsement is excess over any other collectible insurance.

2. **Losses Payable Under Physical Damage Coverage**
We will **pay losses** under this coverage in the United States but not in Mexico. If the **covered auto** must be repaired in Mexico in order to be driven, **we** will not pay more that the **actual cash value** of the loss at the nearest United States point where the repairs can be made.

All other policy terms and conditions apply.

**NEW MEXICO**
**UNINSURED MOTORISTS COVERAGE ENDORSEMENT**

## SCHEDULE

Name of Company: Refer to the Policy Declarations Page
Uninsured Motorists Coverage
Limit of Liability:  Bodily Injury          Refer to the Policy Declarations Page
                     Property Damage        Refer to the Policy Declarations Page

Vehicle Description and Premium            Refer to the Policy Declarations Page

The following is added:

### UNINSURED MOTORISTS COVERAGE

### ADDITIONAL DEFINITIONS FOR THIS COVERAGE

**A.** The following **GENERAL DEFINITIONS** are changed for this coverage only:

**INSURED** means:
1. **you** or any **relative**.
2. any other person **occupying your covered auto**.
3. any person for damages that person is entitled to recover because of **BI** to which this coverage applies sustained by a person in **1.** or **2.** above.

**B.** The following definitions are added for this coverage only:
**PROPERTY DAMAGE** (referred to as **"PD"**) means physical damage to destruction of or loss of use of an **insured's** tangible property.

**C.** The following definition is added for this coverage only:

**UNINSURED MOTOR VEHICLE** means:
1. a **motor vehicle** for which:
   a. no liability insurance policy or bond applies at the time of the accident.
   b. a liability insurance policy or bond is in effect at the time of the accident, but:
      i. the amount of coverage or the amount of the bond is less than the minimum financial security requirements specified by the state of New Mexico:
      ii. the company writing such policy or the company or individual writing such bond denies coverage, or which is, or becomes, insolvent.
2. a hit and run **motor vehicle** which causes an accident resulting in **BI** or **PD** arising out of physical contact or attempted physical contact of the **motor vehicle** with:
   a. **you** or a **relative;**
   b. a **motor vehicle** which **you** or a **relative** are **occupying** at the time of the accident; or
   c. property of the **insured**, including a **covered auto**, if:
      i. the identity of the driver and the owner of the hit and run **motor vehicle** is unknown;
      ii. the accident is reported within 24 hours to a state or local police officer, peace or judicial officer, or the Director of Motor Vehicles;
      iii. the injured person or someone on the injured person's behalf files with **us** within 30 days of the accident a statement under oath that the injured person or his or her legal representative has a cause of action due to the accident for damages against someone whose identity is unknown; and
      iv. the injured person or the injured person's legal representative makes available for inspection by **us**, when requested, the **motor vehicle** occupied by that person at the time of the accident.

---

The term **uninsured motor vehicle** does not include a **motor vehicle:**

1. owned by, leased to, regularly furnished or available for the use of **you** or any **relative;** However, this exception does not apply for damages sustained by **you** or any **relative** if liability coverage is excluded for such damages under this policy or any other policy.
2. owned or operated by a self-insurer as defined in the applicable **motor vehicle** law, financial responsibility law, motor carrier law or similar law; or
3. owned by a governmental unit or agency.
4. owned by a person who has purchased a surety bond as payment for loss on account of his or her legal liability for injury to or the death of people and damage to property arising out of the ownership, operation, or use of a **motor vehicle.**
5. any vehicle or equipment:
   a. operated on rails or crawler treads;
   b. while located for use as a residence or premises; or
   c. which is a farm type tractor or equipment designed for use principally off public roads, except when actually upon public roads.

**D.** The following definition is added for this coverage only:

**UNDERINSURED MOTOR VEHICLE** means a **motor vehicle** for which the sum of the limits of all bodily injury liability bonds or insurance policies applicable at the time of the accident is less than the sum of the limits of liability applicable to the injured person for Uninsured Motorists Coverage under this policy and any other policy(ies).

The term **underinsured motor vehicle** does not include a **motor vehicle:**

1. owned by, leased to, regularly furnished or available for the use of **you** or any **relative;**
   However, this exception does not apply for damages sustained by **you** or any **relative** if the sum of the limits of liability under all bodily injury liability bonds or policies applicable at the time of the accident is less than the sum of the limits of liability for Uninsured Motorists Coverage under this policy and any other policy(ies).
2. owned or operated by a self-insurer as defined in the applicable **motor vehicle** law, or
3. owned by a governmental unit or agency: or
4. any vehicle or equipment:
   a. operated on rails or crawler treads;
   b. while located for use as a residence or premises; or
   c. which is a farm type tractor or equipment designed for use principally off public roads, except when actually upon public roads.
5. which has a liability bond or insurance policy in effect at the time of the accident, but the company writing such bond or policy:
   a. denies coverage; or
   b. is or becomes insolvent.

## INSURING AGREEMENT

In consideration of the payment of the premium for this endorsement and subject to all of the terms of this endorsement, the company agrees with the named insured as to the insuring agreement in 13.12.3.13 through 13.12.3.17 NMAC.

This coverage is provided only if it is indicated in the Declarations.

We will pay compensatory damages which an **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** for **BI** or **PD:**

**A.** sustained by an **insured**; and
**B.** caused by an accident arising out of owning, maintaining, or the use of an **uninsured motor vehicle.**

## EXCLUSIONS

**A.** We do not cover any person or property **occupying** or struck by a **motor vehicle** owned by

you or a **relative**, other than a **covered auto.**

**B.** We do not cover any person who settles a **BI** or **PD** claim with any liable party and the settlement is without **our** consent.

**C.** We do not cover any claim which would benefit directly or indirectly any insurer or self-insurer under any workers' compensation, disability benefits, or similar law.

**D.** We do not cover **BI** or **PD** sustained while a **covered auto** is:
   1. rented to any person or organization in any fashion; or
   2. leased to any person or organization in any fashion.

   This exclusion does not apply:
   1. while the **auto** is rented or leased to or for **your** or a **relative's** use;
   2. while the **auto** is used in a shared expense car pool; or
   3. while the **auto** is being used for volunteer or charitable purposes for which reimbursement for normal operating expenses may be paid to **you** or a **relative.**

**E.** We do not cover **BI** or **PD** sustained while a **covered auto** is being used to carry persons for a charge. This exclusion does not apply while the **auto:**
   1. is used in a shared expense car pool; or
   2. is being used for volunteer or charitable purposes for which reimbursement for normal operating expenses may be paid to **you** or a **relative.**

**F.** We do not cover **BI** or **PD** awards or judgments designated as punitive, exemplary, statutory multiple, or delay damages or awards when the tortfeasor is deceased.

**G.** We do not cover a **relative** who owns, leases or has available for his or her regular use, an **auto** which is insured for uninsured motorists coverage on a primary basis under any other policy.

**H.** We do not cover any person using a **motor vehicle** without a reasonable belief he or she is entitled to do so. This exclusion does not apply to **you** or a **relative** using a **covered auto.**

**I.** We do not cover any claim which would benefit any insurer of any property.

**J.** We do not cover any actual or perceived decrease in market value, diminished value, or resale value resulting from **PD.**

**K.** We do not cover **PD** for which the person making a claim has been or is entitled to be compensated by other property or physical damage insurance.

**L.** We do not cover the first $250 of the amount of **PD** to the property of each **insured** as the result of any one accident.

**M.** any claim for **BI** or **PD** due to or resulting from an accident which occurred before the effective date of this coverage or outside the United States of America, its territories or possessions, or Canada.

## LIMIT OF LIABILITY

**A.** If **BI** is sustained by **you** or any **relative:**

The maximum amount **we** will pay for all damages, including damages for care, loss of consortium, emotional distress, loss of services, death, or prejudgment interest arising out of **BI** sustained by any one person as the result of any one accident is the limit of liability shown in the Schedule or in the Declarations for "each person" for Uninsured Motorists Bodily Injury Coverage multiplied by the number of **covered auto** shown in the Schedule or in the Declarations. Subject to this limit for "each person", the maximum amount **we** will pay to all people for all damages, including damages for care, loss of consortium, emotional distress, loss of services, death, or prejudgment interest arising out of **BI** sustained by two or more people resulting from any one accident is the limit of liability shown in the Schedule or in the Declarations for "each accident" for Uninsured Motorists Bodily Injury Coverage multiplied by the number of **covered autos** shown in the Schedule or in the Declarations.

However, if the Schedule or the Declarations indicates Non-Stacked Uninsured Motorists Coverage limits, then the maximum amount **we** will pay for all damages, including damages for care, loss of consortium, emotional distress, loss of services, death, or prejudgment interest arising out of **BI** sustained by any one person as the result of any one accident is the limit of liability shown in the Schedule or in the Declarations for "each person" for Uninsured Motorists Bodily Injury Coverage. Subject to this limit for "each person", the maximum amount **we** will pay to all people for all damages, including damages for care, loss of consortium, emotional distress, loss of services, death, or prejudgment interest arising out of **BI** sustained by two or more people

resulting from any one accident is the limit of liability shown in the Schedule or in the Declarations for "each accident" for Uninsured Motorists Bodily Injury Coverage.

This is the most we will pay regardless of the number of:
1. insureds;
2. claims made;
3. vehicles shown in the Declarations;
4. premiums shown in the Declarations; or
5. vehicles involved in the accident.

**B.** If BI is sustained by any person other than you or any relative:

The maximum amount we will pay for all damages, including damages for care, loss of consortium, emotional distress, loss of services, death, or prejudgment or post judgment interest arising out of bodily injury sustained by any one person as the result of any one accident is the limit of liability shown in the Schedule or in the Declarations for each person for Uninsured Motorists Bodily Injury Coverage. Subject to this limit for each person, the maximum amount we will pay to all people for all damages, including damages for care, loss of consortium, emotional distress, loss of services, death, or prejudgment interest arising out of bodily injury sustained by two or more people resulting from any one accident is the limit of liability shown in the Schedule or in the Declarations for each accident for Uninsured Motorists Bodily Injury Coverage.

This is the most we will pay regardless of the number of:
1. insureds;
2. claims made;
3. vehicles shown in the Declarations;
4. premiums shown in the Declarations; or
5. vehicles involved in the accident.

**C.** The maximum amount we will pay for all damages, including prejudgment and post judgment interest, arising out of PD as a result of any one accident is the limit of liability shown in the Declarations for Uninsured Motorists Property Damage.

This is the most we will pay regardless of the number of:
1. insureds;
2. claims made;
3. vehicles shown in the Declarations;
4. premiums shown in the Declarations; or
5. vehicles involved in the accident.

**D.** With respect to damages caused by an accident with an **underinsured motor vehicle**, the limit of liability shall be reduced by all sums paid because of BI by or on behalf of people or organizations who may be legally responsible. This includes all sums paid under the **LIABILITY COVERAGE** section of this policy or any other insurance policy.

**E.** No person is entitled to receive duplicate payments for the same elements of loss under this endorsement and any amount paid by or on behalf of any liable parties.

## SETTLEMENT
Whether any person is legally entitled to collect damages under this section, and the amount to which such person is entitled, will be determined by agreement between that person and us.

If a person seeking coverage files a suit against the owner or operator of the **uninsured motor vehicle**, copies of suit papers must be forwarded to us. We have the right to defend on the issues of the:
A. legal liability of; and
B. the damages owed by,
the owner or operator.

**We** are not bound by any judgment, settlement or agreement against any person or organization obtained without **our** consent.

**We** may pay any amount due to one or more of the following:
- **A.** the **insured**;
- **B.** a parent or guardian, if the **insured** is a minor;
- **C.** the surviving spouse, civil union partner or other similar union;
- **D.** the person authorized by law to receive such payment; or
- **E.** the person entitled by law to recover the damages, which the payment represents.

## OTHER INSURANCE

If there is other similar insurance, **we** will pay only **our** fair share. The total amount of recovery under all policies will be limited to the highest of the applicable limits of liability of this insurance and such other insurance.

**Our** fair share is the proportion that **our** limit bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle:
- **A.** not owned by **you** or any **relative**, including any vehicle while used as a substitute automobile; or
- **B.** owned by **you** or any **relative** which is not insured for this coverage under this policy;

shall be excess over any other collectible similar insurance. With respect to **PD**, this insurance will be excess over any other similar insurance available for **PD**. No payments will be made until the limits of all other liability insurance and bonds that apply have been exhausted by payments.

## ADDITIONAL DUTIES AFTER A LOSS

All **insureds** must cooperate with **us** in investigating an accident.

**We** may require the **insured** to take appropriate action to preserve the **insured's** right to recover damages from any other person responsible for the accident, **BI** or **PD**. In any lawsuit against **us**, **we** may require the **insured** to join the responsible person as a defendant.

An **insured** must report an accident involving an **uninsured motor vehicle** within 24 hours to law enforcement authorities.

## CONFORMITY OF STATE STATUTES

If any provisions of this coverage are in conflict with the statutes of the State of New Mexico, those provisions are amended to conform to the minimum requirements of the statutes.

All other policy terms and conditions apply.

## SAFETY GLASS DEDUCTIBLE BUYBACK ENDORSEMENT

A. Under **GENERAL DEFINITIONS**, the following is added:

**SAFETY GLASS** means the glass, plastic or other material used in the windshield and windows of an auto.

B. Under **PHYSICAL DAMAGE COVERAGE, DEDUCTIBLE**, the following is added:

"Glass Deductible Buyback" applies to a **covered auto** when shown in the Declarations. No deductible will apply for **loss** to that **covered auto** when the only payment is for the repair or replacement of damaged **safety glass**.

All other policy terms and conditions apply.

# Exhibit 4

**MetLife**

November 30, 2020

Law Office Of Adam Oakley
P.O. Box 70483
Albuquerque, NM  87197

| | |
|---|---|
| Our Customer: | Margaret Vega |
| Our Claim Number: | SLN12024 D2 |
| Policy Number: | 0593 |
| Date of Loss: | August 25, 2019 |
| Your Client: | Margaret Vega |

Dear Maier:

We received your emailed dated 11/30/2020 and based upon our investigation and information that has been provided to us at this time, there appears to be no evidence to support an uninsured or underinsured motorist claim due to offsetting limits of $25,000. Per your email, GEICO their liability limits of $25,0000 and our insured's UM/UIM limits are $25,000; therefore, after the reduction/offset of the tort carrier's limits there isn't any UIM potential.

If you have additional evidence or other supporting documentation to suggest otherwise please send to our office immediately and we will be happy to review.

At this time, we are closing our claim and will take no further action. Please do not hesitate to contact us with any additional supports or information for further consideration.

Sincerely,

Jacob Martinez
Metropolitan Direct Property and Casualty Insurance Company
Senior Claim Adjuster
(800) 854-6011 Ext. 5520
Fax: (866) 947-0184
Email: Metlifeimaging@metlife.com

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.



# EXHIBIT B-7

# STATE OF NEW MEXICO
# OFFICE OF SUPERINTENDENT OF INSURANCE

## CERTIFICATE

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL JUDICIAL DISTRICT

MARGARET VEGA
Plaintiff,

v.                                                          D-202-CV-2021-01096

METROPOLITAN DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY
Defendants,

### ACCEPTANCE OF SERVICE

I, Russell Toal, Superintendent of Insurance of the State of New Mexico, do hereby certify that a copy of a Complaint and Summons was served on Metropolitan Direct Property and Casualty Insurance Company on 07/21/2022 as provided in Section 59A-5-31 and 59A-5-32 NMSA 1978, and was received by said company on 07/22/2022 confirmed by Postmaster return receipt.



In Witness Whereof, I have
hereunto set my official seal
on July 22, 2022.

Superintendent of Insurance

# EXHIBIT C

## <u>DECLARATION</u>

Nicole G. True, upon his oath, states as follows:

1.       I am an attorney in the law firm of Lewis Roca Rothgerber Christie LLP and I represent Defendant Metropolitan Direct Property and Casualty Insurance Company, now known as Farmers Direct Property and Casualty Insurance Company, in this matter.

2.       Exhibits A and B-2 to B-7 contain true and complete copies of all pleadings and other documents filed in the state court proceeding entitled *Margaret Vega v. Metropolitan Direct Property and Casualty Insurance Company*, Second Judicial District Court, County of Bernalillo, State of New Mexico, Case No. D-202-CV-2021-01096.

3.       Exhibit B-1 is a true and correct copy of the state court docket.

4.       I declare under penalty of perjury that the foregoing is true and correct.

DATED this 18th day of August, 2022.

*/s/Nicole G. True*
Nicole G. True

118592383.1